1  Benjamin J. Schnayerson (State Bar No. 257857)
   Julie Y. Zong (State Bar No. 309804)
2  JACKSON LEWIS P.C.
   50 California Street, 9th Floor
3  San Francisco, California 94111-4615
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401
   E-mail:  Ben.Schnayerson@jacksonlewis.com
5  E-mail:  Julie.Zong@jacksonlewis.com

6  Attorneys for Defendant
   RXO LAST MILE, INC. (ERRONEOUSLY SUED
7  HEREIN AS XPO LAST MILE, INC.)

8

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA, an individual; individually and on Behalf of All Similarly Situated Individuals,<br><br>　　　　　Plaintiff(s),<br><br>　　　v.<br><br>XPO LAST MILE, INC., A Georgia Corporation, and DOES 1 through 25, Inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Alameda County Superior Court Case No. 22CV020443]<br><br>Action Filed:　10/24/2022<br>Trial Date:　　None Set<br>Date Removed:　12/19/2022 |

---

1

Defendant's Notice of Removal of Action to Federal Court　　　Case No. _____

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that RXO Last Mile, Inc. f/k/a XPO Last Mile, Inc., a defendant in the above-entitled action, hereby removes this matter to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The grounds for removal are as follows:

### The Putative Class Action

1. On November 17, 2022, Plaintiff Maynor Mejia filed his Complaint against RXO Last Mile, Inc. f/k/a XPO Last Mile, Inc.[1] ("RXO LM") and Does 1 through 25, Inclusive, in the Superior Court of the State of California for the County of Alameda, Case No. 22-CV-020443 (the "Complaint).

2. Copies of all process and pleadings that Plaintiff filed in the Superior Court of Alameda are attached as **Exhibit A**.

3. On December 15, 2022, RXO LM filed and served its Answer to the Complaint in the Superior Court of Alameda, and a copy is attached as **Exhibit B**.

4. Plaintiff alleges that he and "all other non-employee workers who worked in California as a Contract Carrier, Driver, and/or Helper (hereinafter collectively referred to as 'Delivery Drivers') for Defendant at any time during the four years preceding April 29, 2018, and continuing while this action is pending ('Class Period')…were denied the benefits and protections required under the California Labor Code..." Compl., ¶ 1.

5. Plaintiff asserts nine causes of action against RXO LM including claims of failure to pay minimum wage, overtime compensation, meal and rest periods, and business expense reimbursement under California Labor Code sections 226, 226.3, 226.7, 510, 512, 1182.11, 1194, 2802 *et seq*. Plaintiff also asserts causes of action for wage deductions, failure to furnish accurate wage statements, waiting time penalties, under Labor Code sections 201, 202, 203, 221, 223, and unfair competition under California Business and Professions Code §§ 17200 – 17209.

---

[1] XPO Last Mile, Inc. changed its name to RXO Last Mile, Inc. on or about November 2, 2022. *See* Declaration of Timothy Anthamatten, dated December 19, 2022, ¶ 3.

**Venue, Timeliness, and Consent**

6. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1441(a) because the Northern District of California includes the Superior Court of California for the County of Alameda.

7. RXO LM was served on November 17, 2022. This Notice of Removal is timely under 28 U.S.C. §1446(b) because it is timely filed within thirty (30) days of service counted consistently with the Federal Rules of Civil Procedure.

**Removal Under Class Action Fairness Act of 2005 ("CAFA")**

8. This Court has original jurisdiction over this case because it is a putative class action in which the proposed class has more than 100 members, matter in controversy exceeds the sum of $5 million, and at least one plaintiff is a citizen of a state different from that of at least one defendant. 28 U.S.C. §1332(d)(2).

   **I.   Diversity of Citizenship**

9. Minimal diversity under 28 U.S.C. §1332(d)(2)(A) is met when at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. §1332(d)(2)(A).

10. For purposes of diversity of citizenship jurisdiction, citizenship is determined by an individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

11. Upon information and belief, Plaintiff is a domiciliary and citizen of California. Compl. ¶ 6; *Ehrman v. Cox Comm., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (an allegation of citizenship in a notice of removal may be based upon information and belief).

12. RXO LM is incorporated in the State of Georgia and its principal place of business and center of its operations is in Marietta, Georgia. RXO LM does business in several states and does not conduct the majority of its business in any single state. Declaration of Timothy Anthamatten, dated December 19, 2022, ¶ 5 (attached hereto as **Exhibit C** and hereinafter "Anthamatten Decl."); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (defining the principal place of business as the "nerve center").

///

13. Plaintiff's identification of "Doe Defendants" has no bearing on diversity of citizenship within the context of removal. 28 U.S.C. § 1441(a) (the citizenship of defendants sued under fictitious names shall be disregarded).

14. CAFA's minimal diversity requirement has been met because Plaintiff and RXO LM are citizens of different states.

## II. The Proposed Class Exceeds 100 Members

15. Plaintiff defines the class as "[a]ll other non-employee workers who worked in California as a Contract Driver, Driver, and/or Helper…at any time during the four years preceding April 29, 2018, and continuing while this action is pending ('Class Period')…" *See* Compl., ¶ 1.

16. RXO LM is a third-party logistics company that operates as an authorized broker and freight forwarder for its clients, such as retailers and distributors of furniture, appliances, large electronics, and building supplies. RXO LM serves its clients as an expert on the applicable logistics network, and in this capacity, it enters into Delivery Service Agreements ("DSAs") with hundreds of independent delivery service providers authorized by the federal government to move goods from retailers, warehouses, and other locations to consumers' homes (known as "Contractors", "Carriers" or "Delivery Service Providers"). Anthamatten Decl. ¶ 8.

17. The delivery service providers with which RXO LM contracts, range from single-commercial vehicle sole proprietorships to corporations with multiple commercial vehicles that provide delivery services in the relevant markets, and in turn hire workers to operate the commercial box trucks that the delivery service providers use in the course of completing deliveries arranged by RXO LM. Generally, the delivery service providers' workers are known as secondary drivers and helpers ("Secondary Driver" or "Helper"). *Id.*, ¶ 9.

18. During the period relevant to the Complaint, RXO LM contracted with more than 500 Delivery Service Providers that in turn engaged hundreds, if not thousands of drivers ("Secondary Drivers") and helpers ("Helpers") to perform deliveries arranged through RXO LM's brokerage and freight forwarding services. *Id.*, ¶ 10.

///

19. Accordingly, the total number of individuals within the Plaintiff's proposed class, which includes the Delivery Service Providers' owners, their Secondary Drivers, and Helpers, easily exceeds 100 members.

### III. Amount In Controversy Exceeds $5 Million

20. Although RXO LM denies that it is liable to the plaintiff or the putative class, the amount in controversy exceeds $5,000,000.

21. For purposes of removal, the defendant, need only include a "plausible allegation" of the Court's jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability").

22. In assessing whether the amount in controversy requirement is satisfied, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F.App'x 646, 648 (9th Cir. 2012). *Fritsch v. Swift Transp. CO. of Ariz., LLC*, 899 F.3d 785, 788 (9th Cir. 2018); citing to *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414 - 15 (9th Cir. 2018) ("the amount in controversy is not limited to damages incurred prior to removal – for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal), but rather "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious"); *Gonzalez v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016); *Baghdasarian v. Macy's, Inc.*, No. 2:21-CV-04153-AB (MAAx), 2021 U.S. Dist. LEXIS 167337, at *11 (C.D. Cal. Sep. 2, 2021).

23. The Court must look "look to the potential claims of the absent class members, rather than plaintiff's complaint, holding that section 1332(d) so requires: '[t]he statute tells the

District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class." *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 981 (9th Cir. 2013), citing to *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 591, 133 S. Ct. 1345, 1347 (2013).

24.     The court may also include attorney fees in determining the jurisdictional amount. *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945; *see also, Alvarado v. Home Depot U.S.A., Inc.*, Case No. 18-cv-611-MMA (NLS), 2018 U.S. Dist. LEXIS 95435, at *7-10 (S.D. Cal. June 5, 2018) (post-removal attorney fees are included in the amount in controversy).

### a. The Overtime Claim Places Over $5 Million In Controversy.

25.     Plaintiff asserts that he and the putative class that he seeks to represent were not paid for any daily or weekly overtime. Compl. ¶¶ 2(d); 8 (defendant uniformly applies unlawful policies, including overtime); 32 ("During the Class Period, Plaintiff and Delivery Drivers have been required to work more than eight hours per day and more than forty hours per workweek. Defendants have routinely failed to compensate Delivery Drivers all of the overtime wages they are due.").

26.     Plaintiff asserts that Labor Code § 510, and Wage Order Number 9, govern the Plaintiff's and putative class members' overtime claim. Under the statute and wage order, non-exempt employees are entitled to one-and-one-half of their regular rate of pay for working more than 8 hours in a workday or more than 40 hours in a work week. Thus, one method for calculating the amount in controversy for purposes of the overtime claim is to multiply the number of workdays by the number of estimated overtime hours and then multiply that by the unpaid portion of the overtime rate that was due.

### i. Number of Workdays.

27.     Here, the workdays can be counted with reference to the number of trucks that performed deliveries on each day during the relevant period. Between October 1, 2018 and July 13, 2022, the period of data readily available to RXO LM, Delivery Service Providers performed delivery services on 207,157 truck-days. A "truck-day" is counted when one truck is used to

complete a set of deliveries on a single day. For example, a truck day is counted when an owner or Secondary Driver, (and likely together with a Helper), was dispatched by a Delivery Service Provider to pick up a truckload of freight and deliver that freight to RXO LM's retail clients' customers. Anthamatten Decl., ¶ 11.

28. In light of the fact that a delivery team was often comprised of both a driver and a helper, the number of truck days can be multiplied by two in order to calculate the number of workdays that Plaintiff has placed in controversy in this case. *Id.*, ¶ 11. Performing that simple calculation shows that there were approximately **414,413 workdays** in the data period that was examined.[2]

### ii. Regular Rate of Pay.

29. All amounts paid to delivery teams is included in calculating the regular rate of pay. Labor Code § 200. Based upon information received from Delivery Service Providers, Delivery Service Providers pay Secondary Drivers approximately $200 per day, and Helpers $145 per day, for their work performing deliveries.

30. Based upon this information, the Secondary Drivers' regular rate of pay (per diem divided by 8 hours according to the method articulated in the DLSE Enforcement Policies and Enforcement Manual §49.1.4) was approximately $25.00 per hour, and the regular rate of pay for Helpers was $18.12 per hour.

### iii. Unpaid Overtime.

31. Plaintiff asserts that delivery teams were not paid any overtime, and instead compensated on a flat amount for each delivery, or per diem basis. Compl. ¶ 21. Consequently, Plaintiff has placed the full amount—one-and-one-half times the regular rate of pay—into controversy.

///

///

---

[2] Plaintiff alleges, however, that the period relevant to this lawsuit extends back to April 18, 2014. Compl. ¶ 1. Defendant does not calculate how many workdays were included in that period or include that portion of the alleged period of liability in its calculation, even though it has been placed into controversy. Including this period would serve to increase the amount in controversy.

32. The amount of unpaid overtime allegedly due to drivers (including both owners and Secondary Drivers) is approximately **$7,768,388** (regular rate of $25 per hour x 1.5 for the overtime rate, x 207,157 workdays).

33. The amount of unpaid overtime allegedly due to Helpers is approximately **$5,630,527** (regular rate of $18.12 per hour x 1.5 for the overtime rate, x 207,157 workdays).

34. Thus, the total amount in controversy for the overtime claim amounts to at least **$13,398,915**, before the application of prejudgment interest to which Plaintiff and the putative class may ultimately prove be entitled.

        **b.  The Meal and Rest Claims Also Exceed $5 Million In Controversy.**

35. Pursuant to Labor Code §226.7 if an employer does not provide an employee with a compliant meal period or rest break, the employer must pay, as a premium, one hour of the employee's regular rate of compensation.  *See, e.g.*, *Ferra v. Loews Hollywood Hotel, LLC,* 11 Cal.5th 858 (2021).

36. Plaintiff asserts that Plaintiff and the putative class "regularly worked" enough hours to become entitled to a meal or rest period that they did not take as provided by the Labor Code and Wage Order 9.  *See* Compl. ¶¶ 73 (meal periods), 78 (rest breaks).

37. Assuming a 100 percent violation rate, Plaintiff has placed another approximately $5,178,925 in controversy related to the drivers' claims ($25 x 207,157), and $3,753,685 in controversy related to the Helpers' claims ($18.12 x 207,157).

38. Thus, Plaintiffs' meal and rest period claims places another **$8,932,610** in controversy.

        **c.  Past Litigation Confirms The Amount In Controversy Exceeds $5 Million.**

39. The class definition here includes the Delivery Service Providers' owners (to the extent they drove one of their vehicles), Secondary Drivers, and Helpers.  Compl. ¶ 1.  The settlement classes in *Carter v. XPO Last Mile, Inc.*, No. 3:16-cv-01231-WHO (N.D. Cal. 2016); *Kramer v. XPO Logistics, Inc.,* No. 3:16-cv-07039-WHO (N.D. Cal. 2016), *Ibanez v. XPO Last Mile, Inc.*, No. 3:16-cv-07039-WHO (N.D. Cal. 2016), and *Garcia v. Macy's West Stores, Inc.,*

*et al.*, No. 3:16-cv-04440-WHO (N.D. Cal. 2016), included those three categories of workers as well:

    a. In *Carter*, the settlement class included "any person who (a) entered into a Delivery Service Agreement either in his or her individual capacity or through a business entity with XPO LM or 3PD, and (b) according to XPO LM's records was a driver who performed delivery services pursuant to that Delivery Service Agreement, and (c) performed a portion of those delivery services within the state of California". ECF 182-1 (Settlement Agrmt. and Release of Claims).

    b. In *Kramer*/*Ibanez*, the settlement class included "all individuals how did not contract with XPO LM, and (1) are "Drivers" that performed delivery services within the state of California during the Class Period for a Carrier, or (2) are "Helpers" with a California address and were/are associated with any Carrier that performed delivery services within the state of California" and expressly excluding those who are in the *Garcia* class below. ECF 89-1 (Joint Stipulation and Settlement Agreement).

    c. In *Garcia*, the settlement class included "all individuals who performed services as Drivers and/or Helpers delivering Macy's products and/or furnishings, who did not sign a Delivery Service Agreement with Defendants, and who were tendered loads at the location identified as the Macy's Logistics and Operations distribution center, 1208 Whipple Road, Union City, California…." *Garcia*, ECF 110-1 (Amended Joint Stipulation of Class Action Settlement and Release).

///
///
///
///
///

1   40.  These cases included the following claims, which were predicated upon allegations of independent contractor misclassification:

| Description | Carter | Ibanez | Garcia |
|---|---|---|---|
| Reimbursement (Labor Code § 2802) | X | X | X |
| Deductions (Labor Code §§ 221, 223, Wage Order 9) | X | -- | -- |
| Meal Periods (Labor Code § 226.7, 512; Wage Order 9) | X | X | X |
| Rest Periods (Labor Code § 226.7; Wage Order 9) | X | X | X |
| Wage Statements (Labor Code § 226, 226.3; Wage Order 9) | X | X | X |
| Waiting Time (Labor Code §§ 201-203) | X | X | X |
| PAGA (Labor Code §§ 2698, et seq.) | X | -- | -- |
| CA Minimum Wage (Labor Code §§ 1182.11, 1194; Wage Order 9) | X | X | X |
| CA Overtime (Labor Code §§ 510, 1194; Wage Order 9) | X | X | X |
| FLSA Minimum Wage (29 U.S.C. § 201, et seq.) | X | -- | -- |
| FLSA Overtime (29 U.S.C. § 206) | X | -- | -- |
| Unfair Competition (UCL § 17200) | X | X | X |
| Conversion (Common law) | -- | -- | X |
| Unpaid Wages (Labor Code §§ 226, 1194) | -- | -- | X |

41.  RXO LM, successfully removed *Kramer*, *Garcia*, and *Ibanez* because the amount in controversy in each of those actions exceeded $5 million. *Kramer* Notice of Removal filed December 8, 2016, *Kramer* ECF No. 1, *Garcia* Notice of Removal, filed August 5, 2016, *Garcia* ECF No. 1; *Ibanez* Notice of Removal filed June 23, 2017, *Ibanez* ECF No. 1.

42.  Further, this Court finally approved settlements and entered judgment in these four cases (two of which were consolidated to create three actions for practical purposes) that totaled $25.5 million. *Carter* ECF No. 182-2, *Ibanez* ECF No. 24; *Garcia* ECF 127.

43.  These settlement values covered similar claims, similar limitations periods, and nearly identical class composition as those asserted here, and show that the amount in controversy here is likely to exceed the $5 million threshold.

**IV.  Notice to Plaintiff and Superior Court for the County of Alameda**

44.  As required by 28 U.S.C. § 1446(d), a copy of the original notice of removal will be served on plaintiff's counsel of record. In addition, a copy of this notice of removal will be filed with the Clerk of the Court for the Superior Court of the County of Alameda. A true and correct copy of the Notice to Adverse Parties of Removal of Action to the United States District Court by XPO LM, to be filed in the Superior Court of the County of Alameda, without the

exhibits, is attached hereto as **Exhibit D**.

45. The undersigned counsel for XPO LM has read the foregoing and signs the Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by U.S.C. § 1446(a).

### No Waiver

46. By filing this Notice of Removal, XPO LM does not waive any defenses available to it.

47. In the event this Court or Plaintiff, questions this Court's jurisdiction, RXO LM requests an opportunity to supplement its Notice of Removal with additional evidence in support of the Court's jurisdiction.

WHEREFORE, RXO respectfully removes this case to this Court.

Dated: December 19, 2022               JACKSON LEWIS P.C.

By: /s/Benjamin J. Schnayerson
Benjamin J. Schnayerson
Julie Y. Zong
Attorneys for Defendant
RXO LAST MILE, INC. ERRONEOUSLY SUED AS XPO LAST MILE, INC.

4860-3998-9058, v. 5