1  Benjamin J. Schnayerson (State Bar No. 257857)
   Julie Y. Zong (State Bar No. 309804)
2  JACKSON LEWIS P.C.
   50 California Street, 9th Floor
3  San Francisco, California 94111-4615
   Telephone:  (415) 394-9400
4  Facsimile:  (415) 394-9401
   E-mail:  Ben.Schnayerson@jacksonlewis.com
5  E-mail:  Julie.Zong@jacksonlewis.com

6  Attorneys for Defendant
   RXO LAST MILE, INC. (ERRONEOUSLY SUED
7  HEREIN AS XPO LAST MILE, INC.)

8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11

12  MAYNOR MEJIA, an individual; individually      Case No. 3:22-CV-08976-SK
    and on Behalf of All Similarly Situated
13  Individuals,                                   **DEFENDANT RXO LAST MILE,
                                                   INC.'S NOTICE OF MOTION TO
14              Plaintiff(s),                       COMPEL ARBITRATION;
                                                   MEMORANDUM OF POINTS AND
15      v.                                         AUTHORITIES IN SUPPORT OF
                                                   MOTION TO COMPEL
16  XPO LAST MILE, INC., A Georgia                 ARBITRATION**
    Corporation, and DOES 1 through 25,
17  Inclusive,

18              Defendants.                         Date: April 28, 2023
                                                   Time: 10:00 a.m.
19                                                 Courtroom: C
                                                   Judge: Magistrate Judge Sallie Kim
20

21                                                 Action Filed:    10/24/2022
                                                   Trial Date:      None Set
22                                                 Date Removed:    12/19/2022

23  **TO PLAINTIFF AND THE ABOVE-ENTITLED COURT:**

24          **PLEASE TAKE NOTICE** that on April 28, 2023 at 10:00 a.m., Defendant RXO LAST

25  MILE, INC. will and hereby does move the Court to compel this matter to arbitration as set out in

26  the parties' agreement. The Motion will be heard before Magistrate Judge Sallie Kim in the above-

27  entitled court, located at San Francisco Courthouse, Courtroom C – 15th Floor, 450 Golden Gate

28  Avenue, San Francisco, California. The Motion is based upon this Notice of Motion, Memorandum

                                       1

1  of Points and Authorities submitted herewith, Declarations of Benjamin J. Schnayerson and Robert

2  Hawkins, and upon all the papers, pleadings, and admitted evidence on file herein.

3        RXO LAST MILE, INC. f/k/a XPO Last Mile, Inc., brings this motion on the following

4  grounds: RXO LAST MILE, INC. f/k/a XPO Last Mile, Inc. and Plaintiff entered into a Delivery

5  Services Agreement in June 2018, which contains an arbitration provision. Pursuant to the

6  arbitration provision, any legal matter arising out of RXO LAST MILE, INC. f/k/a XPO Last Mile,

7  Inc. and Plaintiff's relationship must be submitted to arbitration.

8        Defendant RXO LAST MILE, INC. requests that the Court grant Defendant's Motion and

9  stay these proceedings while this matter is resolved in arbitration.

10

11  Dated:  March 17, 2023                JACKSON LEWIS P.C.

12

13                             By:  */s/Benjamin J. Schnayerson*

14                                Benjamin J. Schnayerson
                              Julie Y. Zong

15                                Attorneys for Defendant
                              RXO LAST MILE, INC. ERRONEOUSLY

16                                SUED AS XPO LAST MILE, INC.

17

18

19

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

Page

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     BACKGROUND FACTS ........................................................................ 2

        A.      About RXO LM. ........................................................................ 2

        B.      The Arbitration Agreement. ....................................................... 2

III.    THE PARTIES PERFORM UNDER THE DSA. ..................................... 5

IV.     THIS LITIGATION AND RXO LM'S ARBITRAL DEMAND. ................. 5

V.      ARGUMENT ......................................................................................... 5

        A.      The DSA is an Enforceable Arbitration Agreement. ................... 5

        B.      The DSA is a Valid Agreement to Arbitrate. ............................. 6

        C.      Plaintiff's Claims are Within the Scope of the Arbitration Agreement. ............. 7

        D.      Issues of Arbitrability Are Delegated to the Arbitrator. ............ 7

        E.      Individual Arbitration Is Required. .......................................... 8

        F.      The Arbitration Agreement is Not Unconscionable. ................... 9

                1.      The Agreement Is Not Procedurally Unconscionable ........... 10

                2.      The Agreement Is Mutual and Thus Not Substantively Unconscionable. ............ 11

        G.      Plaintiff May Argue that the FAA § 1 Exception Applies. ............ 11

        H.      This Case Should be Stayed Pending Arbitration. ..................... 12

        I.      In the Alternative, This Case Should be Stayed Pending the Ninth Circuit's Resolution of *Domino's* and *Miller* ............ 13

                1.      This Court Has Broad Discretion to Stay Proceedings. ......... 13

                2.      The Ninth Circuit is Poised to Clarify the Transportation Worker Exception ............ 13

                3.      The Reasons Supporting a Stay Here Are Sound. ................ 15

VI.     CONCLUSION ..................................................................................... 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
5
   513 U.S. 265 (1995) ................................................................................................ 5

6

*Am. Express Co. v. Italian Colors Rest.,*
7
   570 U.S. 228 (2013) ................................................................................................ 8

8

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ........................................................................................ 5, 11

9

*Baltazar v. Forever 21, Inc.*
10
   (2016) 62 Cal.4th 1237 ................................................................................ 10, 11

11

*Capriole v Uber Techs., Inc.,*
   7 F.4th 854 (9th Cir. 2021) ......................................................................... 11, 12
12

13

*Carmona v. Domino's Pizza, LLC,*
   21 F.4th 627 (9th Cir. 2021) ........................................................ 12, 13, 14, 15

14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
15
   207 F.3d 1126 (9th Cir. 2000) ............................................................................. 6

16

*CMAX, Inc. v. Hall,*
   300 F.2d 265 (9th Cir. 1962) ............................................................................ 13
17

18

*Davis v. Einstein Noah Rest. Grp., Inc.,*
   No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) (White,
19
   J.) ......................................................................................................................... 6

20

*Epic Sys. Corp. v. Lewis*
   584 U.S. __ (2018) ............................................................................................. 8

21

*Ford v. Account Control Tech., Inc.,*
22
   No. 1:19-CV-203 ............................................................................................... 12

23

*Giuliano v. Inland Empire Personnel, Inc.*
   (2007) 149 Cal.App.4th 1276 ............................................................................. 9
24

25

*Good v. Prudential Ins. Co. of Am.,*
   5 F. Supp. 2d 804 (N.D. Cal. 1998) ................................................................. 13

26

*Guidewire Software, Inc. v. Chookaszian,*
27
   No. 12-CV-03224-LHK, 2012 U.S. Dist. LEXIS 156363 (N.D. Cal. Oct. 31,
   2012) .................................................................................................................... 7
28

ii

*Haisha Corp. v. Sprint Solutions, Inc.*
(S.D. Cal. Jan. 15, 2015) 2015 U.S. Dist. LEXIS 5579 ................................................ 9

*Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*,
560 F.3d 935 (9th Cir. 2009)....................................................................................... 12

*Kilgore v. Keybank Nat'l Assoc.*
(9th Cir. 2013) 718 F.3d 1052 (*en banc*) ..................................................................... 9

*Lagatree v. Luce, Forward, Hamilton Scripps, LLP*
(1999) 74 Cal.App.4th 1105 ........................................................................................ 10

*Lamps Plus, Inc. v. Varela*
587 U.S. __ (2019).......................................................................................................... 9

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ..................................................................................... 13

*Miller v. Amazon.com, Inc.*,
2022 U.S. Dist. LEXIS 57375 (W.D. Wash. Mar. 29, 2022)..................... 12, 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................................ 6

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................................................... 13

*Painters Dist. Council No. 33 v. Moen*
(1982) 128 Cal.App.3d 1032 ......................................................................................... 7

*Peng v. First Republic Bank*
(2013) 219 Cal.App.4th 1462 ................................................................................ 10, 14

*Powers v. Dickson, Carlson & Campillo*
(1997) 54 Cal.App.4th 1102 .......................................................................................... 6

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)........................................................................................................... 7

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020)....................................................................................... 13

*Roman v. Superior Court*
(2009) 172 Cal.App.4th 1462 ...................................................................................... 10

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999).......................................................................................... 6

*Southwest Airlines Co. v. Saxon*,
596 U.S. ___ (2022) ...................................................................................................... 13

iii

*Southwest Airlines Co. v. Saxon*,
  596 U.S. ___ (2022) ...................................................................................................... 14

*Sparling v. Hoffman Construction Co.*,
  864 F.2d 635 (9th Cir. 1988) .......................................................................................... 6

*Visa USA, Inc. v. Maritz, Inc.*,
  No. C 07-05585 JSW, 2008 U.S. Dist. LEXIS 89124 (N.D. Cal. Mar. 18,
  2008) ................................................................................................................................ 8

*Waithaka v. Amazon.Com, Inc.*,
  2023 U.S. Dist. LEXIS 25151 (W.D. Wash. Feb. 14, 2023) ........................................ 14

**Statutes**

9 U.S.C. § 2 ............................................................................................................................ 5

9 U.S.C. § 3 ............................................................................................................... 6, 12, 15

FAA ............................................................................................................................. *passim*

FAA § 1 ...................................................................................................................... *passim*

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .................................................................... 1

**Other Authorities**

Federal Rules of Civil Procedure 12(f) ............................................................................... 9

Order: (i) .............................................................................................................................. 15

Rule 7 ..................................................................................................................................... 8

Rule 7(a) ................................................................................................................................ 8

iv

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendant RXO Last Mile, Inc. ("RXO LM" or "Defendant"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and the Delivery Service Agreement as signed and accepted by Plaintiff Maynor Mejia ("Plaintiff"), hereby moves this Court to compel individual arbitration of Plaintiff's claims and to stay this action during the pendency of the individual arbitration proceedings. In the alternative, RXO LM moves this Court to stay proceedings while the Ninth Circuit resolves an open question regarding the proper of the FAA § 1 exception.

## I.   PRELIMINARY STATEMENT

This matter must be heard in arbitration, not Court. This case involves an independent motor carrier who contracted with RXO LM to provide delivery services to RXO LM's clients pursuant to the parties' Delivery Service Agreement ("DSA"). Plaintiff alleges that, even though he operated a delivery business and employed his own workers, he was an RXO LM employee that was misclassified as an independent contractor. To that end, Plaintiff contends that RXO LM violated California's wage and hour laws. Plaintiff asserts claims for (1) failure to pay minimum wage, (2) unpaid overtime, (3) failure to reimburse business expenses, (4) unlawful deductions (5) failure to provide meal breaks, (6) failure to provide rest breaks, (7) failure to furnish accurate wage statements, (8) waiting time penalties, and (9) unfair competition. Plaintiff also seeks to represent a putative class of others he alleges are similarly situated.

The DSA, however, provides that any dispute regarding allegations of misclassification or wage and hour violations must be resolved through individual arbitration. Federal law strongly favors arbitration, and any dispute within the scope of a valid arbitration agreement must be sent to arbitration. That standard is easily met here. The DSA is the result of an arms-length transaction, it is supported by mutual promises and adequate consideration, and its arbitration provision expressly contemplates arbitrating Plaintiff's claims on an individual basis. There is no question that Plaintiff accepted and signed the DSA when he entered into a contractual relationship with RXO LM. Thus, RXO LM respectfully requests that this Court compel Plaintiff to arbitrate his claims on an individual basis pursuant to the DSA and the FAA, and stay this action pending the parties' arbitration.

In the alternative, RXO LM respectfully requests that this Court stay proceedings pending resolution of certain cases pending in the Ninth Circuit that may impact the outcome of this motion. Specifically, there are two cases pending at the Ninth Circuit Court of Appeals that will examine the proper application of the transportation worker exception as set out in Section 1 of the FAA.

## II.   BACKGROUND FACTS

### A. About RXO LM.

RXO LM is a third-party logistics provider and authorized broker and freight forwarder. Declaration of Robert Hawkins ("Hawkins Decl."), dated March 17, 2023, ¶2. As such, it specializes in logistics and arranges freight deliveries for its customers, including large consumer goods, such as home appliances, furniture, and building materials. *Id.*, ¶3. While RXO LM does not deliver any of the freight it tenders for delivery, it contracts with independent, federally authorized motor carriers, which are responsible for picking up the freight and delivering it to the shippers' customers. *Id.*, ¶4. Plaintiff's company, ABC Logistics LLC ("ABC") is one of the independent, federally authorized, motor carriers that agreed to complete deliveries arranged by RXO LM.

### B. The Arbitration Agreement.

RXO LM and Mejia's company ABC Logistics LLC ("ABC") entered into a DSA on June 21, 2018. Declaration of Benjamin J. Schnayerson ("Schnayerson Decl.") ¶4, Ex. 1, dated March 17, 2023, Exhibit ("Ex.") 1; Hawkins Decl. ¶5. Mejia electronically signed the DSA. *Id.*

The DSA shows that the parties exchanged mutual covenants and supported them with adequate consideration. *See* DSA Recitals. The DSA "set forth the arrangements to accomplish the safe and efficient pick up, transportation, delivery, and installation of freight." DSA, ¶1. Among other things, the DSA addresses issues germane to the business relationship created by it, warrant that RXO LM and ABC are independent, established businesses, and vest ABC and Mejia with "sole control over the manner and means of performing" deliveries tendered under the DSA. *Id.* ¶4.1.

Accordingly, the DSA sets out a variety of conditions that require the parties to maintain

2

their independence. For example, Mejia was "responsible for exercising independent discretion and judgment to achieve [the parties'] business objectives" and no officer, agent or employee of RXO LM had "the authority to direct" Plaintiff about how to achieve the DSA's objectives, including setting hours of work, routes, and other details of service. *Id.* ¶ 4.2. Indeed, Plaintiff agreed to "retain complete and exclusive direction and control" over the workers he engaged." *Id.* ¶5.

Plaintiff's DSA also established a mechanism to resolve disputes between the parties, namely arbitration. The arbitration agreement states:

> **21.1.** **Arbitration of Claims.** The parties agree that any demand, assertion, or claim or cause of action for money, property, enforcement of a right, or equitable relief, including but not limited to allegations of misclassification or wage and hour violations . . . arising out of or relating to the Agreement, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules (except as may be modified by this Arbitration Agreement), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, if necessary. In the event of a misclassification dispute, the parties expressly agree to use the commercial rules until a determination of employment statute [sic] has been made. The Commercial Arbitration Rules are available at www.adr.org. As specified in Paragraph 21.3, this Arbitration Agreement applies to any existing or future dispute brought by either Contract Carrier or XPO Last Mile arising out of or related to the Agreement or Contract Carrier's relationship with XPO Last Mile, including but not limited to allegations of misclassification or wage and hour violations. The provisions of this Arbitration Agreement will remain in force after the parties' contractual relationship ends. **BY AGREEING TO ARBITRATE ALL DISPUTES CONTEMPLATED BY THIS ARBITRATION AGREEMENT, THE PARTIES AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.**

DSA ¶ 21.1 (emphasis in original). The parties also agreed that arbitration must proceed individually:

> **21.6** **Class and Collective Action Waiver**. THIS ARBITRATION AGREEMENT PROHIBITS THE ARBITRATOR FROM CONSOLIDATING THE CLAIMS OF OTHERS INTO ONE

3

**PROCEEDING. THIS MEANS AN ARBITRATOR SHALL HEAR ONLY INDIVIDUAL CLAIMS AND IS PROHIBITED FROM FASHIONING A PROCEEDING AS A CLASS OR COLLECTIVE ACTION OR AWARDING RELIEF IN SUCH A PROCEEDING.** Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator. Should a court determine that this paragraph is invalid for any reason, the parties hereby waive any right to arbitration of a class or collective action and instead agree and stipulate that such claims will be heard only by a judge.

DSA, ¶21.3 (emphasis in original). The DSA also delegates disputes about the arbitrability of any dispute to the arbitrator. DSA, ¶21.5.

The arbitration provision thus (1) requires the parties to submit any dispute arising out of their relationship to arbitration before the American Arbitration Association ("AAA") under the AAA's Commercial Arbitration Rules; (2) states that any dispute concerning "allegations of misclassification" "shall be settled by arbitration" "on an individual basis"; and (3) delegates disputes regarding arbitrability to the arbitrator. DSA ¶21.

Importantly, if ABC or Mejia did not want to accept arbitration as the method for resolving disputes with XPO LM, they could have opted-out under the DSA, which states:

> **21.10 Opt-Out Provision.** If Contract Carrier does not want to be subject to this Arbitration Agreement, Contract Carrier may opt out by notifying XPO Last Mile in writing of Contract Carrier's desire to opt out of this Arbitration Agreement.

DSA, ¶21.10. Indeed, Plaintiff could opt-out by emailing or sending a letter to RXO LM within 30 days of the effective date of the DSA. *Id.* RXO LM does not have any record of Plaintiff opting-out of the DSA. Hawkins Decl. ¶6. The arbitration provisions of the DSA are generally referred to as the "Arbitration Agreement."

Finally, the parties agreed that Plaintiff's businesses will defend and indemnify RXO LM from liabilities "OF EVERY NATURE OR CHARACTER . . . ASSERTED AGAINST XPO LAST MILE (A) BY CONTRACT CARRIER OR ANY AGENT OR EMPLOYEE OF CONTRACT CARRIER . . . . DSA, ¶15.

4

**III.    THE PARTIES PERFORM UNDER THE DSA.**

ABC has performed under the DSA for about five years, from approximately July 2018 and continuing through the present. Hawkins Decl., ¶5. During the time that Mejia was operating ABC and performing delivery services under the DSA, Mejia hired approximately ten different drivers or helpers to operate ABC's trucks in the course of performing deliveries tendered under the DSA. *Id.* During the time that ABC has been performing delivery services, RXO LM has paid it nearly $2,208,438 dollars for the delivery services provided pursuant to the DSA. *Id.*

**IV.    THIS LITIGATION AND RXO LM'S ARBITRAL DEMAND.**

On or about October 27, 2022, the Plaintiff filed the Complaint against RXO LM in Alameda County Superior Court (Case No. 22CV020443). The Complaint alleges that, pursuant to the DSA and its practices, RXO LM classified Plaintiff as independent contractor when he was allegedly an employee. Compl., ¶6. Plaintiff further alleges that RXO LM withheld wages and overtime, took unlawful deductions, failed to provide meal and rest breaks, and is liable for waiting time penalties and failure to provide wage statements. To that end, Plaintiff contends that he is due the compensatory damages, punitive damages, statutory damages, costs, reasonable attorneys' fees, prejudgment interest, disgorgement of profits. Compl., Prayer for Relief. Finally, Plaintiff seeks to represent a putative class of California drivers. Compl. ¶27-28.

On February 24, 2022, RXO LM requested that Plaintiff dismiss his Complaint in favor of arbitration, but he has since declined to do so. Schnayerson Decl., ¶6.

**V.    ARGUMENT**

**A.    The DSA is an Enforceable Arbitration Agreement.**

Pursuant to the FAA—which is expressly incorporated by the DSA and governs here— arbitration agreements "shall be *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). When enacting the FAA, Congress created a mechanism to enforce arbitration agreements and established a policy "favoring arbitration." *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270-71 (1995); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333

(2011) (reaffirming the "liberal federal policy favoring arbitration") (citations omitted). Moreover, to the extent any state law or rule "stands as an obstacle" to the purposes of the FAA, it is preempted by the FAA. *Concepcion*, 563 U.S. at 352.

"The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); *see also Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *2 (N.D. Cal. Oct. 23, 2019) (White, J.) (same). "The standard for demonstrating arbitrability is not high," and agreements to arbitrate "are to be rigorously enforced" (*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999)) to ensure arbitrable issues are sent to binding arbitration and the remainder of the action is either stayed or dismissed. 9 U.S.C. § 3; *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988). To that end, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, there is no legitimate dispute that there is a valid agreement to arbitrate, the disputed claims are within the scope of issues to be arbitrated, and the court should enforce the agreement according to its terms. *Chiron Corp.*, 207 F.3d at 1130. Each issue is addressed below.

**B. The DSA is a Valid Agreement to Arbitrate.**

On June 21, 2018, Plaintiff entered into the DSA. In the DSA the parties exchanged mutual promises—Plaintiff to accept freight for safe and efficient delivery and RXO LM to pay for the tendered deliveries. In the approximately five years Plaintiff and RXO LM operated under the DSA, RXO LM has paid ABC approximately $2,208,438 The arbitration agreement itself is supported by the mutual promises to resolve all claims in arbitration. *See* DSA, Recitals & ¶¶ 9.1-4, 21. There is no logical argument that the DSA, or its arbitration provisions, were not supported by adequate consideration.

1

**C. Plaintiff's Claims are Within the Scope of the Arbitration Agreement.**

2

Although this Court need not determine whether Plaintiffs claims are arbitrable here (due

3

to the delegation clause) "[a]s a general rule, a written agreement to arbitrate a future controversy

4

is valid and enforceable and requires no special waivers or provisions." *Powers v. Dickson,*

5

*Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1108. What is important is the "nature and

6

intended effect of the proceeding." *Painters Dist. Council No. 33 v. Moen* (1982) 128 Cal.App.3d

7

1032, 1036 (enforcing an agreement that did not even identify the procedure as an "arbitration").

8

In this case, the Arbitration Agreement contained in the DSA expressly covers Plaintiff's

9

claims asserted against RXO LM.  "As specified in Paragraph 21.3, this Arbitration Agreement

10

applies to any existing or future dispute brought by either Contract Carrier or [RXO] Last Mile

11

arising out of or related to the Agreement or Contract Carrier's relationship with [RXO] Last Mile,

12

including but not limited to allegations of misclassification or wage and hour violations. This

13

Arbitration Agreement is intended broadly to apply to all covered controversies…including those

14

arising prior to and after the Effective Date."  Schnayerson Decl., ¶4, Ex. 1. As such, the

15

Arbitration Agreement is enforceable and legally binds both Plaintiff and RXO LM.

16

**D. Issues of Arbitrability Are Delegated to the Arbitrator.**

17

Once this Court determines that an arbitration agreement exists, any other disputes

18

over the enforceability of the agreement are for an arbitrator to decide. It is well-settled that parties

19

may agree to delegate questions of arbitrability to the arbitrator. *See Rent-A-Center, W., Inc. v.*

20

*Jackson*, 561 U.S. 63, 68-69 (2010) (finding that parties "can agree to arbitrate 'gateway' questions

21

of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

22

covers a particular controversy); *see also Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-

23

03224-LHK, 2012 U.S. Dist. LEXIS 156363, at *12 (N.D. Cal. Oct. 31, 2012) (finding that the

24

parties did clearly and unmistakably intend to delegate power to decide arbitrability to an arbitrator).

25

That is precisely what Plaintiff and RXO LM agreed to here.

26

The parties' intent to delegate the question of arbitrability to the arbitrator is supported by

27

the express language in DSA § 21.5 "Enforceability", which states that "the arbitrator, and not any

28

7

1   federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the

2   formation, enforceability, applicability, or interpretation of this Arbitration Agreement, including

3   without limitation any claim that this Arbitration Agreement is void or voidable." The parties intent

4   is further supported by the parties' incorporation of the AAA's Commercial Rules into their

5   agreement. DSA §21.1.

6          Rule 7 of the Commercial Rules provides:

7                 The arbitrator shall have the power to rule on his or her own

8                 jurisdiction, including any objections with respect to the existence,

9                 scope, or validity of the arbitration agreement or to arbitrability of any

10                claim or counterclaim.

11  AAA, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) (Oct. 1, 2013).

12         The Ninth Circuit has recognized that incorporating AAA's Commercial Arbitration Rules

13  delegate the issue of arbitrability to arbitrator pursuant to Rule 7. *See Visa USA, Inc. v. Maritz,*

14  *Inc.*, No. C 07-05585 JSW, 2008 U.S. Dist. LEXIS 89124, at *16 (N.D. Cal. Mar. 18, 2008) ("Here,

15  the Court finds the two references to the AAA Rules and the explicit agreement to arbitrate

16  disagreements on any aspect of the dispute resolution procedure mandates the conclusion that the

17  issue of the inducement to enter the agreement must be submitted to the arbitrator for

18  determination."). Like the parties in *Visa USA*, the Parties here agreed to delegate any question

19  regarding arbitrability to the arbitrator. Accordingly, the arbitrator, not the Court, has exclusive

20  jurisdiction to resolve disputes regarding arbitrability.

21     **E.  Individual Arbitration Is Required.**

22         The DSA requires Plaintiff arbitrate the claims presented in the Complaint on an individual

23  basis. *See* DSA § 21.6 ("THIS ARBITRATION AGREEMENT PROHIBITS THE

24  ARBITRATOR FROM CONSOLIDATING THE CLAIMS OF OTHERS INTO ONE

25  PROCEEDINGS. THIS MEANS AN ARBITRATOR SHALL HEAR ONLY INDIVIDUAL

26  CLAIMS AND IS PROHIBITED FROM FASHIONING A PROCEEDING AS A CLASS OR

27  COLLECTIVE ACTION OR AWARDING RELIEF IN SUCH A PROCEEDING…..").

28

1   The Supreme Court has repeatedly held that class action waivers, such as the waivers

2   contained in the DSA, are enforceable. *See, e.g.*, Am. Express Co. v. Italian Colors Rest., 570 U.S.

3   228, 236 (2013) (upholding a class arbitration waiver as it did not preclude a litigant from

4   "effectively vindicating her federal statutory rights" even if the expense involved was high as "the

5   fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the

6   elimination of that *right to pursue* that remedy."); *see also Epic Sys. Corp. v. Lewis* 584 U.S. __,

7   (2018) (reaffirming the "liberal federal policy favoring arbitration agreements" by upholding the

8   validity of class and collective action waivers in arbitration agreements as courts must enforce the

9   parties' chosen arbitration procedures); *Lamps Plus, Inc. v. Varela* 587 U.S. __, (2019) ("The FAA

10  requires courts to 'enforce arbitration agreements according to their terms'" including class

11  waivers). This Court must follow the Supreme Court's precedent and enforce the DSA as written.

12  Plaintiff should therefore be compelled to submit his claims to <u>individual</u>, binding

13  arbitration, and the class allegations should be stricken from the Complaint pursuant to Federal

14  Rules of Civil Procedure 12(f) (the Court may strike "any redundant, immaterial, impertinent, or

15  scandalous matter" from the pleadings); 23(d)(1)(D) (authorizing the Court to require amendment

16  or eliminate class action allegations).

17  **F.  The Arbitration Agreement is Not Unconscionable.**

18  RXO LM anticipates that Plaintiff may attempt to argue that the Agreement is

19  unconscionable in an effort to deny its enforcement. Under California law, unconscionability has

20  both a procedural and a substantive element, the former focusing on oppression or surprise, the

21  latter on overly harsh one-sided results. *Kilgore v. Keybank Nat'l Assoc.*  (9th Cir. 2013) 718 F.3d

22  1052, 1059 (*en banc*). Courts use a sliding scale approach to analyze these elements.  "The more

23  substantively oppressive the contract term, the less evidence of procedural unconscionability is

24  required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. at 1058. No

25  matter how heavily one side of the scale tips, <u>both</u> procedural and substantive unconscionability

26  are required for a court to hold an arbitration agreement unenforceable. *Id*. The "party opposing

27  arbitration bears the burden to demonstrate unconscionability." *Haisha Corp. v. Sprint Solutions,*

28

9

*Inc.* (S.D. Cal. Jan. 15, 2015) 2015 U.S. Dist. LEXIS 5579 at \*10 (*citing Sonic-Calabasas A., Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1148).

### 1.   The Agreement Is Not Procedurally Unconscionable

Plaintiff may argue that the Arbitration Agreement is procedurally unconscionable because it was required as a 'condition of employment.' As addressed above, that, however, does not bar enforcement. *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1292 ("[T]he compulsory nature of a pre-dispute arbitration agreement does not render the agreement unenforceable on grounds of coercion or for lack of voluntariness."); *Lagatree v. Luce, Forward, Hamilton Scripps, LLP* (1999) 74 Cal.App.4th 1105, 1127 ("T]he cases uniformly agree that a compulsory pre-dispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."); *see also Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 ("[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided."); *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470 (the alleged "adhesive aspect of an agreement is not dispositive"), quoting *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704. As the California Supreme Court has noted, adhesive contracts are generally enforced and have a minimal degree of procedural unconscionability unless there is evidence of "surprise or other sharp practices." *Baltazar*, 62 Cal.4th at 1244.

Here, there is no evidence of oppression, surprise, or other sharp practices. Indeed, the Arbitration Agreement stated in bold and all capital letters:

> "**BY AGREEING TO ARBITRATE ALL DISPUTES CONTEMPLATED BY THIS ARBITRATION AGREEMENT, THE PARTIES AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.**"

DSA ¶ 21.1 (emphasis in original); Schnayerson Decl., ¶4; Ex. 1. As such, the Arbitration Agreement is enforceable.

10

### 2.   The Agreement Is Mutual and Thus Not Substantively Unconscionable.

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create "overly harsh" or "one-sided" results, which reallocate risks in an objectively unreasonable or unexpected manner. *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462*, 1470. As the California Supreme Court has explained: "Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable.'… The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Baltazar*, 62 Cal.4th at 1245 (citations omitted). None of the terms in the Arbitration Agreement are unfair or one-sided. The Agreement is mutual, as it requires both parties to arbitrate claims arising out of the parties' relationship, regardless of Plaintiffs' claim that it was an employment relationship. DSA § 21.1. The Arbitration Agreement specifically states that "By agreeing to arbitrate all disputes contemplated by this arbitration agreement, the parties agree that all such disputes will be resolved through binding arbitration before an arbitrator and not by way of a court or jury trial." *Id*. (emphasis added). The Arbitration Agreement thus contains "the modicum of bilaterality" required under *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).[1]

Moreover, a neutral arbitrator will preside over the arbitration, the arbitration will afford adequate discovery to the parties, does not eliminate any right to recover, and does not improperly shift cost or risk. DSA §§ 21.1, 21.7, 21.9. In addition, the arbitrator's decision will be issued in writing and subject to review pursuant to the DSA. *Id*. Thus, the Arbitration Agreement does not lack mutuality and is not substantively unconscionable.

### G.  Plaintiff May Argue that the FAA § 1 Exception Applies.

RXO LM anticipates that Plaintiff will argue that the exception set out in Section 1 of the

---

[1] Moreover, as the Supreme Court noted in *Epic*, "….an argument that a contract is unenforceable *just because it requires bilateral arbitration* is a different creature.  A defense of that kind, *Concepcion* tells us, is one that impermissibly disfavors arbitration whether it sounds in illegality or unconscionability. […] the Arbitration Act's saving clause can no more save the defense at issue in these cases than it did in *Concepcion*."  *Epic Systems, supra,* 584 U.S. at *9, emphasis in original.

DEFENDANT RXO LAST MILE, INC.'S
MOTION TO COMPEL ARBITRATION

CASE NO. 3:22-cv-08976-SK

FAA applies, and as such, the Arbitration Agreement is not enforceable. However, Plaintiff would be mistaken. Plaintiff is not a "transportation worker" within the meaning of the Section 1 exception. Rather, Plaintiff performed local deliveries of retail merchandise that had ended its interstate journey. Hawkins Decl., ¶ 5. This is not the kind of "transportation worker" Congress envisioned when it adopted the Section 1 exception.

The Ninth Circuit recognizes that the class of workers that satisfies the exception does not include those engaged in predominantly intrastate trips because that type of worker typically acts in furtherance of a local service. They do not become subject to the exception unless and until "interstate movement…is a central part of the class members' job description." *Capriole v Uber Techs., Inc.,* 7 F.4th 854, 865 (9th Cir. 2021). Additionally, in order for the exception to apply, the Ninth Circuit evaluates whether the worker's activities "form part of a single, unbroken stream of interstate commerce that renders interstate travel a central part of" the job at issue. *Id.* at 866. Plaintiff's work for RXO LM was purely local, and Plaintiff's local activities—safely and efficiently operating a commercial vehicle between local warehouses and consumers' homes—did not make him part of "any other class of workers engaged in foreign or interstate commerce" under FAA's Section 1 exception.

**H. This Case Should be Stayed Pending Arbitration.**

This Court should stay further litigation pending the outcome of the arbitral proceedings. The Ninth Circuit and courts within this District have held that a court should stay proceedings when it is determined that an arbitration clause is "valid and enforceable." *Ford v. Account Control Tech., Inc.*, No. 1:19-CV-203 AWI-JLT, 2019 U.S. Dist. LEXIS 74564, at *5 (E.D. Cal. May 2, 2019); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed").

In addition, the FAA, states in relevant part:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in such

12

1

2

3

> suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

4

9 U.S.C. § 3.

5

6

Accordingly, RXO LM respectfully requests that this Court stay the action pending the outcome of the parties' binding arbitration.

7

8

**I.   In the Alternative, This Case Should be Stayed Pending the Ninth Circuit's Resolution of *Domino's* and *Miller*.**

9

10

11

12

In the event the Court does not compel arbitration, this Court should stay proceedings until the Ninth Circuit has issued its decisions in *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627 (9th Cir. 2021) and *Miller v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 57375, at *2 (W.D. Wash. Mar. 29, 2022).

13

**1.   This Court Has Broad Discretion to Stay Proceedings.**

14

15

16

17

18

19

20

It is well established that a district court retains broad discretion to stay proceedings. *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 806 (N.D. Cal. 1998) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254-55, (1936)). To that end, a court may stay proceedings "pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder,* 556 U.S. 418, 433–34 (2009).

21

22

23

24

25

26

In deciding whether a stay is appropriate, the court must consider the "competing interests" at stake, including (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-255, 57)).

27

**2.   The Ninth Circuit is Poised to Clarify the Transportation Worker Exception.**

28

On December 23, 2021, the Ninth Circuit issued its decision in *Carmona v. Domino's*

13

*Pizza, LLC*, 21 F.4th 627 (9th Cir. 2021), a case in which the Ninth Circuit further explained the standard that applies to determine whether a commercial driver fits the transportation worker exception to the FAA. There, the Ninth Circuit determined that the Domino's Pizza supply drivers were subject to the transportation worker exception. In reaching this conclusion, the Ninth Circuit relied on its previous articulation of the transportation worker exception set out in *Rittmann v. Amazon.com, Inc.,* 971 F.3d 904 (9th Cir. 2020), a case that determined whether the FAA exception applied to AmazonFlex drivers. *Domino's*, 21 F.4th at 629-30.

On June 6, 2022, the Supreme Court issued its decision in *Southwest Airlines Co. v. Saxon*, 596 U.S. ___ (2022), further articulating the proper test for applying the transportation worker exception to the FAA. Shortly thereafter, on October 17, 2022, the Supreme Court vacated and remanded the Ninth Circuit's decision in Domino's upon consideration of a *writ of certiorari* made by Domino's. Schnayerson Decl., ¶8, Ex. 4. In vacating *Domino's*, the Supreme Court specifically noted that the decision warranted "further consideration in light of *Southwest Airlines Co. v. Saxon*, 596 U.S. ___ (2022)." *Id*. In other words, the Supreme Court's actions vacating and remanding *Domino's* suggests the Ninth Circuit will need to reevaluate and perhaps amend its articulation of the transportation worker exception.

If this Court has any doubt about whether the transportation worker exception applies here (it does not), then the Court should stay this case until such time as the Ninth Circuit completes its review of *Domino's* so that the Court and parties may have the benefit of the current articulation of the standard.

Furthermore, in *Miller v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 57375, at *2 (W.D. Wash. Mar. 29, 2022) the district court denied defendants' motion to compel arbitration because it held that the drivers at issue were subject to the transportation worker exception. Defendant has since appealed the case to the Ninth Circuit, and the district court stayed the case pending the resolution of the Ninth Circuit appeal. Thus, the Ninth Circuit will also have an opportunity to address the proper application of the transportation worker exception in this suit. *Id*. at *1. Likewise, other courts within the Ninth Circuit have stayed proceedings in cases factually similar to the instant litigation for similar reasons. *See* Schnayerson Decl., ¶7, 9, Exs. 3, 5; *see also*

14

*Waithaka v. Amazon.Com, Inc.*, 2023 U.S. Dist. LEXIS 25151, at *4 (W.D. Wash. Feb. 14, 2023) (staying proceedings pending resolution of *Domino's* and *Miller*).

### 3. The Reasons Supporting a Stay Here Are Sound.

*First*, there is little to no risk that a stay pending the Ninth Circuit's review of *Domino's* will cause harm to any party. In fact, staying the case now will allow the Court to properly consider the correct FAA standard following the Ninth Circuit's decision in *Domino's*.

*Second*, there is a substantial risk of waste if the parties must go forward in Court while the Ninth Circuit considers *Domino's*. For example, it may deprive RXO LM the benefit of its bargain to arbitrate. Allowing this case to move forward will facilitate the beginning of class discovery, when Plaintiff is otherwise required to proceed individually. Moreover, this Court will expend resources on managing this litigation when it otherwise could conserve those resources for a more definitive statement from the Ninth Circuit about the proper standard to apply.

*Third*, arbitration is always a threshold issue. Properly deciding that issue before engaging in costly proceedings facilitates the orderly course of these proceedings.

For all of these reasons a stay is appropriate in the event the Court has any doubt about whether the transportation worker exception applies.

## VI.    CONCLUSION

For all the foregoing reasons, RXO LM respectfully requests an Order: (i) compelling arbitration of all Plaintiff's claims in this pending action; and (ii) staying all further judicial proceedings on Plaintiff's claims pending completion of arbitration pursuant to Section 3 of the FAA. In the alternative, RXO LM respectfully requests an Order staying these proceedings pending the Ninth Circuit's clarification of how the Section 1 FAA exception applies in *Domino's* and *Miller*.

Dated:  March 17, 2023                          JACKSON LEWIS P.C.

                                                By: */s/Benjamin J. Schnayerson*
                                                    Benjamin J. Schnayerson
                                                    Julie Y. Zong
                                                    Attorneys for Defendant
                                                    RXO LAST MILE, INC. ERRONEOUSLY
                                                    SUED AS XPO LAST MILE, INC.

15

1

2   4881-4646-4339, v. 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT RXO LAST MILE, INC.'S
MOTION TO COMPEL ARBITRATION                    CASE NO. 3:22-cv-08976-SK