1  MICHAEL H. BOYAMIAN, SBN 256107
   michael@boyamianlaw.com
2  ARMAND R. KIZIRIAN, SBN 293992
   armand@boyamianlaw.com
3  **BOYAMIAN LAW, INC.**
   550 North Brand Boulevard, Suite 1500
4  Glendale, California 91203
   Telephone:   (818) 547-5300
5  Facsimile:   (818) 547-5678

6  Attorneys for Plaintiff Maynor Mejia Lopez,
   Individually and On Behalf
7  of All Others Similarly Situated

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11 MAYNOR MEJIA LOPEZ, an              Case No.: 3:22-CV-08976-SI
   individual; Individually and on Behalf
   of All Similarly Situated Individuals,   **CLASS ACTION**
12
                Plaintiff,              **PLAINTIFF'S OPPOSITION TO**
13                                      **DEFENDANT RXO LAST MILE,**
        v.                             **INC.'S MOTION TO COMPEL**
14                                      **ARBITRATION**
   XPO LAST MILE, INC., A Georgia
15 Corporation; and DOES 1 through 25,  [*Filed concurrently with Declaration of*
   Inclusive,                          *Maynor Mejia Lopez; Declaration of*
16                                      *Michael H. Boyamian; Request for*
                Defendants.            *Judicial Notice*]
17
                                       Date:        April 28, 2023
18                                     Courtroom:    C
                                       Time:        10:00 a.m.
19                                     Judge:       Hon. Susan Illston

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

I. INTRODUCTION…………………………………………………………..1

II. RELEVANT FACTUAL BACKGROUND………………………………2

III. ARGUMENT……………………………………………………......5

  A.  Defendant Cannot Seek Arbitration Pursuant to the FAA Because Lopez
Is A "Transportation Worker" Exempt from FAA Coverage…………....5

    1.   As Workers Who Physically Transported Goods, Lopez and the Putative
Class were "Actually Engaged in the Movement of Goods"…………..9

    2.   Plaintiff and the Class of Workers He Seeks to Represent Operate in A
Single, Unbroken Stream of Commerce………………………...…11

  B.  XPO's Warehouse Employees Were Even Deemed "Transportation
Workers" Exempt for FAA Coverage…………………………….…13

  C.  The Arbitration Agreement Is Procedurally Unconscionable……………15

  D.  The Arbitration Agreement Is Substantively Unconscionable………...…16

    1.   The Incorporation of Commercial Arbitration Rules Requires Plaintiff to
Pay Excessive Fees and Costs Not Normally Associated with
Litigation…………………………………………………......17

    2.   The Arbitration Provision Impermissibly Waives the Right to
Appeal And Is Therefore Substantively Unconscionable……………..20

    3.   The Arbitration Provision Requires Plaintiff to Pay Reasonable
Attorneys' Fees and Costs to the Prevailing Party And Is Therefore
Substantively Unconscionable……………………………….......21

  E.  Defendant's Request for A Stay Is Not Warranted………………………22

IV. CONCLUSION………………………………………………………..23

# TABLE OF AUTHORITIES

**State Cases**

*Ajamian v. CantorCO2e, L.P.*
(2012) 203 Cal. App. 4th 771............................................................. 22

*Armendariz v. Foundation Health Psychare Services*
(2000) 24 Ca1.4th 83 ................................................................. passim

*Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n*
(2019) 41 Cal.App.5th 753 ................................................................. 15

*Baltzar v. Forever 21, Inc.*
(2016) 62 Cal.4th 1237 ..................................................................... 21

*Cable Connection, Inc. v. DIRECTV, Inc.*
(2008) 44 Cal.4th 1334 ..................................................................... 20

*Garrido v. Air Liquide Indus.*
(2015) 241 Cal.App.4th 833 ............................................................... 6

*Gutierrez v. Autowest, Inc.*
(2003) 114 Cal. App. 4th 77 .............................................................. 15

*Higgins v. Superior Court*
(2006) 140 Cal. App. 4th 1238 .......................................................... 18

*Mercuro v. Superior Court*
(2002) 96 Cal. App. 4th 167 .............................................................. 16

*Moncharsh v. Heily Lamp Blasé*
(1992) 3 Cal.4th 1 ........................................................................... 20

*Nieto v. Fresno Beverage Co. Inc.*
(2019) 33 Cal. App. 5th 274 ................................................... 10, 11, 12

*OTO, L.L.C. v. Kho*
(2019) 8 Cal.5th 111 ............................................................... 15, 16

*Samaniego v. Empire Today LLC*
(2012) 205 Cal. App. 4th 1138 .......................................................... 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

*Sonic-Calabasa A, Inc. v. Moreno*

    (2013) 57 Cal. 4th 1109.................................................................. 17

*Trivedi v. Curexo Technology Corp.*

    (2010) 189 Cal. App. 4th 387........................................................ 21

**Federal Cases**

*Am. Express Co. v. Italian Colors Rest.*

    (2013) 570 U.S. 228 ..................................................................... 18

*Capriole v Uber Techs., Inc.*

    (9th Cir. 2021) 7 F.4th 854 .......................................................... 11

*Circuit City Stores, Inc. v. Adams*

    (2001) 532 U.S. 105 ................................................................. 5, 6

*Cole v Burnes Intn'l Security Services*

    (DC Cir. 1997) 105 F3d 1465 ...................................................... 12

*Comb v. PayPal, Inc.*

    (N.D. Cal. 2002) 218 F. Supp. 2d 1165 ....................................... 19

*Dunham v. Envtl. Chem. Corp.*

    (N.D. Cal. Aug. 16, 2006) No. 06-03389, 2006 WL 2374703........18

*Domino's Pizza, LLC v. Carmona*

    (2022) 143 S. Ct. 361 ......................................................... 2, 22, 23

*Encino Motorcars, LLC v. Navarro*

    (2018) 138 S.Ct. 1134 .................................................................... 7

*Green Tree Fin. Corp.-Ala. V. Randolph*

    (2000) 531 U.S. 79 ...................................................................... 18

*Harden v. Roadway Package Sys., Inc.*

    (9th Cir. 2001) 249 F.3d 1137.............................................. 6, 10, 12

*Int'l Broth. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC,*
    (7th Cir. 2012) 702 F.3d 954........................................................ 12

*Lenz v. Yellow Transp., Inc.*

    (8th Cir. 2005) 431 F.3d 348........................................................ 12

*Lopez v. Aircraft Service Int'l, Inc.*

　　(C.D. Cal. Dec. 9, 2022) 2022 WL 18232726 .............................. 9, 14

*Lopez v. Shamrock Foods Co.*, CV 22-01719-SSS

　　(C.D. Cal. Mar 16, 2023) (SHK), 2023 WL 2624438 ....................... 9

*New Prime, Inc. v. Oliveira*

　　(2019)139 S.Ct. 523 ............................................................... 6

*Openshaw v. FedEx Ground Package Sys., Inc.*

　　(C.D. Cal. Aug. 16, 2010)731 F. Supp. 2d 987 .......................... 18, 21

*Oakley v. Domino's Pizza, LLC*

　　(Ct. App. Wash. 2022) 516 P.3d 1237 ................................... 8

*Ortiz v. Randstad Inhouse Servs., LLC,*

　　(C.D. Cal. Jan. 18, 2023) No. 22-cv-01399-TJH-SHK, 2023 WL 2070833 .................................................................................. 9, 13

*Pokorny v. Quixtar, Inc*.

　　(9th Cir. 2010) 601 F.3d 987............................................. 15

*Popovich v. McDonald's Corp*

　　(N.D. Ill. 2002) 189 F. Supp. 2d 772 ................................. 19

*Rittmann v. Amazon.com, Inc.*

　　(9th Cir. 2020) 971 F.3d 904, 910-11 (9th Cir. 2020) cert. denied, 141 S. Ct. 1374 (2021) ............................................. passim

*Rizvanovic v. United Parcel Service, Inc.*

　　(E.D. Cal. Jan. 20, 2023) No. 1:21-cv-01278-CDB, 2023 WL 346800........................................................................... 9, 23

*Shearson/American Express Inc. v. McMahon*

　　(1987) 482 U.S. 220…………………………………………...20

*Singh v. Uber Techs. Inc.*

　　(3d Cir. 2019) 939 F.3d 210............................................. 7

*Southwest Airlines Co. v. Saxon*

　　(2022)142 S. Ct. 1783……………………………………passim

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

*United States v. Kaplan*
    (9th Cir. 2016) 836 F.3d 1199 .............................................................. 11
*Waithaka v. Amazon.com, Inc.*
    (1st Cir. 2020) 966 F.3d 10 ............................................................. 7, 11
*Ward v. Express Messenger Sys. Inc. dba Ontrac*
    (Jan. 28, 2019) Civ. A. No. 1:17-cv-02005 ...................................... 12
*Williams v. Tully*
    (N.D. Cal. Mar. 18, 2005) No. 02-05687, 2005 WL 645943 ........... 21
*Wynn v. United Parcel Service, Inc.* ...................................................... 9, 11
*Zamora v. Swift Transp. Corp.*
    (W.D. Tex. June 3, 2008) 2008 WL 2369769 ................................... 12

**Statutes**

Cal. Code. Civ. Proc., § 1284 ....................................................................... 19
Labor Code § 218.5 ........................................................................................ 22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

## I.   **INTRODUCTION**

Defendant RXO Last Mile, Inc. f/k/a XPO Last Mile, LLC ("RXO" or "Defendant") cannot compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), because it simply does not apply. Section 1 of the FAA expressly exempts from FAA coverage "transportation workers," which includes workers, like Plaintiff Maynor Mejia Lopez ("Plaintiff" or "Mr. Lopez"), who are "actually engaged in the movement of goods in interstate commerce."  Plaintiff and the class of Delivery Drivers he seeks to represent are unquestionably "transportation workers" because they are workers whose primary duty is to physically transport goods on behalf of a company that coordinates and transports goods.

Mr. Lopez worked as a truck driver and performed "last mile" delivery services on trips assigned and coordinated by RXO.  Lopez was a "Delivery Driver" and was responsible for completing the last leg of these series of interstate transactions by physically delivering the goods to Defendant's California customers. Binding California precedent has expressly rejected all of Defendant's arguments against the § 1 exemption, including that an employee must physically cross state lines to qualify as a "transportation worker."

In the event that the Court finds the Agreement is enforceable, Defendant's Motion still fails because the agreement is permeated with such a high degree of procedural and substantive unconscionability rendering it unenforceable. Among other things, the alleged Arbitration Agreement is procedurally unconscionable because it is an adhesion, pre-printed contract that was presented on a take-it-or-leave-it basis and as part of the general Delivery Service Agreement. The purported Arbitration Agreement also requires Plaintiff to adhere to the commercial rules of arbitration forcing him to incur exorbitant fees and costs not normally associated with litigation. The purported Arbitration Agreement also mandates that the arbitrator award fees to the prevailing party, while California

law precludes a fee award to the prevailing employers absent proof the claim was frivolous. The alleged Agreement further forfeits Plaintiff's ability to seek an appeal. Collectively, the various flaws present in the alleged Agreement impair the contract's validity and enforceability, and the unconscionable provisions cannot be severed.  Finally, binding California precedents on the issue of "last mile" delivery drivers qualifying for the transportation exemption make it so that a stay pending the outcome of the *Domino's Pizza, LLC v. Carmona*, 143 S. Ct. 361 (2022) is simply not warranted.

Accordingly, the Court should deny Defendant's Motion in its entirety.

## II.   **RELEVANT FACTUAL BACKGROUND**

Defendant XPO and now, RXO, is a provider of managed transportation services including the planning and execution of "last mile" delivery for its retail merchant clients.  With filings made with the California Secretary of State, Defendant readily admits that its business involves "transportation/logistics." Declaration of Michael H. Boyamian ("Boyamian Decl."), Exh. 1. XPO and RXO are also actively licensed with the United States Department of Transportation ("USDOT"). Boyamian Decl., Exh. 3; See also Exh. 2 of Boyamian Decl.

Mr. Lopez was a Delivery Driver of RXO who worked out of Defendant's Union City warehouse/distribution center. (Complaint ¶ 6).  Plaintiff's primary work responsibility was transporting merchandise from Defendant's warehouse and delivering them and if required, installing products, at XPO's retail customers' homes or businesses. Declaration of Maynor Mejia Lopez ("Lopez Decl.") ¶ 2.  This was a common understanding of the arrangement and relationship Plaintiff had with RXO. *See* Dkt. 21 - Exh. 1 of Declaration of Benjamin J. Schnayerson ("Schnayerson Decl."), p. 6 ("Contract Carrier seeks to provide delivery and related services to XPO Last Mile…" "This Agreement sets forth arrangements to accomplish the safe and efficient pick up, transportation,

delivery, and installation of freight. These objectives are strictly limited to achieving required results – delivery and installation services which meet the service levels of XPO Last Mile's customers."); p. 7, § 3.1 ("Contract Carrier: Will maintain the capacity necessary to provide pick up, delivery, and related services on days and at times which are compatible with XPO Last Mile's customer schedules.").

RXO's customers are retail merchants which Plaintiff – and other similar situated Delivery Drivers – performed "last mile" delivery services towards. RXO's clients that Plaintiff serviced in completing the last leg of their interstate journey include Samsung, Amazon, Peloton, Macy's, Tempur-Pedic. Lopez Decl., ¶ 6.  The products from these retail merchants that Plaintiff delivered to homes and businesses originated from outside of California. *Id*.

Plaintiff's involvement with RXO spans back to 2017, when he initially worked as a Driver and Helper for his brother who maintained a contract with XPO.  *Id*. at ¶ 2. Plaintiff understood from his brother's experience that XPO required that he form and register an official business to contract with XPO and secure routes. When XPO repeatedly made comments to Plaintiff to have a bigger role in fulfilling deliveries and encouraged him to become a "Contract Carrier" alongside his brother, Plaintiff was required to go through the same onboarding experience as his brother – register an official company or LLC, obtain his own insurance and workers compensation coverage, and secure other drivers and helpers. *Id*. at ¶ 3; See also Exh. 2 of Boyamian Decl. After meeting those requirements, Plaintiff was subjected to a variety of pre-printed documents that RXO required Plaintiff to sign in order to be assigned routes.  *Id*.

The alleged arbitration provision is buried within the general fourteen-page Delivery Service Agreement ("DSA") which contains 28 separate sections. Schnayerson Decl., Exh. 1. The DSA was accompanied by other documents that Plaintiff was required to sign on June 21, 2018 in order to secure work. Lopez

Decl., ¶ 3, Exh. 1.  Those documents including the DSA result in the overall package approximately 100 pages. *Id*. The terms of the various documents presented to Plaintiff were non-negotiable. Complaint ¶ 16. As explained in greater detail in Paragraphs 15-18 of the operative Complaint, the arbitration provision, the DSA, and the onboarding documents Plaintiff was directed to sign, were part of an elaborate scheme to mischaracterize Plaintiff as an "independent contractor" and conceal the true nature of RXO's status as the employer of Plaintiff and the other Delivery Drivers.  The arbitration provision require that Plaintiff adhere to the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures. *See* Exh. 1 of Schnayerson Decl.; *see also* Exhs. 4 & 5 of Boyamian Decl.  As explained in greater detail below, submission to AAA's Commercial Arbitration Rules means that Plaintiff will incur exorbitant fees and costs not normally associated with litigation, mandating that the arbitrator award fees to the prevailing party in contravention of California law, and foreclosing Plaintiff's meaningful ability to seek an appeal.

Mr. Lopez has no recollection of signing any agreement to arbitrate with Defendants. Lopez Decl., ¶ 3. Plaintiff does not recall seeing an agreement to arbitrate during his employment with Defendants and is not certain as to what an agreement to arbitrate is. *Id*.

In the approximately five years Mr. Lopez performed delivery services through RXO, he continuously drove a box truck that was 26 feet in length. *Id*. at ¶ 5. The trucks he drove and owned were registered with the USDOT and he repeatedly had to affirm his compliance with the Federal Motor Carrier Safety Administration, and all other federal, state and local laws, regulations and ordinances. *Id*. As a truck driver, Mr. Lopez was required to drive and travel throughout the greater Northern California region to deliver freight to XPO's retail customers. *Id*. at ¶ 8. Mr. Lopez estimates that he typically completed 12-13 deliveries per day and at times, has completed in excess of 20 deliveries in a

single day. *Id*. at ¶ 7. On one occasion, Mr. Lopez even drove 10 hours to Nevada to complete a delivery. *Id*. at ¶ 8. At one point in time, Mr. Lopez was even a borrowed contractor and was assigned to assist deliveries for RXO's client, Macy's, in Merced. Plaintiff was subjected to the same rigorous tasks of unloading and loading his truck and performing deliveries as he did in Union City. *Id*. at ¶ 9. All in all, there is no doubt that Mr. Lopez was anything but a "transportation worker" within the meaning and construct of the FAA.

### III.  **<u>ARGUMENT</u>**

### A.  ***Defendant Cannot Seek Arbitration Pursuant to the FAA Because Lopez Is A "Transportation Worker" Exempt from FAA Coverage***

Under its explicit terms, Section 1 of the Federal Arbitration Act ("FAA") exempts from its coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) The United States Supreme Court has defined the language "any other class of workers engaged in foreign or interstate commerce" to mean and include modern day "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001) ("*Circuit City*").) This provision, referred to as the "residual clause" or the "transportation worker exception," has been distilled by the Supreme Court to encompass transportation workers that play a direct and necessary role in the free flow of goods across borders. *See Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1785 (2022), citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121(2001). While courts have strained to interpret the transportation worker exception narrowly, the Supreme Court recently cautioned against such interpretations as courts "are not free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1792 (2022) ("*Saxon*") (internal citations omitted).

////

A transportation worker's agreement to arbitrate is not automatically governed by the FAA simply because the agreement states it should be. "By stating that it is subject to and governed by the FAA, the agreement necessarily incorporates § 1 of the FAA, which includes the exemption for transportation workers." *Garrido v. Air Liquide Indus.*, 241 Cal.App.4th 833, 839-40 (2015) ("*Garrido*").) In fact, the United States Supreme Court upheld the transportation worker exemption and held that in order to properly assert its power to compel arbitration, a court must first determine whether the FAA applies to the contract at issue before compelling arbitration. *New Prime, Inc. v. Oliveira*, 139 S.Ct. 523, 538 (2019). The Court does not need to do that here as Defendant's Motion cannot be based on the FAA whatsoever as Plaintiff was a delivery driver engaged in interstate commerce and therefore is exempt from the FAA under the transportation workers exemption. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910-11 (9th Cir. 2020) cert. denied, 141 S. Ct. 1374 (2021) ("*Rittmann*") (workers employed to transport goods carried across state lines are transportation workers engaged in interstate commerce even if they themselves do not cross state lines.)

To qualify for the Section 1 exemption from the FAA, an individual (1) must work for a business pursuant to a "contract of employment," (2) be a "transportation worker," and (3) be "engaged interstate commerce." *See Harden v. Roadway Package Sys., Inc*. (9th Cir. 2001) 249 F.3d 1137, 1140 (citing *Circuit City*, 532 U.S. at 118)).

While §1's exclusion for workers "engaged in commerce" is "narrower than the more open-ended formulation 'affecting commerce' and 'involving commerce'", this just means it exempts "FAA only employment contracts of transportation workers [not any worker involved in any way with "commerce"]." *Circuit City Stores, Inc.*, 532 U.S. at 106; *Rittmann*, 971 F.3d at 909-10. Otherwise, "[b]ecause the [FAA] gives no 'textual indication' that [§1's]

6

exemption] should be construed narrowly, 'there is no reason to give [it] anything other than a fair (rather than a 'narrow') interpretation.'" *See Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018) (citing A. Scalia & B. Garner, Reading Law 363 (2012)); *see also Rittmann*, 971 F.3d at 914 ("Nothing in *Circuit City* requires that we rely on the pro-arbitration purpose reflected in § 2 to even *further* limit the already narrow definition of the phrase 'engaged in commerce.'") (emphasis in original).

Defendant omits from its discussion the seminal decision in *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022) where the Supreme Court, in concluding that an airline ramp supervisor belonged to a "class of workers engaged in foreign or interstate commerce," principally considered "the actual work that the members of the class, as whole, typically carry out," that is, what the worker "frequently" does for the employer. *See* 142 S. Ct. at 1788, 1790-1792. The Supreme Court found that the plaintiff there, whom "frequently loads and unloads cargo on and off airplanes that travel in interstate commerce," is subject to the transportation worker exemption to the FAA. *Id*. at 1793.

*Saxon* also made clear that a worker need not actually cross state lines to fall within the transportation worker exception. *Id*. at 1791. This follows two federal appellate courts which have also held that the Section 1 exemption applies to "last mile" delivery drivers, like Plaintiff, who do not cross state lines but who deliver goods "in the flow of interstate commerce." *Rittmann*, 971 F.3d 904, 910-11 (Amazon's "last mile" delivery drivers who did not cross state lines were exempt under Section 1)[1]; *Waithaka v. Amazon.com, Inc.* (1st Cir. 2020) 966 F.3d 10 [same]; *see also Singh v. Uber Techs. Inc.* (3d Cir. 2019) 939 F.3d

---

[1] It is especially worth noting that the Supreme Court declined to review the Ninth Circuit's decision on its arbitration agreement and expressly declined to reach *Rittman* in *Saxon. See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021*). See also Saxon*, 142 S. Ct. at 1789 n.2.

210, 221–22 [recognizing "broad sweep" of the Section 1 exemption and holding that exemption could apply to Uber drivers.].)[2] Similarly, courts have found workers to fall within the exception where they are performing transportation relative to "one stop in a larger supply chain." *See Oakley v. Domino's Pizza, LLC*, 516 P.3d 1237, 1243 (Ct. App. Wash. 2022).

Before the Supreme Court's ruling in *Saxon*, the Ninth Circuit evaluated the transportation worker exemption in *Rittman.* In *Rittman*, the Ninth Circuit found that an Amazon Flex delivery driver was a "transportation worker[] engaged in the movement of interstate commerce and exempt from the FAA's application." *Rittman*, 971 F.3d at 915. In making its determination, the Ninth Circuit concluded that the transportation worker exemption applied to workers "engaged in the movement of goods in interstate commerce, even if they do not cross state lines." *Id*. As such, the Ninth Circuit's findings in *Rittman* are consistent with the Supreme Court's findings in *Saxon*. The two cases, read in tandem, establish that transportation workers are those workers that load and deliver goods that are either going to enter, or have already entered, interstate commerce. *See Saxon*, 142 S. Ct. at 1792 (finding that airplane cargo loaders are exempt under the transportation worker provision because they "perform 'activities within the flow of interstate commerce' when they handle goods traveling in interstate and foreign commerce. . ."); *see also Rittman*, 971 F.3d at 915 (finding that Amazon Flex delivery drivers transporting goods "for the last leg of the shipment to their destination" are transportation workers engaged in the movement of interstate commerce).

---

[2] Two California appellate courts are likewise in agreement, and have similarly held that the Section 1 exemption applied to drivers who did not cross state lines but transported goods that moved in interstate commerce. *Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056; *Nieto v. Fresno Beverage Co.* (2019) 33 Cal.App.5th 274. The Court here should similarly conclude that Plaintiff is a "transportation worker" who moved goods "within the flow of interstate commerce" and is therefore exempt from the FAA.

1  Other district courts in the Ninth Circuit are in accord with this analysis.

2  In *Rizvanovic v. United Parcel Service, Inc*. the court stated that,
[T]he Ninth Circuit's reasoning behind the *Rittman* holding is wholly
3  consistent with the *Saxon* court's clarification that a plaintiff satisfies the
§ 1 exemption if he or she plays a direct and necessary role in the free
4  flow of goods across borders—as do last leg delivery drivers. No. 1:21-
cv-01278-CDB, 2023 WL 346800, at *4 (E.D. Cal. Jan. 20, 2023).
5

6  Specifically, the *Rizvanovic* court notes that both the Supreme Court and

7  the Ninth Circuit made their determinations based on the work performed by the

8  plaintiff employees. *Id*. Additionally, the court in *Wynn v. United Parcel Service,*

9  *Inc*. determined that the *Saxon* court's decision did not contradict the Ninth

10  Circuit's determination in *Rittman*. No. 21-cv-10029-CRB, 2022 WL 18912481,

11  at *4 (N.D. Cal. Oct. 4, 2022). More to the point, the *Wynn* court found that

12  *Saxon* did not disturb the Ninth Circuit's reasoning that drivers transporting

13  "parcels from warehouses to in-state customers. . .are engaged in interstate

14  commerce because the goods they carry often originate out-of-state and 'remain

15  in the stream of interstate commerce until they are delivered.'" *Id*. at *4 (quoting

16  *Rittman*, 971 F.3d at 915).[3]

17  3.  As Workers Who Physically Transported Goods, Lopez and the

18  Putative Class were "Actually Engaged in the Movement of Goods"

19  Defendant argues that Lopez does not satisfy the "interstate commerce"

20  component because he did not cross state lines and because he "performed local

21

22  [3] Other districts in California have likewise applied *Rittman* and *Saxon* without
finding them to be in contention. *See, e.g., Ortiz v. Randstad*
23  *Inhouse Services, LLC*, No. ED CV 22-01399 TJH (SHKx), 2023 WL
2070833, at *3 (C.D. Cal. Jan. 18, 2023) on appeal in No. 23-55147 (9th
24  Cir. Feb. 17, 2023) (citing to Saxon and Rittman to find that tangential
activities connected to interstate commerce do not qualify for FAA
25  exemption); *Lopez v. Aircraft Service International, Inc*., No. CV 21-
7108-DMG (Ex), 2022 WL 18232726 (C.D. Cal. Dec. 9, 2022) on appeal in No.
26  23-55015 (9th Cir. Jan. 10, 2023) (applying both Saxon and Rittman to find that
plaintiff "is closer both physically and temporally to the actual movement of
27  goods between states than a truck mechanic who works on trucks that move
goods in interstate commerce."); *Lopez v. Shamrock Foods Co.*, CV 22-01719-
28  SSS (SHK), 2023 WL 2624438 (C.D. Cal. Mar 16, 2023) (harmonizing *Saxon*
and *Rittman* to conclude that local truck driver was exempt from FAA coverage).

9

deliveries of retail merchandise that had ended its interstate journey" (Mot. at 12:3-4). Defendant's sole argument as to this point is both legally and factually incorrect.

Defendant's argument that Mr. Lopez's "local" deliveries were confined in the geographical territory of Northern California has been soundly rejected by binding California precedent holding that "interstate travel is not necessary for section 1 to apply and [that] a delivery driver may fall 'within the scope of the exemption even though his deliveries were exclusively to destinations within California.'" *Muller*, 34 Cal. App. 5th at 1065 (emphasis in original); *Nieto*, 33 Cal. App. 5th at 282. "'Interstate commerce' includes not only goods that travel across state lines but also 'the intrastate transport of goods in the flow of interstate commerce.'" *Nieto*, 33 Cal. App. 5th at 283; *See also Harden v. Roadway Package Sys., Inc.,* 249 F.3d 1137, 1140 (9th Cir. 2001) (holding that delivery driver for predecessor company of FedEx fell within the § 1 exemption even though there was no indication the driver himself actually crossed state lines). As indicated above, both the Supreme Court in *Saxon*, the Ninth Circuit in *Rittmann,* and a collection of other California state and district courts, have also rejected such a narrow interpretation of the interstate commerce requirement.

As in *Rittman* where the Ninth Circuit held that delivery drivers were engaged in interstate commerce when they made local, last mile deliveries of goods that had been shipped across state lines (*Rittmann*, 971 F.3d at 907, 915), the same is true for Mr. Lopez and the Delivery Drivers he seeks to represent. Because those local deliveries constituted a step of the interstate travel of goods – albeit the last, typically intrastate step – those delivery drivers "form[ed] a part of the channels of interstate commerce[.]" The result is no different here for Mr. Lopez and the Delivery Drivers of RXO.

////

////

4.   Plaintiff and the Class of Workers He Seeks to Represent Operate in A Single, Unbroken Stream of Commerce

Defendant also appears to suggest that the "flow of commerce" automatically cuts off at the time its products reach Defendant's Union City location and that an entirely new flow of commerce begins when Mr. Lopez transports the cargo to its intended destination. Not so. "The flow of commerce begins with the manufacturer [and] ends with the consumer." *United States v. Kaplan*, 836 F.3d 1199, 1208-09 (9th Cir. 2016). Consistent with this fundamental principle, courts have continually focused on where the goods "originated." The "[U.S. Supreme] Court consistently has held that a worker transporting goods that had come from out of state…was 'engaged in interstate commerce,' even if the worker's role in transporting the goods occurred entirely within a single state." *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 20 (1st Cir. 2020). *See also Wynn*, 2022 WL 18912481, at *5 ("Because the goods that last-leg delivery drivers carry 'remain in the stream of commerce until they are delivered,' both plaintiffs are engaged in interstate commerce…") (citing *Rittmann*, 971 F.3d at 915).

Isolating the interstate commerce inquiry to only the journey from RXO's warehouse to customers would also be inconsistent with Defendant's business model.  RXO does not sell products to a local third-party retailer who, in turn, sells the same products to the retailer's customers. Nor is RXO anything like an app-based ride sharing employer where Mr. Lopez would take out ready-made food orders to residential establishments. For this reason, and others, Defendant misplaces its reliance on the ride sharing and takeout food delivery case (*e.g.*, *Capriole v Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021)), rather than "truck driver" and "last-mile" delivery cases. *i.e.*, *Muller*, 34 Cal. App. 5th at 1068 (distinguishing the two); *Nieto*, 33 Cal. App. 5th at 284 n.3; *Rittmann* (same). ////

Instead, Delivery Drivers and Mr. Lopez's transportation of goods was part of a single, fluid business model: Procuring out-of-state goods for the express purpose of coordinating and delivering them to RXO's clients' own customers in California. Using the interstate highway system, Delivery Drivers, including Plaintiff, completed the cycle of Defendant's interstate logistics business model by delivering goods to Defendant's retail customer's California customers. Thus, Mr. Lopez's primary purpose was to continue the flow of interstate commerce by transporting out-of-state freight and cargo to their intended destination. Said differently, Delivery Drivers, including Plaintiff, are undeniably "transportation workers" because they are workers whose primary duty is to physically complete the last phase of a continuous journey of the interstate commerce.[4]

RXO interstate business model provides an inseparable link between its coordination of out-of-state goods and its delivery of those same out-of-state goods. *Rittmann,* again, is not just instructive, but dispositive. In *Rittmann,* Amazon package delivery drivers were engaged in "a continuous interstate transportation" of goods because they picked up packages that had come across state lines to Amazon warehouses and then transported them "for the last leg" to their eventual destinations. *Id.* at 915-16. Amazon coordinated the deliveries

---

[4] *See, e.g., Int'l Broth. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) (truck drivers who delivered goods are transportation workers); *Nieto v. Fresno Beverage Co. Inc.*, 33 Cal. App. 5th 274, 281 (2019) (in state delivery driver of interstate goods qualifies as a transportation worker); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (drivers of delivery trucks for a company in the transportation industry are "indisputably … transportation worker[s]"); *Ward v. Express Messenger Sys. Inc. dba Ontrac*, Civ. A. No. 1:17-cv-02005 (Jan. 28, 2019), Dkt. 118 at *8 (last-mile delivery drivers were "transportation workers engaged in interstate commerce"); *Zamora v. Swift Transp. Corp.*, 2008 WL 2369769, at *6 (W.D. Tex. June 3, 2008) ("In order to be considered a transportation worker, an employee must actually be employed in the transportation industry, that is, an industry directly involved in the movement of goods); *Cole v Burnes Intn'l Security Services* (DC Cir. 1997) 105 F3d 1465, 1467; *see Harden*, 249 F3d at 1140 ("transportation workers" has been defined as workers "actually engaged in the movement of goods in interstate commerce").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

from origin to destination, and the packages were not transformed at the warehouses. *Id*. at 907, 915-17.

Like Amazon, RXO is directly involved in the procurement and the delivery of interstate goods. Mr. Lopez and RXO's Delivery Drivers, like the Amazon package delivery drivers, transport those goods "for the last leg" to their final destinations. *See Id*. at 915–16. Like Amazon, RXO is also involved in the process from beginning to the ultimate delivery of the goods to their destinations and its "business includes not just the selling of goods, but also the delivery of those goods." *See Id*. at 918. Because, like here, there is no evidence that the relevant goods are transformed into a different form and were procured out-of-state by RXO to be delivered to a RXO's client's California-based customer, Mr. Lopez and other similarly situated delivery drivers are engaged in interstate commerce "even if that engagement also involves intrastate activities." *See Rittmann*, 971 F.3d at 917 n.7.

**B.** ***XPO's Warehouse Employees Were Even Deemed "Transportation Workers" Exempt for FAA Coverage***

The Supreme Court in *Saxon* also rejected as too narrow the contention that Southwest Airlines' made that "only workers who physically move goods or people across foreign or international boundaries—pilots, ship crews, locomotive engineers, and the like—are 'engaged in foreign or interstate commerce'" 142 S. Ct. at 1791. Subsequently, the court in *Ortiz v. Randstad Inhouse Servs., LLC*, No. 22-cv-01399-TJH-SHK, 2023 WL 2070833, at *4 (C.D. Cal. Jan. 18, 2023) relying on *Saxon,* found that plaintiff, an XPO warehouse worker who used a pallet jack to move packages that arrived at the warehouse that XPO (RXO) owned and operated out of, was covered by the § 1 exemption. In *Ortiz*, Randstad was the staffing agency that provided workers to, *inter alia*, XPO and plaintiff Ortiz worked at an XPO warehouse in San Bernardino County in which Ortiz received and prepared packages of Adidas merchandise to leave the

warehouse. *Id.* at *1, *3.  The court in *Ortiz* first needed to determine whether the class of worker "play[ed] a direct and necessary role in the free flow of goods' across borders" and "'actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce.'" *Id.* at *3 (quoting *Saxon*, 142 S. Ct. at 1790).  The court ultimately concluded that since Ortiz was "*personally involved* in the movement of those goods," the FAA exemption applied to him. *Id.* at *4 (citing *Rittman*, 971 F.3d at 911) (emphasis added).

Similarly in *Lopez v. Aircraft Service Int'l, Inc.*, 2022 WL 18232726 (C.D. Cal. Dec. 9, 2022), the Hon. Dolly M. Gee concluded that a field technician responsible for fueling aircrafts at Los Angeles International Airport was a "transportation worker" exempt under § 1 because his work was "so closely related to interstate transportation as to be practically a part of it." *Id.* at *3, citing *Saxon*, 142 S. Ct. at 1789. Relying on Supreme Court's analysis in *Saxon*, the court in *Lopez* also held that while the "employee who adds fuel to cargo planes is not literally moving goods (as the plaintiffs in *Saxon* and *Rittmann* did), he is closer both physically and temporally to the actual movement of goods between states than a truck mechanic who works on trucks that move goods in interstate commerce (as was the case in *Holley-Gallegly*)." *Id.*

The same is true here if not even greater for Mr. Lopez and the class of Delivery Drivers he seeks to represent, as unlike the field technician in *Lopez* or the warehouse employee in *Ortiz*, Mr. Lopez actually and literally moved products for Defendant making him "so closely related to interstate transportation as to be practically a part of it." On a daily basis, Mr. Lopez was "personally involved" in the physical transportation of products in commercial trucks and was responsible to load and unload various "big bulky" products safely and in a timely manner. The duties of Delivery Drivers, applicable to Mr. Lopez, was to fulfill RXO's end-to-end platform for delivering products right to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

the consumer. There is no evidence presented by RXO to the contrary – nor can there be – and Mr. Lopez affirms that his primary role as a truck driver was to deliver and unload the cargo to XPO's client's customers.

### C.    *The Arbitration Agreement Is Procedurally Unconscionable*

Assuming arguendo that there was a meeting of the minds between the parties (there is not), the Arbitration Agreement is not enforceable because it is unconscionable. Unconscionability consists of both procedural and substantive elements. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required, and vice versa. *See Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n* (2019) 41 Cal.App.5th 753; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111.

"The procedural element focuses on 'oppression' or 'surprise.'" *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 87 (2003). Oppression occurs "[w]here the parties to a contract have unequal bargaining power and the contract is not the result of real negotiation or meaningful choice." *Id*. Surprise occurs when the terms are hidden. *Id*. Defendant's Arbitration Agreement has both.

The Delivery Service Agreement which contains the relevant arbitration provision is a pre-printed form that was buried among other new onboarding documents. *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1146 (2012) (procedural unconscionability found when arbitration agreement buried amongst other documents); *see Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("[A] contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'").  Moreover, contrary to Defendant's Motion, Plaintiff was presented with a bevy of documents in June 2018 which also contained the 14-page, 28-section Delivery Service Agreement. *See* Exh. 1 of Lopez Decl.

////

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

The coerced nature of the preprinted arbitration agreement is also exacerbated by the inequality of bargaining power that naturally exists between Defendant, a billion-dollar Forbes 500 company, and Mr. Lopez, who, like all other low-wage earning truck drivers, depends on work. *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175 (2002); *OTO*, 8 Cal. 5th at 127.

The oppression is further amplified by the fact that this was no ordinary business transaction between two business entities as Defendant would like the Court to believe, but rather, as Plaintiff alleges in his complaint and in his accompanying declaration, an elaborate attempt by RXO to cover up its wrongful misclassification of its drivers as "independent contractors." This is seen when Plaintiff alleges and recounts that RXO implements a requirement that as a condition for obtaining work, Plaintiff and others must set up a separate business entity, and then proceed to enter into a DSA that not only contains an arbitration provision, but provisions that are non-negotiable, and terms that are favorable to RXO.  The DSA, which includes the Arbitration Agreement, forces Delivery Drivers, like Plaintiff, to pay for numerous and substantial employment-related expenses, and to top off, an indemnification provision in which RXO is essentially insulated from any liability.  Given the overall nature of Defendant's scheme in the formation of the DSA the alleged Arbitration Agreement suffers a high degree of procedural unconscionability.

### D.   *The Arbitration Agreement Is Substantively Unconscionable*

"Substantive unconscionability" examines the fairness of a contract's terms. *OTO*, 8 Cal. 5th at 129. A substantive unconscionability analysis is "fact sensitive" and the Court must ensure that the agreement does not impose terms that are "unfairly one-sided" and unreasonably favorable to the more powerful party. *Id.* at 130; *Baltazar*, 62 Cal. 4th at 1244. The degree of substantive unconscionability depends on the degree of procedural unconscionability. *OTO*, 8 Cal. 5th at 130.  Courts are empowered to revoke arbitration agreements, or

any clause found to be unconscionable at the time it was made. Cal. Civ. Code §1670.5. In *Armendariz v. Foundation Health Psychare Services* (2000) 24 Cal.4th 83, 102-113, the California Supreme Court held that agreements to arbitrate disputes must satisfy five minimum requirements to be enforceable, including, *inter alia*, requiring require a written decision allowing judicial review *Id*. at 91, 102-103. That is absent in this Agreement. The California Supreme Court specifically found that a provision in an arbitration agreement that took away even one of these five basic requirements was substantively unconscionable as a result. *Armendariz*, 24 Cal. 4th at 99. The arbitration provision at issue fails to satisfy many of the minimum requirements.

1. <u>The Incorporation of Commercial Arbitration Rules Requires Plaintiff to Pay Excessive Fees and Costs Not Normally Associated with Litigation</u>

By incorporating AAA's Commercial Arbitration Rules - rather than AAA's Employment Arbitration Rules or Consumer Arbitration Rules - Plaintiff is required to pay excessive fees and costs not normally associated with litigation.  Under California law, any clause in an employment agreement that would impose "substantial forum fees" on an employee in their attempt to vindicate their unwaivable statutory rights is contrary to public policy and therefore substantively unconscionable. *Armendariz*, 24 Cal. 4th at 110. As the California Supreme Court made clear, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Id*. at 110--11 (emphasis in original); *see also Sonic-Calabasa A, Inc. v. Moreno* (2013) 57 Cal. 4th 1109,1143-44 (reaffirming *Armendariz's* prohibition on contractual terms that require an "equal division of costs between employer and employee" in arbitration, and further explaining that the

*Armendariz* rule is not preempted by the FAA or *Concepcion*).

Indeed, the United States Supreme Court has repeatedly suggested that a court may refuse to enforce an arbitration agreement and its corresponding delegation clause if the party resisting arbitration would be subject to an "unfair" fee-splitting arrangement or would otherwise be required to pay significant forum fees in arbitration. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (noting that "administrative fees attached to arbitration that are so high as to make access to the forum impracticable" may well be unenforceable); *Rent-A-Ctr.*, 561 U.S. at 74 (holding that the litigant could have challenged the substantive unconscionability of the delegation clause by showing that he was subject to an "unfair[] . . . fee-splitting arrangement," but noting that the plaintiff "did not make any arguments specific to the delegation provision"); *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum.").

For this reason, many courts have held the fee schedule in AAA's Commercial Arbitration Rules is substantively unconscionable when a stronger party seeks to impose the Rules on a weaker party via a contract of adhesion. *See*, *e.g.*, *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1254 (2006) (holding that the provision in AAA's Commercial Arbitration Rules stating that "arbitration costs are to be borne equally by the parties" was substantively unconscionable in a consumer case); *Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 996--97 (C.D. Cal. Aug. 16, 2010) (same; wrongful termination dispute between independent contractor and FedEx); *Dunham v. Envtl. Chem. Corp.*, No. 06-03389, 2006 WL 2374703, at *9 (N.D. Cal. Aug. 16, 2006) ("[AAA's] Commercial Rules would require [the employee] to pay half of the arbitrator's expenses, a fee not usually associated with litigation. As such, the cost-sharing provision of the Commercial Rules is clearly unconscionable under

*Armendariz*."); *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1176 (N.D. Cal. 2002) (holding in a consumer dispute "that [the fees provision of AAA's Commercial Arbitration Rules] is so harsh as to be substantively unconscionable"); *Popovich v. McDonald's Corp*, 189 F. Supp. 2d 772, 778 (N.D. Ill. 2002) (concluding arbitration agreement unconscionable after examining the fees the employee would have to pay under AAA's Commercial Arbitration Rules).

AAA's Commercial Arbitration were developed to govern "business transactions," not employment disputes, and therefore do not contemplate the need to protect weaker parties from exorbitant fees.  For example, the Commercial Rules require the entire filing fee to "be advanced by the . . . parties making a claim," which in this case could range anywhere from $3,850 to $8,475. Boyamian Decl., Exhs. 4, 5 at 11, 38, 39, 42; *see also* Dkt. 1, p. 5 (amount in controversy in this matter exceeds $5,000,000). Additionally, "[a]ll other expenses of the arbitration, including required travel and other expenses of the arbitration, AAA representative, and any witness and the cost of any proof produced at the direct request of the arbitrator, [is] borne equally by the parties." *Id*., Ex. 4 at 33. Finally, because the Rules are silent as to who pays the arbitrator's compensation, under California law each party is required to pay a pro rata share of the arbitrator's compensation. Cal. Code. Civ. Proc., § 1284. These costs are substantial and require Plaintiff to pay these expenses upfront as the DSA provides in § 21.1 of DSA that "*in the event of a misclassification dispute*, the parties expressly agree to use the commercial rules until a determination of employment statute has been made."[5]

---

[5] While RXO will point out to § 21.7 of the DSA which provides, in part, that "In the event Contract Carrier contends that, as a matter of law, it is not responsible for payment of any Arbitration Costs, Contract Carrier will have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that Contract Carrier is responsible for the costs. If

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

In this case, by making the unusual decision to adopt AAA's Commercial Arbitration Rules, rather than its Employment Arbitration Rules or Consumer Arbitration Rules, Plaintiff is required to pay excessive arbitration fees that he would normally not be required to pay in court.

2. <u>The Arbitration Provision Impermissibly Waives the Right to Appeal And Is Therefore Substantively Unconscionable</u>

A written award and judicial review is one of the five minimum requirements imposed by *Armendariz* to arbitration agreements that require arbitration of statutory and unwaivable rights. *Armendariz, supra*, p. 106. As the United States Supreme Court has stated, "[a]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute" at issue. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 232 (1987); *see also Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1353, fn. 14 (2008) ("when unwaivable statutory rights are at stake, this court has repeatedly held that review must be sufficient to ensure that arbitrators comply with requirements of the statute.") (internal citations omitted.). "Judicial review may be appropriate when granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." *Moncharsh v. Heily Lamp Blase*, 3 Cal.4th 1, 32 (1992).

Here, the Arbitration Agreement is silent as to what appeal rights the parties have, if any, in connection with the arbitration process. Exh. 1 to Schnayerson Decl.  Defendant cites to §§ 21.1, 21.7, and 21.9 to argue that the DSA provides for judicial review (Mot. at 11:20-21), but a closer review of those

---

necessary for arbitration of the dispute, XPO Last Mile agrees to cover the amount of the Arbitration Costs contested by Contract Carrier until such time as the Arbitrator determines payment responsibility," such language is vague, ambiguous, and does not reconcile with § 21.1 when the dispute, as here, centers on misclassification.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

sections simply reveals that there is none.  At most, sections 21.1 and 21.9 of the DSA are illusory and only provide for limited judicial review, or more like judicial intervention, to confirm or enter any judgment on the award issued by an arbitrator. As such, this provision seeks to limit the *Armendariz* requirement of judicial review that directly contravenes public policy.

3. <u>The Arbitration Provision Requires Plaintiff to Pay Reasonable Attorneys' Fees and Costs to the Prevailing Party And Is Therefore Substantively Unconscionable</u>

AAA's Commercial Arbitration Rules permit the arbitrator to "apportion fees, expenses, and compensation" in its final arbitration award. As explained in *Openshaw v. FedEx Ground Package System, Inc.*, since "the arbitrator [cannot] allocate costs until *after* the proceeding is over," Plaintiff will *still* be "responsible for [the] up-front fees and must risk the possibility that the arbitrator will allocate all costs to [them]."  731 F. Supp. 2d at 997 (emphasis added); *see also* § 21.1 of DSA ("In the event of a misclassification dispute, the parties expressly agree to use the commercial rules *until* a determination of employment statute has been made."). Additionally, given the limited permissible judicial review of arbitration awards, Plaintiff would be unable to vacate a final arbitration award that didn't apportion fees entirely to RXO. *See Williams v. Tully*, No. 02-05687, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005) (holding that an arbitrator did not "exceed his powers" by failing to apportion fees in compliance with California law because fee apportionment was governed solely by AAA's Rules).

Courts have found that provisions in arbitration agreements that purport to impose an obligation on the non-prevailing employee to pay the attorneys' fees of the prevailing employer, without considering whether the action was brought in bad faith, are unconscionable. In *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal. App. 4th 387, 394 (disapproved on other grounds in *Baltzar v. Forever*

*21, Inc.*, 62 Cal.4th 1237 (2016)), the Court found a provision in an arbitration agreement that "allows for the recovery of attorney fees and costs by the prevailing party in an arbitration" to be substantively unconscionable because it improperly gave the arbitrator the power to assess attorney fees against a non-prevailing plaintiff, regardless of whether the action was frivolous, unreasonable, without foundation, or brought in bad faith. Similarly, in *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 797 (2012), the Court held that the attorneys' fees provision in the arbitration agreement was unconscionable and unenforceable, in part, because it imposed on the employee the obligation to pay the employer's attorneys' fees where she would have no such obligation under her California statutory claims.

Further, this provision is inconsistent with Labor Code § 218.5(a), which states that employers, even if they are the prevailing party in an action brought for the nonpayment of wages, are not entitled to the recovery of attorneys' fees and costs unless the court finds that the employee brought the action in bad faith. Additionally, the minimum wage and overtime claims asserted in the operative Complaint are governed by Labor Code 1194.1, which contains a clear and unambiguous one-way fee shifting statute. Because the attorneys' fees provision in this arbitration agreement fails to consider whether the action was meritorious, and violates Section 1194.1, it is unconscionable and unenforceable.

**E.** *Defendant's Request for A Stay Is Not Warranted*

A stay of this matter pending the outcome of *Domino's Pizza, LLC v. Carmona*, 143 S. Ct. 361 (2022) ("*Carmona*") by the Ninth Circuit is not warranted. In *Saxon*, the Supreme Court held that food delivery drivers for local vendors do not constitute a class of workers directly involved in transporting goods across state or international borders that fall within Section 1's exemption. *Saxon*, 142 S. Ct. 1789.  Subsequently, in *Carmona*, the Supreme Court vacated the Ninth Circuit's opinion that pizza delivery drivers were interstate

transportation workers under Section 1 of the FAA and remanded the case for further consideration in light of *Saxon.*  As indicated above, the Supreme Court itself declined to review the Ninth Circuit's decision in *Rittman* on its arbitration agreement and expressly declined to reach *Rittman* in *Saxon*. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021); *see also Saxon*, 142 S. Ct. at 1789 n.2.

Therefore, all indications are that the anticipated *Carmona* decision will be limited to whether food delivery drivers for local vendors are part of the class of workers directly involved in transporting goods across state or international borders that fall within Section 1's exemption.  Said differently, the Ninth Circuit's forthcoming decision on *Carmona* is highly unlikely to impact the question of whether "last mile" delivery drivers, i.e., **truck drivers**, are within the ambit of the *Saxon* Court's determination of "transportation workers."

Accordingly, this Court should exercise its broad discretion and decline to enter a stay of the proceedings despite the pendency of the *Carmona* decision. *See e.g.*, *Rizvanovic v. United Parcel Service, Inc.*, No. 1:21-cv-01278-CDB, 2023 WL 346800, at *4 (E.D. Cal. Jan. 20, 2023) (Recognizing the Supreme Court's vacatur of the Ninth Circuit's *Carmona* decision but nevertheless finding that Section 1 exemption applied to a class of UPS' personal vehicle drivers). The Court should likewise do the same here.

## IV.  CONCLUSION

For all the foregoing reasons, Defendant's Motion must be denied.


Dated: April 14, 2023                         BOYAMIAN LAW, INC.


                                              By: /s/ Michael Boyamian
                                              MICHAEL H. BOYAMIAN
                                              Attorneys for Plaintiff Maynor Mejia
                                              Lopez and all others similarly
                                              situated

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION