Mia Farber (State Bar No. 131467)
JACKSON LEWIS P.C.
725 South Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone: 213-689-0404
E-mail: Mia.Farber@jacksonlewis.com

Benjamin J. Schnayerson (State Bar No. 257857)
Julie Y. Zong (State Bar No. 309804)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail: Ben.Schnayerson@jacksonlewis.com
E-mail: Julie.Zong@jacksonlewis.com

Attorneys for Defendant
RXO LAST MILE, INC. (ERRONEOUSLY SUED
HEREIN AS XPO LAST MILE, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA, an individual; individually and on Behalf of All Similarly Situated Individuals,<br><br>　　　　　　Plaintiff(s),<br><br>　v.<br><br>XPO LAST MILE, INC., A Georgia Corporation, and DOES 1 through 25, Inclusive,<br><br>　　　　　　Defendants. | Case No. 3:22-CV-08976-SK<br><br>**DEFENDANT RXO LAST MILE, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 28, 2023<br>Time: 9:30 a.m.<br>Courtroom: C<br>Judge: Magistrate Judge Sallie Kim<br><br>Action Filed:　10/24/2022<br>Trial Date:　　None Set<br>Date Removed:　12/19/2022 |

DEFENDANT RXO LAST MILE, INC.'S
REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION　　　　CASE NO. 3:22-CV-08976-SK

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant RXO Last Mile, Inc. ("RXO LM" or "Defendant"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and the Delivery Service Agreement as signed and accepted by Plaintiff Maynor Mejia ("Plaintiff"), submits this reply in support of its Motion to Compel Arbitration.

**I.     INTRODUCTION**

Plaintiff seeks to transform local delivery drivers that move goods from local warehouses and retail locations, and who install and arrange those goods in consumer homes, into "transportation workers" akin to seamen and rail workers excluded from the Federal Arbitration Act's ("FAA") coverage. Plaintiff's arguments are misplaced and inconsistent with the U.S. Supreme Court's interpretation of the transportation worker exception, which requires the worker to have a "necessary role in the free flow of goods" among the states. *Circuit City v. Adams*, 532 U.S. 105 (2001). Plaintiff has not proved he has such a role.

Furthermore, Plaintiffs' arguments that the agreement are unconscionable stray from California's law of unconscionability, a contractual defense to an agreement. Indeed, it is well accepted that arbitration agreements, like the one here, that are accepted in the normal course, do not hide the arbitration provisions, offer a chance to opt-out, and invoke the American Arbitration Association's procedural rules are neither procedurally nor substantively unconscionable. Nothing about this Arbitration Agreement makes it unconscionable and Plaintiff's inability to remember that the Delivery Service Agreement (the agreement on which his claims are based) contained an agreement to arbitrate is not a sufficient reason to avoid his obligation to arbitrate.

Plaintiff also objects to RXO LM's request for a stay of this motion pending the Ninth Circuit's decisions in the *Carmona* and *Miller* cases, yet the Ninth Circuit is set to decide, in both cases, whether the transportation worker exception applies to certain commercial truck drivers that perform local deliveries of goods that have travelled in interstate commerce. These decisions will be made with the benefit of the United States Supreme Court's decision in *Saxon*, and RXO LM contends that they will influence the proper standard for this Court to apply here. Given that Plaintiff will suffer no prejudice, and RXO LM could otherwise be deprived of its bargained for

forum, RXO LM requests a stay pending the outcome of those cases.

For these reasons RXO LM asks that the Court refer this case to arbitration, or stay this motion and case pending *Carmona* and *Miller* so that the Court has the benefit of the Ninth Circuit's application of *Saxon* to circumstances like those here.

## II.    LEGAL ARGUMENT

### A.    Plaintiff Is Not a Transportation Worker Excluded from the FAA.

Contrary to Plaintiffs' positions, "[t]he burden is on the party opposing arbitration … to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 629 (9th Cir. 2021) vacated by Domino's Pizza, LLC v. Carmona 143 S. Ct. 361 (2022) and citing *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008). Plaintiff has not carried Plaintiff's burden to prove that Plaintiff is excluded from the FAA's coverage. Plaintiff contends, however, that the transportation worker exception outlined in Section 1 of the Federal Arbitration Act ("FAA") applies because he crossed state lines twice while transporting goods that had not yet fallen out of the interstate journey. *See* ECF 25, Pls. Opp'n at 7-14. Plaintiff is mistaken.

The text of the FAA explains that the exclusion applies only when a worker is part of a class of workers actively engaged in interstate commerce: "…nothing herein contained shall apply to contracts of *employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce*. 9 U.S.C.S. § 1 (emphasis added). The United States Supreme Court, in *Circuit City* explained that this language must be construed "in a manner consistent with the FAA's purpose" (*i.e.*, to promote arbitration and avoid hostility to it) by ensuring the exception "be afforded a narrow construction." 532 U.S. at 111. Since *Circuit City*, the Courts of Appeal have articulated various guidelines for evaluating whether workers are excluded from the FAA's coverage.[1]  The U.S. Supreme Court's decision in *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1790 (2022) provides a more structured framework for evaluating whether the exclusion applies.

---

[1] *See, e.g., Bissonnette v. LePage Bakeries Park St., LLC*, No. 20-1681, 2022 U.S. App. LEXIS 27628 (2d Cir. May 5, 2022); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854 (9th Cir. 2021); *Hamrick v. Partsfleet, Ltd. Liab. Co.*, 1 F.4th 1337 (11th Cir. 2021); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005); Lenz v. Yellow Transp., Inc., 431 F.3d 348 (8th Cir. 2005); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020).

*Saxon* reiterated that the "class of workers engaged in foreign or interstate commerce" provision must be given its "ordinary, contemporary, common meaning" and explained that the analysis of whether a worker is subject to the exclusion is logically evaluated in two steps. The first step defines what the class of workers does, and the second determines whether that class is engaged in interstate or foreign commerce. Here there is little dispute about what Plaintiff does and much of the dispute is about whether Plaintiff is engaged in commerce as that term is used in the Section 1 exclusion. Nonetheless, both issues are addressed below.

### 1. Plaintiff is a Commercial, Local Delivery Driver.

According to *Saxon*, to evaluate whether the Section 1 exclusion applies, the Court will need to define the "class of worker" at issue in the case. *Saxon*, 142 S. Ct. at 1788. This is defined not by what the purported employer does, but focuses on "the actual work that the members of the class, as a whole, typically carry out." *Id.*

Here, there is no dispute that Plaintiff signed the Delivery Service Agreement ("DSA") that, in relevant part, states that Plaintiff's business is a federally authorized motor carrier (an entity or person that provides motor vehicle transportation for compensation (49 U.S.C. §13102(14)), which means that Plaintiff's business may move freight in interstate commerce (*see, e.g.*, 49 C.F.R. §390.3). The DSA also states that the parties' shared intention to "accomplish the safe and efficient, pick up, transportation, delivery, and installation of freight." ECF 21, Ex. 1, "Objectives". The parties agree that RXO LM engaged Plaintiff's business to transport freight. Indeed, Plaintiff admits that he "typically" picked up truckloads at a warehouse in Union City, California, and made deliveries "within an 80-mile radius of the Union City warehouse," which is all within California. ECF 25-2, Declaration of Pl. Maynor Mejia Lopez, ¶¶5, 8.

In sum, Plaintiff is among those delivery drivers and installers, that completed local deliveries of large footprint home furnishings (such as furniture and appliances) that were moved from a local warehouse to fulfill a local consumer's purchase of those goods.[2]

---

[2] RXO LM does not concede that the "class of workers" aligns with the proposed class definition. The circumstances around the nature of the deliveries performed by any putative class member could influence whether the transportation worker exception applies. RXO LM intends to challenge Plaintiff's attempt to certify the "class" pursuant to Rule 23, and its position regarding the "class of workers" considered for the exclusion is a legally distinct matter.

### 2. These Local Delivery Drivers Are Not Engaged in Interstate Commerce.

In the second part of the analysis under the Section 1 exclusion, the analysis switches from what the worker is doing to whether the worker is "engaged in foreign or interstate commerce" when performing the work at issue. *Saxon*, 142 S. Ct. at 1789. *Saxon* confirms that this analysis seeks to evaluate whether the worker "play[ed] a necessary and direct role in the free flow of goods across borders." *Id.* at 1790 citing *Circuit City*, 532 U.S. at 121. *Saxon* also provided guidance about what this phrase means. For example, *Saxon* explained that the exclusion is satisfied only when "interstate transportation is still in progress," which occurs when workers are loading and unloading cargo on a vessel "bound for interstate transit." *Saxon*, 142 S. Ct. at 1790. *Saxon* limits application of the exclusion to those who are facilitating interstate transportation as a "central feature" of their work.

Even before *Saxon*, the Ninth Circuit explained that it is useful to examine where the goods a "come to rest" to help evaluate whether "interstate movement…is a central part of the class members' job description," and whether worker's activities "form part of a single, unbroken stream of interstate commerce that renders interstate travel a central part of." *Capriole v Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910 (9th Cir. 2020).

Here, Plaintiff's last mile delivery services were overwhelmingly local in nature. As a threshold matter, the merchandise that Plaintiff transported to the customers of RXO LM's retail clients had fallen out of the stream of interstate commerce. The goods that Plaintiff transported were generally moved by the retailer (upon a customer order) to an RXO LM warehouse, where the product, along with various other orders and products were staged and organized into efficient truckloads for local delivery. *See* Declaration of Tim Anthamatten ("Anthamatten Decl.") ¶4. Some clients, for example Peloton, provided RXO LM stock that RXO LM would tender to delivery service providers to satisfy customer orders. Anthamatten Decl. ¶5. In theory, the customers who purchase the merchandise from the retailer could acquire the goods on their own by picking them up at the retailer's distribution center (whether a brick-and-mortar retail store or warehouse) and transport the items to their own homes. Certainly, this localized transaction is not

considered part of interstate commerce just because the goods were once in interstate commerce. Likewise, the delivery services at issue are not akin to those transportation services performed by seamen and railroad employees who are part of moving goods great distances, among the states. Plaintiff thus is not "engaged in interstate commerce" because the delivery services at issue are localized in nature and unnecessary for the "free flow" of goods among the states.

Plaintiff's argument that Plaintiff crossed state lines twice is inadequate to prove that he is engaged in interstate commerce. *Cf.* Lopez Decl. ¶8 ("two occasions where deliveries required travel out of state"). *Saxon* explains that interstate transportation (and activity directly related to it) must be a "central feature" of the work to transform it into interstate commerce. 142 S. Ct. at 1783. Other cases have addressed this issue. A worker that sometimes crosses state lines does not, by crossing a state line, trigger the exclusion. *See Rent-A-Center, Inc.*, 398 F.3d at 1289-1290 (ruling the exception does not apply to those who sometimes cross state lines); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020) ("we consider whether the interstate movement of goods is **a central part** of the class members' job description" (emphasis added)).

In *Hill*, for example, the court considered whether a worker that transported merchandise across state lines "as part of his job duties" was "'engaged in interstate commerce' within the meaning of the [FAA]." 398 F.3d at 1289. The court expressed doubt that Congress would be "any more concerned about the regulation of the interstate transportation activity incidental to [the plaintiff's] employment" than it would in regulating the activities of an "interstate traveling pharmaceutical salesman who incidentally delivered products in his travels, or a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town." *Id*. at 1289-90. The *Hill* court reasoned that broadening the scope of the exclusion would "swallow the general policy" of enforcing arbitration agreements. *Id*. at 1290.

Moreover, Plaintiff's argument that he understood that the goods he delivered originated outside of California likewise misses the mark. *Cf.* Lopez Decl. ¶6 ("I understood that the product was still in transit" and unavailable for delivery). Saxon makes abundantly clear that the kinds of transportation subject to the exclusion is that which helps move a product among the states, not

localized delivery of merchandise that was predestined for in-state inventories.[3] *Saxon*, 142 S. Ct. at 1790 (explaining that the exclusion applies only to "cross-border commerce" and those intricately involved in it). On this point *Rittman* is distinguishable. *Rittman* held that AmFlex drivers were excluded because they are part of a chain of interstate transactions through which Amazon (in that context anyway) moves goods through its warehouses, "across state lines" and to their ultimate destination. That is not what happens here.

To date, Plaintiff has completed 6,271 deliveries arising out of his contractual relationship with RXO LM. *See* Anthamatten Decl. ¶6. Plaintiff says that two of those movements crossed a state line. Lopez Decl. ¶8. This *de minimis* activity crossing state lines further supports that Plaintiff has not shown that he was engaged in interstate commerce or that he played a necessary role in the free flow of goods among the states. If this Court denies RXO LM's motion to compel arbitration, RXO LM reserves the right to renew this motion after discovery has concluded.

**3.   A Stay Remains Appropriate Until The Ninth Circuit Decides *Carmona* and *Miller*.**

Plaintiff incorrectly argues that the Court should not stay this case pending the Ninth Circuit's decisions in *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627 (9th Cir. 2021) and *Miller v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 57375, at *2 (W.D. Wash. Mar. 29, 2022) because those decisions are "unlikely to impact" the court's analysis here." Pls. Opp'n at 23.  RXO LM disagrees.  The issue before the Ninth Circuit in *Carmona* is whether the *Saxon* impacts whether *Domino's* supply truck drivers who deliver ingredients and supplies from a California-based warehouse to franchises are engaged in interstate commerce. In *Miller*, the Ninth Circuit confronts the question of whether Amazon local delivery drivers are transportation workers for purposes of the FAA exemption. As discussed, and applied above, the *Saxon* decision now provides the Ninth Circuit with new guidance in this area of law, that may result in a decision that overturns or distinguishes *Rittman*. As a result, both of these decisions are critical to the question before this court about the FAA transportation worker exemption.

---

[3] Indulging Plaintiff's interpretation would also convert every local delivery of a good that ever passed through interstate commerce into an interstate transaction excluded from the FAA's coverage. *Circuit City* and its progeny make clear that was not Congress intended, nor does the reading track the statutory language.

Additionally, Plaintiff ignores the proper test for staying a case, as identified in the moving papers. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). A stay would not result in any damage or prejudice to Plaintiff's case, in part because the stay would not be very long. The parties in *Carmona* are simply waiting for a hearing date. *See* Court of Appeals Docket No. 21-55009, Documents 53, 56, 60 and 64. In *Miller,* the parties are simply awaiting the decision. *Miller*, 2022 U.S. Dist. LEXIS 57375, at *6. Furthermore, Plaintiff's claims and damages will not be impacted at all by a stay. In fact, Plaintiff has articulated no prejudice in his Opposition.

On the other hand, there is a significant hardship and inequity if RXO LM must go forward with this case without the decisions in *Carmona* and *Miller*, especially if the result is moving forward in litigation and thwarting RXO LM's bargain to arbitrate.

**III.    The Arbitration Agreement Is Not Unconscionable.**

Contrary to Plaintiff's position, the Arbitration Agreement is both procedurally and substantively unconscionable. To invalidate this Arbitration Agreement under California law, Plaintiff must establish there is both procedural and substantive unconscionability. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural unconscionability centers on oppression and surprise. *Armendariz*, 24 Cal. 4th at 114. Plaintiff argues procedural unconscionability because Plaintiff had unequal bargaining power and the terms were purportedly hidden. Pl.'s Opp. Brief, p. 15, ln. 12 – 16. Surprise occurs when the agreed-upon terms are hidden in the form drafted by the party seeking enforcement. *Tri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 (2014). "Failing to highlight" these terms do not equate to "hid[ing]" arbitration provisions. *Sanchez v. Valenzia Holding, Co., LLC*, 61 Cal. 4th 899, 914 (2015). The Arbitration Agreement has neither oppression nor surprise.

The Arbitration Agreement appears on the twelfth page of a 15-page agreement. *See* DSA, p. 12. Contrary to Plaintiff's argument that the Arbitration Agreement is a "pre-printed form buried" among other documents, the DSA stands on its own and forms the contractual basis for

7

DEFENDANT RXO LAST MILE, INC.'S
REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION                    CASE NO. 3:22-CV-08976-SK

the relationship under which Plaintiff completed local deliveries. Pl.'s Opp. Brief, p. 3, ln. 22 – 24. It required a signature that was separate from any of the other onboarding documents.

The DSA's arbitration terms are capitalized, underlined, and bolded: "**<u>ARBITRATION OF CLAIMS</u>**." The font is the same size as the rest of the document, except the bolded and capitalized statement: "**PARTIES AGREE THAT ALL SUCH DISPUTE WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL**." The arbitration terms extend to page 14. Plaintiff is also advised to consult an attorney on the contract terms. DSA, p. 14, ¶ 21.11. For these reasons, Plaintiff cannot argue the arbitration was hidden.

Plaintiff's argument that he has unequal bargaining power is also belied by the facts. Plaintiff was an independent business owner, that figured out how to register and set up an LLC, obtain insurance. Pl's Opp. Brief, p. 9, ln. 17 – 22. Plaintiff also sophisticated enough to employ drivers and helpers to complete the agreed delivery services. Declaration of Mejia Lopez ¶ 3. Plaintiff was also sophisticated enough to understand the arrangement, especially after working for another motor carrier for a year before contracting contracted with RXO. Pl's Opp. Brief, p. 3, ln. 13 – 15.

The Arbitration Agreement included a 30-day Opt-out Provision that expressly disclaimed any consequence for opting out of the arbitration agreement. DSA, p. 14, ¶ 21.10; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (2016) (right to opt-out of arbitration necessarily renders an arbitration clause procedurally conscionable as a matter of law). Plaintiff never opted out of the Arbitration Agreement. Plaintiff chose to accept the terms of the agreement to reap the benefits of being a Delivery Service Provider.

Finally, Plaintiff argues that the indemnification provision is procedurally unconscionable. We argue that the standard for indemnification or no-liability clauses is whether there was a "meaningful choice in the contract formation process." *Blackrock Cap. Inv. Corp. v. Fish*, 239 W. Va. 89, 100 (2017). Here, most importantly, Plaintiff had a 30-day opt-out period. Plaintiff could also raise the issue with an attorney. Plaintiff can weigh the benefits of becoming a Contract Carrier or remaining a Driver. Thus, Plaintiff had other employment options. As a result, the DSA is not

a contract of adhesion.

### IV. The Arbitration Agreement Is Not Substantively Unconscionable

Since the Arbitration Agreement is procedurally conscionable, Plaintiff's threshold for proving substantive conscionability is high. The Arbitration Agreement is not substantively unconscionable.

#### 1. The AAA Rules and Fee Schedule Are Not Unconscionable.

Plaintiff asserts the AAA Rules impose "excessive fees and costs".[4] The AAA's rules, however, preclude a situation where fees and costs greater than those incurred in litigation might arise. When an independent contractor makes a claim, the AAA Rules require the Employment Rules to apply. ECF 25-1, AAA Comm. Arb. Rules and Mediation Proc., p. 10, R-1. The Employment Fee Schedule requires that Defendant pay most or all of the fees, instead of adopting the cost-sharing provision found in the Commercial Rules. *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1176 (N.D. Cal. 2002). The resulting fee schedule is less than the cost of suing in California state court.

#### 2. The Arbitration Provision Does Not Waive Statutory Rights.

The Arbitration Agreement fulfills the five minimum requirements imposed by *Armendariz*, including the right to appeal an arbitration award in court. *Armendariz, supra*, at p. 106. The Supreme Court states that "'Although judicial scrutiny of arbitration necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute' at issue." *Shearson/Amer. Express, Inc. v. McMahon*, 482 U.S. 220, 232 (1987). *Armendariz* holds that for judicial review to be accomplished, an arbitrator must issue a "written arbitration decision that will review, however briefly, the essential findings and conclusions on which the award is based." *Armendariz* at p. 107. The AAA's Rules protect against these issues.

Contrary to Plaintiffs' arguments, the DSA does not limit appeals. In fact, the DSA does not address how to appeal an arbitrator's award. Plaintiff may appeal to the extent provided under law. Even if the DSA was deemed unconscionable, it has a savings clause under which the Court

---

[4] Plaintiff also considers this procedural unconscionability, but it has nothing to do with formation, so belongs under the substantive unconscionability analysis.

may remove any offending provisions.

### 3. Costs Are Not Shifted to Plaintiff.

The DSA does not compel cost shifting. The AAA Employment Rules state merely that the arbitrator may grant attorneys' fees and costs pursuant to the laws that would have been applied in court. Here, the application is compatible with the holding under *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 394 (2010). The arbitrator may assess attorney fees against the losing party, or the prevailing party if the action was brought in bad faith. *Id.* at 394. The Arbitration Agreement is not unconscionable as a matter of law.

## V. CONCLUSION

For these reasons, and those in RXO LM's opening brief, RXO LM respectfully requests an Order: (i) compelling arbitration of all Plaintiff's claims in this pending action; and (ii) staying all further judicial proceedings on Plaintiff's claims pending completion of arbitration pursuant to Section 3 of the FAA. In the alternative, RXO LM respectfully requests an Order staying these proceedings pending the Ninth Circuit's clarification of how the Section 1 FAA exception applies in *Domino's* and *Miller*.

Dated: April 21, 2023                            JACKSON LEWIS P.C.

By: */s/ Benjamin J. Schnayerson*
Mia Farber
Benjamin J. Schnayerson
Julie Y. Zong
Attorneys for Defendant

RXO LAST MILE, INC. ERRONEOUSLY SUED AS XPO LAST MILE, INC.

4889-3430-5118, v. 5