MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
ARMAND R. KIZIRIAN, SBN 293992
armand@boyamianlaw.com
**BOYAMIAN LAW, INC.**
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:   (818) 547-5300
Facsimile:   (818) 547-5678

Attorneys for Plaintiff Maynor Mejia Lopez,
Individually and On Behalf
of All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA LOPEZ, an individual; Individually and on Behalf of All Similarly Situated Individuals,<br><br>Plaintiff,<br><br>v.<br><br>XPO LAST MILE, INC., A Georgia Corporation; and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No.: 3:22-CV-08976-SI<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT RXO LAST MILE, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>[*Filed Concurrently with the Declaration of Armand R. Kizirian*] |

1

**TABLE OF CONTENTS**

2 I. INTRODUCTION…………………………………………………………..1

3 II. RELEVANT FACTUAL BACKGROUND…………………………………2

4 III. ARGUMENT………………………………………………………………...3

5     A. Absent FAA Preemption, Arbitration Cannot be Compelled Here

6         Because California Common Law and Statutory Protections Prevent An

7         Employer from Thwarting an Employee's Ability to "Vindicate

8         Unwaivable Rights" Afforded Under the State's Wage and Hour Laws....3

9           1. The Class Action Waiver Impermissibly Interferes with Plaintiff's

10             Vindication of His Statutory Rights Under the Gentry Rule……..4

11           2. Labor Code § 229 Invalidates the Arbitration Agreement and Is

12             Not Preempted Under The CAA…………………………………7

13     B. Defendant Cannot Seek Arbitration Pursuant to the CAA Because The

14         Arbitration Agreement is Permeated With a High Degree of

15         Unconscionability……………………………………………………....8

16           1. The Arbitration Agreement Is Procedurally Unconscionable.........8

17           2. The Arbitration Agreement Is Substantively Unconscionable……8

18             i. The Incorporation of Commercial Arbitration Rules

19               Requires Plaintiff to Pay Excessive Fees and Costs Not

20               Normally Associated with Litigation……………………..11

21             ii. The Arbitration Provision Impermissibly Waives the Right

22               to Appeal And Is Therefore Substantively

23               Unconscionable……………………………………………..15

24             iii. The Arbitration Provision Requires Plaintiff to Pay

25               Reasonable Attorneys' Fees and Costs to the Prevailing

26               Party And Is Therefore Substantively Unconscionable….16

27             iv. The Arbitration Provision is Effective Only If the Court

28               Agrees that the Class Action Waiver is Effective; If Not,

the Arbitration is Cancelled…………………………………17

C. The Unconscionable Provisions Cannot be Severed and the Contract

Cannot be Reformed…………………………………………………..…18

IV. CONCLUSION………………………………………………………………..21

1

2

# TABLE OF AUTHORITES

3  **State Cases**

4  *Armendariz v. Foundation Health Psychare Services*

5      (2000) 24 Ca1.4th 83..............................................................................*passim*

6  *Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n*

7      (2019) 41 Cal.App.5th 753 ............................................................................ 8

8  *Baxter v. Gemvorth N. Am. Corp.*

9      (2017)16 Cal.App.5th 713 ........................................................................... 20

10  *Cable Connection, Inc. v. DIRECTV, Inc.*

11      (2008) 44 Cal.4th 1334................................................................................ 15

12  *Carbajal v. CWPSC, Inc.*

13      (2016) 245 Cal. App. 4th 227..................................................................... 18

14  *Chang's China Bistro, Inc.*

15      (2016) 245 Cal. App. 4th 1242 ................................................................... 17

16  *Fitz v. NCR Corp.*

17      (2004) 118 Cal. App. 4th 702..................................................................... 20

18  *Garrido v. Air Liquids Indus. U.S. LP*

19      (2017) 241 Cal.App.4th 833................................................................ 3, 5, 6, 7

20  *Gentry v. Superior Court*

21      (2007) 42 Cal.4th at 463.......................................................................*passim*

22  *Getty v. Getty*

23      (1986) 187 Cal.App.3d 1159 ...................................................................... 20

24  *Gutierrez v. Autowest, Inc.*

25      (2003) 114 Cal. App. 4th 77......................................................................... 8

26  *Hoover v. Am. Income Life Ins. Co.*

27      (2012) 206 Cal.App.4th 1193 ...................................................................... 7

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Iskanian v. CLS Transp. Los Angeles, LLC*
    (2014) 59 Cal.4th 348......................................................................... 5

*Kolani v. Gluska*
    (1998) 64 Cal.App.4th 402.............................................................. 20

*Lane v. Francis Capital Management LLC*
    (2014) 224 Cal.App.4th 676............................................................. 7

*Mercuro v. Superior Court*
    (2002) 96 Cal. App. 4th 167............................................................ 9

*Moncharsh v. Heily Lamp Blasé*
    (1992) 3 Cal.4th 1........................................................................... 15

*OTO, L.L.C. v. Kho*
    (2019) 8 Cal.5th 111.................................................................... 8, 10

*Ramos v. Superior Court*
    (2018) 28 Cal.App.5th 1042............................................................ 14

*Samaniego v. Empire Today LLC*
    (2012) 205 Cal. App. 4th 1138......................................................... 8

*Sanchez v. Valencia Holding Co., LLC*
    (2015) 61 Cal. 4th 899.................................................................... 12

*Serafin v. Balco Properties Ltd., LLC*
    (2015) 235 Cal. App. 4th 165.......................................................... 18

*Stirlen v. Supercuts, Inc.*
    (1997) 51 Cal. App. 4th 1519.......................................................... 18

*Swain v. LaserAway Med. Grp., Inc.*
    (2020) 57 Cal. App. 5th 59.............................................................. 12

*The McCaffrey Group, Inc. v. Superior Court*
    (2014)224 Cal.App.4th 1330........................................................... 14

**Federal Cases**

*Antonelli v. Finish Line, Inc.*

    (N.D. Cal. Feb. 16, 2012) No. 5:11-cv-03874, 2012 U.S. Dist. LEXIS

    19787, 2012 WL 525538 .................................................................... 13

*Chavarria v. Ralphs Grocer[y] Co.*

    (C.D. Cal. 2011) 812 F. Supp. 2d 1079 ....................................... 13

*Chavarria v. Ralphs Grocery Co.*

    (9th Cir. 2013) 733 F.3d 916 ........................................................ 13

*Circuit City Stores, Inc. v. Adams*

    (9th Cir. 2002) 279 F.3d at 889 ................................................... 12

*Lim v. Tforce Logistics*, LLC

    (9th Cir. 2021) 8 F.4th 992 ...................................................... 2, 19

*Lim v. TForce Logistics, LLC*

    (9th Cir. 2021) 8 F.4th 992 .................................................... 12, 13

*Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*

    (N.D. Cal. 2009) 630 F. Supp. 2d 1084 ..................................... 20

*Meyer v. Irwin Industries, Inc.*

    (C.D. Cal. 2010) 723 F.Supp.2d 1237 .......................................... 8

*Milliner v. Bock Evans Fin. Couns., Ltd.*

    (N.D. Cal. 2015) 114 F.Supp.3d 871 ............................................ 9

*Mitchell v. DeMario Jewelry*

    (1960) 361 U.S. 288 ....................................................................... 6

*Molina v. Scandinavian Designs, Inc.*

    (N.D. Cal. Apr. 21, 2014) WL 1615177 ....................................... 9

*Mullen v. Treasure Chest Casino, LLC*

    (5th Cir. 1999) 186 F.3d 620 ................................................. …6

*Newton v. Am. Debt Servs., Inc.*

    (N.D. Cal. 2012) 854 F.Supp.2d 712 aff'd, 549 F. App'x 692 (9th Cir. 2013)................................................................................................. ..14

*Ortolani v. Freedom Mortg. Corp*., No. EDCV 17-1462(KKx), 2017 U.S. Dist.

    LEXIS 232308, 2017 WL 10518040, at *6 (C.D. Cal. Nov. 16, 2017) ..... 13

*Pokorny v. Quixtar, Inc*.

    (9th Cir. 2010) 601 F.3d 987.................................................... 9, 17

*Reyes v. Hearst Commc'ns, Inc.*

    (9th Cir. June 22, 2022) No. 21-16542, 2022 WL 2235793 ....................... 12

*Rizvanovic v. United Parcel Service, Inc*.

    (E.D. Cal. Jan. 20, 2023) No. 1:21-cv-01278-CDB, 2023 WL 346800 ...... 3

*Shearson/American Express Inc. v. McMahon*

    (1987) 482 U.S. 220 ........................................................ …..15

*Valles v. Ivy Hill Corp.*

    (9th Cir. 2005) 410 F.3d 1071 ........................................................ 7

*Williams v. Tully*

    (N.D. Cal. Mar. 18, 2005) No. 02-05687, 2005 WL 645943 .................... 16

**Statutes**

Cal. Civ. Code §1670.5 ........................................................ 10

Cal. Lab. Code § 229.................................................... 1,7, 8

## I.     **INTRODUCTION**

As the Court previously made clear, Defendant RXO Last Mile, Inc. f/k/a XPO Last Mile, LLC ("RXO" or "Defendant") cannot compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), because Plaintiff Maynor Mejia Lopez ("Plaintiff" or "Mr. Lopez") and the putative class he seeks to represent are "transportation workers" and are exempt under § 1 of the FAA.  Pursuant to the Court's Civil Minutes dated May 3, 2023 (Dkt. 30), Plaintiff submits the instant supplemental brief to assist the Court in its analysis of the arbitration agreement at issue under the California Arbitration Act ("CAA").  As will be shown throughout this brief, whether the arbitration agreement is analyzed under the FAA or the CAA, the result is the same – Defendant's Motion must be denied.

As noted, absent FAA preemption, the Court must look to the CAA to determine the validity of the parties' agreement to arbitrate.  Although the CAA's scope is similar to the FAA, there are two key differences that doom Defendant's Motion: (1) the Agreement at issue impermissibly interferes with the vindication of Plaintiff's statutory rights, such as the right to bring a class action; and (2) Labor Code section 229 expressly bans RXO from compelling arbitration for claims that involve wages – as is the case here.  Absent FAA coverage, the applicable Labor Code sections and binding California case law are not preempted under the CAA.  Accordingly, the parties' purported agreement to arbitrate is unenforceable under California law.

Even assuming, arguendo, that Plaintiff is otherwise bound to the arbitration agreement, Defendant's Motion still fails because the agreement is permeated with such a high degree of procedural and substantive unconscionability rendering it unenforceable.  Among other things, the alleged Arbitration Agreement is procedurally unconscionable because it is an adhesion, pre-printed contract that was presented on a take-it-or-leave-it basis and as part

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION

of the general Delivery Service Agreement.  The purported Arbitration Agreement also requires Plaintiff to adhere to the commercial rules of arbitration forcing him to incur exorbitant fees and costs not normally associated with litigation.

In response to this offending term found in the parties Delivery Service Agreement, counsel for RXO offered to waive the cost-splitting term in an effort to save the DSA from the Court's finding of unconscionability.  But the Ninth Circuit recently rejected the exact same argument made by RXO and held that "willingness to alter the arbitration provision "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *Lim v. Tforce Logistics*, *LLC* 8 F.4th 992, 1004-1005 (9th Cir. 2021). As such, the litigation tactic of Defendant does not change the conclusion that the Agreement is unconscionable.

Finally, as previously articulated in Plaintiff's Opposition (Dkt. 25), the purported Arbitration Agreement also mandates that the arbitrator award fees to the prevailing party, while California law precludes a fee award to the prevailing employers absent proof the claim was frivolous. The alleged Agreement further forfeits Plaintiff's ability to seek an appeal. Collectively, the various flaws present in the alleged Agreement impair the contract's validity and enforceability, and the unconscionable provisions cannot be severed.

Accordingly, the Court should deny Defendant's Motion in its entirety.

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff incorporates by reference his summary of the Relevant Facual Background contained in his Opposition to Defendant's Motion. *See* Dkt. 25, 25-1, 25-2.  For purposes of this supplemental briefing, Mr. Mejia provided delivery services for RXO and for RXO's corporate clients from approximately June 22, 2018 to on or about April 11, 2022.

////

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

III.  **ARGUMENT**

A.  ***Absent FAA Preemption, Arbitration Cannot be Compelled Here Because California Common Law and Statutory Protections Prevent An Employer from Thwarting an Employee's Ability to "Vindicate Unwaivable Rights" Afforded Under the State's Wage and Hour Laws***

While Defendant solely and exclusively moved under the FAA in seeking to compel arbitration, during oral argument on May 3, 2023 (Dkt. 30), the Court raised the *Rizvanovic v. United Parcel Service, Inc.* ("*Rizvanovic*") case in which the court there found that Mr. Rizcanovic was exempt under the FAA as a "transportation worker" but nevertheless granted UPS's motion to compel arbitration under California's Arbitration Act ("CAA") as potentially dispositive of the pending motion to compel arbitration. *Rizvanovic*, No. 1:21-cv-01278-CDB, 2023 WL 346800, at *8 (E.D. Cal. Jan. 20, 2023).

However, the *Rizvanovic* case is inapposite to the present matter. Central to the *Rizvanovic* court's determination to compel arbitration under the CAA was the plaintiff's contention that an "arbitration agreement does not exist between the parties," which the *Rizvanovic* court concluded to be "without merit" and "unavailing." *Rizvanovic*, 2023 WL 346800, at *6-7. But here, plaintiff does not contend that no arbitration agreement exists or that one was not entered into between the parties – thus, this issue is not present in the instant Motion, rendering *Rizvanovic* inapplicable to the present scenario.

Instead, the key to the analysis of the arbitration agreement at issue is the rule that California courts "will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights." *Gentry v. Super. Ct.*, 42 Cal.4th 443, 463, fn. 7 (2007); *Garrido v. Air Liquids Indus. U.S. LP*, 241 Cal.App.4th 833, 837-838 (2017). Notably, this rule as set out in *Gentry* and its progeny makes no appearance at all in the *Rizvanovic* decision because that simply was not a topic

3

before that court.

In essence, Defendant's Motion must be denied because although the CAA's scope is similar to the FAA, there are two key differences: (1) arbitration cannot be compelled if it would impermissibly interfere with the vindication of statutory rights as set forth in *Gentry*; and (2) Labor Code § 229 provides that claims involving wages cannot be compelled to arbitration and under the CAA, § 229 is not preempted. Accordingly, the Parties' agreement to arbitrate is unenforceable under California law.

1. The Class Action Waiver Impermissibly Interferes with Plaintiff's Vindication of His Statutory Rights Under the *Gentry* Rule

Under California law, class action waivers in wage and hour actions are generally invalid because they prevent workers from vindicating their unwaivable statutory right under the California Labor Code. *See Garrido*, 241 Cal.App.4th at 845; *Gentry v. Superior Court*, 42 Cal.4th at 463. California's strong public policy against class action waivers decrees that class actions are "likely to be a significantly more effective practical means of vindicating the rights of affected employees than individual ... arbitration" and that class action waivers result in less comprehensive enforcement of wage and hour law for affected employees. *Gentry*, 42 Cal.4th at 466.

In *Gentry*, the California Supreme Court cited four factors in determining that a class action waiver was unenforceable in the context of a wage and hour class action: (1) the modest size of the potential individual recovery; (2) the potential for retaliation against members of the class; (3) the fact that absent class members may be ill informed about their rights; and (4) other real-world obstacles to the vindication of class members' Labor Code rights. *Gentry*, 42 Cal.4th at 456.[1] *Garrido* subsequently applied these factors to contracts of

---

[1] In *Iskanian*, the California Supreme Court subsequently held that *Gentry's* rule

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION

transportation workers exempt from the FAA and invalidated the class action waiver contained therein.  *Garrido*, 241 Cal.App.4th at 847.  Similarly, here, the four *Gentry* factors render the class action waiver in RXO's purported agreement to arbitrate invalid and unenforceable.

*First*, wage and hour cases generally satisfy the "modest" recovery factor because they "usually involve workers at the lower end of the pay scale." *Garrido*, 241 Cal.App.4th at 846.  This is especially true here since Plaintiff alleges that his misclassification as an independent contractor resulted in pay that fell below the minimum wage and precluded him from receiving overtime compensation, among other violations.  Moreover, Plaintiff does not limit his legal action to just contract carriers.  Plaintiff also performed deliveries for Defendant and therefore seeks to represent drivers and helpers – those individuals that do not have a contract with RXO.  In the present action, Defendant's estimated damages are based upon an average hourly wage between $18.12 and $25.00 during the alleged class period. (Notice of Removal, Dkt. 1, ¶ 30.) According to Defendant's Notice of Removal, assuming all alleged claims are proven at the highest potential amount recoverable, the alleged class-wide recovery is approximately $22,331,525 (Dkt, ¶¶ 31-38.) It is undisputed there are at least 500 putative class members, if not "thousands" of secondary drivers and helpers (*Id*. at ¶ 18.); and simple math therefore dictates that the maximum potential recovery for each class member, including Plaintiff, ranges from approximately $11,165.76 [$22,331,525 / 2,000] to $22,331.52 [$22,331,525 / 1,000.  These maximum potential recovery amounts clearly satisfy the first *Gentry* factor.  *See Garrido, supra*, 241 Cal. App. 4th at 846. ("A potential award of as large as $37,000 has been found to satisfy the first *Gentry* factor requiring a

against employment class waivers was preempted by the FAA.  *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 364 (2014).  But *Iskanian* did not disapprove *Gentry* where the FAA does not apply – as is the case here.

5

modest size of potential recovery").

*Second*, there is a high potential for retaliation here since "a current employee who individually sues his or her employer is at greater risk of retaliation." *Gentry*, 42 Cal.4th at 459. "Retaining one's employment while bringing formal legal action against one's employer is not a 'viable option for many employees,'" especially those "further down the corporate hierarchy." *Id*. at 459-60. "Indeed, federal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation, even when it was otherwise questionable that the numerosity requirements of Rule 23 were satisfied." *Gentry*, at 460 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (it is "reasonably presumed" that potential class members still employed by employer "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"). "[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Gentry*, at 460 (citing *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 292 (1960)).

*Third*, it is often the case that "some individual employees may not sue because they are unaware that their legal rights have been violated." *Gentry*, 42 Cal.4th at 461. This factor is also directly relevant here because Plaintiff's and the putative class members very label as independent contractors masks from them the rights that they possess as misclassified employees. In addition, the fact that Plaintiff and putative class members are compensated based on a fixed rate, rather than an hourly wage further hides from them the fact that they are being compensated less than the minimum wage. Therefore, it is likely that hundreds of RXO's delivery drivers in California are unaware or ill-informed of their rights.

*Fourth*, real world obstacles stand to prevent the vindication of the rights

of Plaintiff. Here, just like in *Garrido* and *Gentry*, preventing class proceedings from occurring will only allow Defendant to pay the claim of one employee, if ordered to do so, and incentivize it to continue violating the Labor Code unabated. *Garrido*, 241 Cal.App.4th at 846-47. The court in *Garrido* affirmed, under analogous circumstances, that this type of wage and hour case involves "precisely the sort of arbitration agreement with a class action waiver entered as a condition of employment by low-wage, limited information employees in vulnerable, at-will employment environments" that is unenforceable under California law. *Id*. at 846.

Accordingly, in light of the circumstances above, the Court should find the arbitration agreement and class action waiver unenforceable under California law.

> 2. Labor Code § 229 Invalidates the Arbitration Agreement and Is Not Preempted Under The CAA

Additionally, the California Labor Code provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code § 229. Similar to the construct surrounding Labor Code § 432.6, although the FAA preempts Labor Code § 229, in instances "when only the CAA applies, an action under Labor Code § 229 may be maintained in court," notwithstanding an arbitration agreement. *See Garrido*, 241 Cal.App.4th at 844-45; citing *Lane v. Francis Capital Management LLC*, 224 Cal.App.4th 676, 687-688 (2014); *Hoover v. Am. Income Life Ins. Co.*, 206 Cal.App.4th 1193, 1207 (2012). Said differently, courts have interpreted Labor Code § 229 to mean that a court may not compel arbitration of non-waivable statutory rights for the payment of wages, despite the existence of any arbitration agreement where, as here, a defendant fails to meet its burden of demonstrating coverage under the FAA. *See e.g., Valles v. Ivy Hill Corp.*, 410

7

F.3d 1071, 1081 (9th Cir. 2005) (statutory meal period claims not subject to arbitration provision in CBA); *Meyer v. Irwin Industries, Inc.*, 723 F.Supp.2d 1237 (C.D. Cal. 2010) (statutory claims for wage and hour violations not subject to arbitration provision in CBA).

Accordingly, even if the arbitration agreement were to be deemed enforceable, Plaintiff's wage claims must be adjudicated in court under Labor Code § 229.  Therefore, pursuant to the *Gentry* rule and Labor Code §, 229, Plaintiff's claims cannot be compelled to arbitration.

**B.**      ***Defendant Cannot Seek Arbitration Pursuant to the CAA Because The Arbitration Agreement is Permeated With a High Degree of Unconscionability***

     1.   The Arbitration Agreement Is Procedurally Unconscionable

Assuming arguendo that there was a meeting of the minds between the parties (there is not), the Arbitration Agreement is not enforceable because it is unconscionable.  Unconscionability consists of both procedural and substantive elements.  The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required, and vice versa.  *See Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Ass'n*, 41 Cal.App.5th 753 (2019); *OTO, L.L.C. v. Kho*, 8 Cal.5th 111 (2019).

"The procedural element focuses on 'oppression' or 'surprise.'" *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 87 (2003).  Oppression occurs "[w]here the parties to a contract have unequal bargaining power and the contract is not the result of real negotiation or meaningful choice."  *Id*.  Surprise occurs when the terms are hidden. *Id*. Defendant's Arbitration Agreement has both.

The Delivery Service Agreement which contains the relevant arbitration provision is a pre-printed form that was buried among other new onboarding documents.  *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1146

(2012) (procedural unconscionability found when arbitration agreement buried amongst other documents); *see Pokorny v. Quixtar, Inc*., 601 F.3d 987, 996 (9th Cir. 2010) ("[A] contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'").  Moreover, contrary to the assertion in Defendant's Motion, Plaintiff was presented with a bevy of documents in June 2018, which also contained the 14-page, 28-section Delivery Service Agreement. *See* Exh. 1 of Lopez Decl. (Dkt. 25-1); *see Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F.Supp.3d 871, 879 (N.D. Cal. 2015) ("the arbitration provision is only one section in a seven page long, single spaced, small-font document. [It . . . was buried as the twenty-first of thirty-six sections, while in the Brem Agreement it was the twentieth of thirty-seven sections. . . . Additionally, there is no place for the non-drafting party to initial near the section."); *see also Molina v. Scandinavian Designs, Inc.*, 2014 WL 1615177, at *7 (N.D. Cal. Apr. 21, 2014) (holding the amount of procedural unconscionability was limited by the fact that the arbitration agreement was presented as a separate two-page document).

The coerced nature of the preprinted arbitration agreement is also exacerbated by the inequality of bargaining power that naturally exists between Defendant, a multi-billion-dollar company, and Mr. Lopez, who, like all other low-wage earning truck drivers, depends on work.  *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175 (2002); *OTO*, 8 Cal. 5th at 127.

The oppression is further amplified by the fact that this was no ordinary business transaction between two business entities as Defendant would like the Court to believe, but rather, as Plaintiff alleges in his complaint and previously submitted declaration, an elaborate attempt by RXO to cover up its wrongful misclassification of its drivers as "independent contractors."  This is seen when Plaintiff alleges and recounts that RXO implements a requirement that as a

9

condition for obtaining work, Plaintiff and others must set up a separate business entity, and then proceed to enter into a DSA that not only contains an arbitration provision, but provisions that are non-negotiable, and terms that are favorable to RXO.  *See* Declaration of Maynor Mejia Lopez in Support of Opposition to Motion to Compel Arbitration ("Lopez Decl."), ¶ 3 (Dkt 25-2).  The DSA, which includes the Arbitration Agreement, forces Delivery Drivers, like Plaintiff, to pay for numerous and substantial employment-related expenses, and to top off, an indemnification provision in which RXO is essentially insulated from any liability.  *Id.*  Given the overall nature of Defendant's scheme in the formation of the DSA the alleged Arbitration Agreement suffers a high degree of procedural unconscionability.

## 2. *The Arbitration Agreement Is Substantively Unconscionable*

"Substantive unconscionability" examines the fairness of a contract's terms.  *OTO*, 8 Cal. 5th at 129.  A substantive unconscionability analysis is "fact sensitive" and the Court must ensure that the agreement does not impose terms that are "unfairly one-sided" and unreasonably favorable to the more powerful party.  *Id*. at 130; *Baltazar*, 62 Cal. 4th at 1244.  The degree of substantive unconscionability depends on the degree of procedural unconscionability. *OTO*, 8 Cal. 5th at 130.  Courts are empowered to revoke arbitration agreements, or any clause found to be unconscionable at the time it was made. Cal. Civ. Code §1670.5.  In *Armendariz v. Foundation Health Psychare Services*, 24 Ca1.4th 83, 102-113 (2000), the California Supreme Court held that agreements to arbitrate disputes must satisfy five minimum requirements to be enforceable, including, *inter alia*, requiring require a written decision allowing judicial review *Id*. at 91, 102-103. That is absent in this Agreement. The California Supreme Court specifically found that a provision in an arbitration agreement that took away even **one of these five basic requirements** was substantively unconscionable.  *Armendariz*, 24 Cal. 4th at 99 (emphasis added).  The

10

1    arbitration provision at issue fails to satisfy many of the minimum requirements.

2               *i.* The Incorporation of Commercial Arbitration Rules Requires

3                    Plaintiff to Pay Excessive Fees and Costs Not Normally

4                    Associated with Litigation

5         Unlike a public court, which is a social service funded by taxpayers and

6    largely free aside from filing fees, arbitrators are privately contracted and

7    generally paid for their services at rates that range from hundreds to thousands of

8    dollars per hour.[2]  In recognition of the fact that this constitutes an impossible

9    expense for the vast majority of individual consumers and employees, the major

10   arbitration houses the American Arbitration Association ("AAA") and JAMS,

11   Inc. cap the fees that employees and consumers can be required to pay at a few

12   hundred dollars per proceeding.[3]

13        Section 21.1 of DSA, however, expressly provides that "in the event of a

14   misclassification dispute, the parties expressly agree to use the *commercial rules*

15   until a determination of employment statute has been made."  By incorporating

16   AAA's Commercial Arbitration Rules – rather than AAA's Employment

17   Arbitration Rules or Consumer Arbitration Rules – Plaintiff is required to pay

18   excessive fees and costs not normally associated with litigation, a huge cost

19   imposition on Plaintiff that makes it much more difficult for him to try and

20   vindicate his rights in a legal forum.  Indeed, Section 21.7 of the DSA explicitly

21   states that the costs of the arbitration will be borne equally by Plaintiff and

22

23   [2] *See, e.g.,* Judicate West, https://www.judicatewest.com/Firm/PricingAndPolicies (arbitrators'
24   fees range from $490-1800/hour); iVAMS, http://ivams.com/wp-content/uploads/Fee-
     Schedule1-2015.pdf (base rate for hearings is $200 per hour per side).

25   [3] *See* American Arbitration Association, "Employment Arbitration under AAA
26   Administration," https://www.adr.org/employment (capping employee share of fees at $300);
     JAMS, "Policy on Employment Arbitration Minimum Standards of Procedural Fairness,"
27   https://www.jamsadr.com/employment-minimum-standards/ (limiting the fees that the
     employee can be required to bear to the initial filing fee).

28

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION

1   Defendant, a huge outlay for Mr. Lopez.  AAA's Commercial Arbitration Rules

2   provide no respite as there is no provision for the payment of the arbitrator's

3   expenses by the respondent.   *See* AAA's <u>Commercial Arbitration Rules and</u>

4   <u>Mediation Procedures</u> effective October 1, 2013, attached as Exhibit "A" to the

5   Declaration of Armand R. Kizirian.

6           It is well-established under California law that cost-splitting terms such as

7   this one that "unreasonably limit access to arbitration" are substantively

8   unconscionable.  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 920

9   (2015); *see also Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 73

10  (2020) ("Courts may use the unconscionability doctrine to protect 'consumers

11  against fees that unreasonably limit access to arbitration.'"); *Armendariz*, 24 Cal.

12  4th at 110 ("[T]he imposition of substantial forum fees is contrary to public

13  policy, and is therefore grounds for invalidating or 'revoking' an arbitration

14  agreement and denying a petition to compel arbitration.").  The proper inquiry in

15  such cases is "what dispute resolution mechanism the parties reasonably

16  expected the employee to be able to afford."  *Id*. at 1163.  "[Federal] district

17  courts have found cost-sharing provisions in employment arbitration agreements

18  substantively unconscionable because the employer generally has far greater

19  resources and the employee should not be required to pay for the opportunity to

20  present claims–especially where employees would not bear those costs in federal

21  court." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021); *see*

22  *Circuit City Stores, Inc. v. Adams*, 279 F.3d at 889, 894 (9th Cir. 2002); *Reyes v.*

23  *Hearst Commc'ns, Inc.*, No. 21-16542, 2022 WL 2235793, at *2 (9th Cir. June

24  22, 2022) (following *Lim* and holding that fee-splitting provisions have "been

25  impermissible under *Armendariz* for more than two decades").

26          In response to the Court's inquiry as to this unconscionable term, RXO's

27  counsel's opined that RXO may essentially agree to rewrite the Delivery Service

28  Agreement and waive the cost-splitting provisions.  The argument by Defendant

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION

that it may rewrite the agreement to avoid what is plainly an unconscionable

provision has been rejected by the Ninth Circuit:

> TForce also argues, as it did in the district court, that it will waive the provisions at issue by paying all of the administrative costs of arbitration… But, as the district court correctly recognized, waiving unconscionable elements of the delegation clause does not change the analysis of whether the delegation clause, as drafted, is unconscionable. **TForce's later willingness to alter the arbitration provision "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy."** *Armendariz*, 24 Cal. 4th at 125; see also Parada, 176 Cal. App. 4th at 1584 ("[C]ourts should not consider after-the-fact offers by employers to pay the plaintiff's share of the arbitration costs where the agreement itself provides that the plaintiff is liable .... [T]he [drafter] is saddled with the consequences of the provision as drafted. If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the employer agrees to pay a particular litigant's share of the fees and costs to avoid such a holding." (citations omitted)). **To conclude otherwise would incentivize drafters to overreach based on the assumption they could simply waive unconscionable terms when faced with litigation**.

*Lim*, 8 F.4th at 1004-1005 (emphasis added).  This controlling decision in *Lim*

refutes Defendant's only argument to save the Agreement from its blatant

unconscionability.

Applying this principle, "district courts have found cost-sharing provisions

in employment arbitration agreements substantively unconscionable because the

employer generally has far greater resources and the employee should not be

required to pay for the opportunity to present claims—especially where

employees would not bear those costs in federal court." *Lim*, 8 F.4th at 1002,

citing to *Ortolani v. Freedom Mortg. Corp.*, No. EDCV 17-1462(KKx), 2017

U.S. Dist. LEXIS 232308, 2017 WL 10518040, at *6 (C.D. Cal. Nov. 16, 2017);

*Antonelli v. Finish Line, Inc.*, No. 5:11-cv-03874, 2012 U.S. Dist. LEXIS 19787,

2012 WL 525538, at *5 (N.D. Cal. Feb. 16, 2012); *Chavarria v. Ralphs*

*Grocer[y] Co.*, 812 F. Supp. 2d 1079, 1088 (C.D. Cal. 2011), aff'd *Chavarria v.*

*Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013).

California Court of Appeal rejected a similar argument, finding that the defendant's "willingness to have the court sever the invalid clauses [was] insufficient to save the agreement."  *Ramos v. Superior Court*, 28 Cal.App.5th 1042, 1069 (2018); *see also Newton v. Am. Debt Servs., Inc.*, 854 F.Supp.2d 712, 727 (N.D. Cal. 2012) aff'd, 549 F. App'x 692 (9th Cir. 2013); *The McCaffrey Group, Inc. v. Superior Court*, 224 Cal.App.4th 1330, 1350 (2014) ("[u]nconscionability is measured as of the time the contract was entered," not based on subsequent events).

Here, the AAA commercial rules in place at the time of Plaintiff's employment from 2018 to 2022 renders the only plausible conclusion that this term imposes significant expenses on Plaintiff by requiring him to pay for arbitration expenses which would not be incurred in a court action.  How and when the AAA reshaped or amended its policies is irrelevant to the analysis, particularly here where Plaintiff's work for Defendant coincides with a period where AAA's rules explicitly require him to advance arbitration filing fees far in excess of what he would be required to do so by filing his claim in court, and where Plaintiff would be required to equally share the costs of the arbitrator with Defendant.  *See* Section 21.7 of the DSA ("Costs incidental to the arbitration, including the cost of the Arbitrator and the meeting site…, will be borne by XPO Last Mile and Contract Carrier equally"); AAA's Administrative Fee Schedules effective May 1, 2018 for its Commercial Arbitration Rules and Mediation Procedures, attached as Exhibit "B" to the Kizirian Decl. ("Arbitrator compensation is not included in either schedule. Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award.").

////

////

////

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1
2

  ii. The Arbitration Provision Impermissibly Waives the Right
    to Appeal And Is Therefore Substantively Unconscionable

3
4
5
6
7
8
9
10
11
12
13
14
15
16

  A written award with the possibility of judicial review is one of the five minimum requirements imposed by *Armendariz* on enforcing agreements that require the arbitration of statutory and unwaivable rights.  *See Armendariz, supra*, p. 106.  As the United States Supreme Court has stated, "[a]though judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute" at issue.  *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 232 (1987); *see also Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1353, fn. 14 (2008) ["when unwaivable statutory rights are at stake, this court has repeatedly held that review must be sufficient to ensure that arbitrators comply with requirements of the statute."] [internal citations omitted.].) "Judicial review may be appropriate when granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." *Moncharsh v. Heily Lamp Blase*, 3 Cal.4th 1, 32 (1992).

17
18
19
20
21
22
23
24
25
26

  Here, the Arbitration Agreement is silent as to what appellate rights the parties have, if any, in connection with the arbitration process. Exh. 1 to Schnayerson Declaration.  Defendant cites to §§ 21.1, 21.7, and 21.9 of the DSA to argue that the DSA provides for judicial review (Dkt. 20 at 11:20-21), but a closer review of those sections reveals that there is none.  At most, sections 21.1 and 21.9 of the DSA only provide for limited judicial review, or more like judicial intervention, to confirm or enter any judgment on the award issued by an arbitrator.  As such, this provision seeks to limit the *Armendariz* requirement of judicial review of the arbitration award, and thus in this way, the DSA directly contravenes public policy.

27
  ////

28
  ////

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION

iii.  The Arbitration Provision Requires Plaintiff to Pay
Reasonable Attorneys' Fees and Costs to the Prevailing
Party And Is Therefore Substantively Unconscionable

AAA's Commercial Arbitration Rules permit the arbitrator to "apportion fees, expenses, and compensation" in its final arbitration award.  As explained in *Openshaw v. FedEx Ground Package System, Inc.*, since "the arbitrator [cannot] allocate costs until *after* the proceeding is over," Plaintiff will *still* be "responsible for [the] up-front fees and must risk the possibility that the arbitrator will allocate all costs to [him]."  731 F. Supp. 2d at 997 (emphasis added); *see also* § 21.1 of DSA ("In the event of a misclassification dispute, the parties expressly agree to use the commercial rules until a determination of employment statute has been made.").

Additionally, given the limited permissible judicial review of arbitration awards, Plaintiff would be unable to vacate a final arbitration award that didn't apportion fees entirely to RXO.  *See Williams v. Tully*, No. 02-05687, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005) (holding that an arbitrator did not "exceed his powers" by failing to apportion fees in compliance with California law because fee apportionment was governed solely by AAA's Rules).

Courts have found that provisions in arbitration agreements that purport to impose an obligation on the non-prevailing employee to pay the attorneys' fees of the prevailing employer, without considering whether the action was brought in bad faith, are unconscionable.  *See generally* Plaintiff's Opposition, Dkt. 25. The Ninth Circuit squarely addressed this exact issue in *Lim* and found that this same term was substantively unconscionable when imposed on an employee:

> As the district court recognized, if TForce prevailed on arbitrability and later prevailed on the merits in the arbitration, the contract would allow TForce to seek to recover all of its reasonable attorney's fees, including those incurred in connection with determining arbitrability. This creates a chilling effect on Lim enforcing his rights because it exposes him to the possibility of paying attorney's fees to TForce if he lost at arbitration,

16

1
2
3
4
5
6
7

including fees associated with the threshold issue of arbitrability. Importantly, Lim would not face that risk in federal court because California public policy "unequivocally prohibits an employer from recovering attorney fees for defending a wage and hour claim." *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1256, 200 Cal. Rptr. 3d 230 (2016). As we held in *Pokorny*, "the fee-shifting clause puts [plaintiffs] who demand arbitration at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court, [so] the district court properly held that the clause is substantively unconscionable." 601 F.3d at 1004 (citations omitted).

8
9
10

   *Lim*, 8 F.4th at 1003.  As a result, in *Lim*, the Court held that a "provision permitting an award of attorney's fees to the prevailing party was substantively unconscionable under California law." *Id*. at 1003.

11
12
13

iv. The Arbitration Provision is Effective *Only If* the Court Agrees that the Class Action Waiver is Effective; If Not, the Arbitration is Cancelled

14
15
16
17
18
19
20
21
22
23

   Finally, the arbitration agreement is also substantively unconscionable because it is one-sided in that arbitration is authorized *only if* this Court agrees that the class and collective action waiver contained in Section 21.6 of the DSA is effective.  Because if not, if the Court were to strike down this provision, as Plaintiff argues above re *Gentry*, but yet still somehow uphold the arbitration agreement, i.e., to essentially order a class arbitration, a poison pill contained within this subsection of the DSA triggers.  It states, "Should a court determine that this paragraph is invalid for any reason, the parties hereby waive any right to arbitration of a class or collective action and instead agree and stipulate that such claims will be heard only by a judge."  DSA at Section 21.6.

24
25
26
27
28

   Such one-sided provisions are looked upon very severely.  California "courts repeatedly have found an employer-imposed arbitration agreement to be substantively unconscionable when it requires the employee to arbitrate the claims he or she is mostly likely to bring, but allows the employer to go to court to pursue the claims it is most likely to bring." *Carbajal v. CWPSC, Inc.*, 245

17

Cal. App. 4th 227, 248 (2016); *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 181 (2015) ("Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are made subject to arbitration.").

Here, there can be little doubt that the putative employee is the party that is most likely to bring some sort of class action lawsuit. The fact that Defendant drafted the arbitration agreement in such a way as to ensure that arbitration would proceed *only* on an individual basis and that if for some reason, a court concluded that a class arbitration must be held, the whole thing would be called off, evinces an *extremely* high degree of substantive unconscionability.

California courts are clear on this, such one-sidedness plainly amounts to substantive unconscionability rendering the agreement unenforceable. For example, in *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997), the court concluded that the mandatory arbitration provision could "only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be filed against, not by [the employer]". *Id.* at 1540-41. The *Stirlen* court reached this conclusion after noting that the "[e]mployer claims may be brought in court or submitted to arbitration while claims for violation of employee rights must be arbitrated." *Id.* at 1541-42.

The situation here is no different. Defendant is not going to file a class action against Mr. Lopez or the entity he was required to form. It would be nonsensical for RXO to file a class action because RXO, as the hiring entity, stands in a class of one. Thus, Section 21.6 of the DSA cannot be reasonably interpreted in any other way aside from providing an out for RXO from a

18

situation it does not want to be in – a class arbitration.  The fact that RXO has included such a one-sided provision in the DSA, where arbitration in its entirety is voided if a court were to conclude that the class and collective action waiver is ineffective, shows that the agreement is highly unconscionable.

## C.   *The Unconscionable Provisions Cannot be Severed and the Contract Cannot be Reformed*

RXO will likely ask the Court to sever any unlawful provisions using the severability clause in the Delivery Service Agreement.  However, the existence of a severability clause does not change the calculus.  When an agreement is permeated by unconscionability or the provisions were drafted in bad faith, a court will not sever the unlawful provisions regardless of a severability clause. *Lim*, 8 F.4th 992 at 1005 (refusing to sever unconscionable provisions notwithstanding the severability clause).

The Court should not sever unlawful provisions if they were "drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." *Lim*, 8 F.4th at 1005-06.  The Ninth Circuit explained that a company would "not be deterred from routinely inserting a deliberately illegal clause into the arbitration agreements . . . if it knows that the worst penalty for such illegality is the severance of the clause."  *Id*. at 1006 (quoting *Armendariz*, 24 Cal. 4th at 125 n.13).  Severing unlawful provisions that were drafted in bad faith would allow a company "to draft one-sided agreements and then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance."  *Id*. at 1006.

Simply put, if the "central purpose of the contract is tainted with illegality" or the contract has "more than one unlawful provision," it is "permeated with unconscionability," and the Court must refuse to enforce it. *See Armendariz*, 24 Cal.4th at 124.  "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an

19

inferior forum that works to the employer's advantage." *Id.*; *Baxter v. Gemvorth N. Am. Corp.*, 16 Cal.App.5th 713, 737-38 (2017) (refusal to sever unconscionable terms proper); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 727 (2004) (affirming denial of motion to compel arbitration because there was no single provision that could be stricken or restricted "to remove the unconscionable taint from the agreement.").

A court may not to reform an unconscionable arbitration agreement but must void it:

> "Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent, limited authority to reform contracts. (*See Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407-408, 75 Cal.Rptr.2d 257 [power to reform limited to instances in which parties make mistakes, not to correct illegal provisions]; *see also Getty v. Getty* (1986) 187 Cal.App.3d 1159, 1178-1179, 232 Cal.Rptr. 603."

*Armendariz*, 24 Cal.4th at 125.

Here, since this unlawful provision in the DSA does not implicate a 'mistake' made by either Party, the Court could not reform the Arbitration Agreement by redefining what claims may or may not be arbitrated. *See Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091 (N.D. Cal. 2009) ("In this case, the Court has found that the Assignment Clause operates as an unlawful non-compete provision. As such, it is void under California law. … The Court is not permitted to apply any narrowing construction to limit the application of the Assignment Clause to confidential information or to inventions conceived by former Applied employees during their tenure at Applied.") (citations omitted).

As a result, the Court must refuse to enforce the arbitration agreement in its entirety in order to prevent Plaintiff from being deprived of his substantive rights under California law, namely by being forced to litigate his claims under the provisions of a one-sided and thus unconscionable arbitration agreement.

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

## IV.    CONCLUSION

2          For all the foregoing reasons, Defendant's Motion must be denied.

3    Dated: June 2, 2023                           BOYAMIAN LAW, INC.

4
                                       By: /s/ Michael Boyamian
5                                          MICHAEL H. BOYAMIAN
                                           Attorneys for Plaintiff Maynor Mejia
6                                          Lopez and all others similarly
                                           situated
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION