MICHAEL H. BOYAMIAN, SBN 256107
michael@boyamianlaw.com
ARMAND R. KIZIRIAN, SBN 293992
armand@boyamianlaw.com
**BOYAMIAN LAW, INC.**
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:  (818) 547-5300
Facsimile:   (818) 547-5678

Attorneys for Plaintiff Maynor Mejia Lopez,
Individually and On Behalf
of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA LOPEZ, an individual; Individually and on Behalf of All Similarly Situated Individuals,<br><br>        Plaintiff,<br><br>   v.<br><br>XPO LAST MILE, INC., A Georgia Corporation; and DOES 1 through 25, Inclusive,<br><br>        Defendants. | Case No.: 3:22-CV-08976-SI<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S REPLY TO DEFENDANT RXO LAST MILE, INC.'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION………………………………………………………..1

II. ARGUMENT……………………………………………………......…1

    A.   The Purported Delegation Clause Fail*s*………………………..…1

    B.   The *Gentry* Factors Are Satisfied…………………………………4

    C.   The Arbitration Provision and the Delegation Clause Are
           Unconscionable And Cannot Be Enforced…………………………..9

    D.   Labor Code Section 229 Exempts Plaintiff's Claims from the
           Agreement……………………………………………………………11

III. CONCLUSION…………………………………………………………..14

# TABLE OF AUTHORITIES

**State Cases**

*Armendariz v. Foundation Health Psychare Services*

    (2000) 24 Cal.4th 83 ................................................................ 10, 11

*Baker v. Osborne Dev. Corp.*

    (2008) 159 Cal. App. 4th 884................................................................ 3

*Bodell Construction Co. v. Trustees of Cal. State University*

    (1998) 62 Cal. App. 4th 1508................................................................ 12

*Bravo v. RADC Enters., Inc.*

    (2019) 33 Cal. App. 5th 920................................................................ 12

*Flores v. Axxis Network & Telecommunications, Inc.*

    (2009) 173 Cal. App. 4th 802................................................................ 12

*Garrido v. Air Liquide Industrial U.S. LP*

    (2015) 41 Cal.App.4th 833................................................................ 9, 12

*Gentry v. Superior Court*

    (2007) 42 Cal. 4th 443................................................................ *passim*

*Getty v. Getty*

    (1986) 187 Cal.App.3d 1159................................................................ 11

*Muller v. Roy Miller Freight Lines, LLC*

    (2019) 34 Cal. App. 5th 1056................................................................ 12

*Muro v. Cornerstone Staffing Solutions, Inc.*

    (2018) 20 Cal.App.5th 784................................................................ 4, 6, 8

*Murphy v. Kenneth Cole Productions, Inc.*

    (2007) 40 Cal. 4th 1094................................................................ 13

*Naranjo v. Spectrum Sec. Servs.*

    (2022) 13 Cal.5th 93................................................................ 13

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*

    (2022) 77 Cal. App. 5th 643................................................................ 2

*Nieto v. Fresno Beverage Co. Inc.*

    (2019) 33 Cal. App. 5th 274 ........................................................................ 12

*OTO, LLC v. Kho*

    (2019) 8 Cal.5th 111 .................................................................................... 9

*Parada v. Superior Ct.*

    (2009) 176 Cal. App. 4th 1554 .................................................................... 2

**Federal Cases**

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.,*

    (N.D. Cal. 2009) 630 F. Supp. 2d 1084 .................................................... 11

*First Options of Chicago, Inc. v. Kaplan*

    (1995) 514 U.S. 938 .................................................................................... 2

*Howsam v. Dean Witter Reynolds, Inc*.

    (2002) 537 U.S. 79 ...................................................................................... 1

*Lim v. TForce Logistics, LLC*

    (9th Cir. 2021) 8 F.4th 992 .................................................................. 9, 10

*Meadows v. Dickey's Barbecue Restaurants*

    (N.D. Cal. 2015) 144 F.Supp.3d 1069 ....................................................... 2

*Mikhak v. Univ. of Phoenix*

    (N.D. Cal. June 21, 2016) No. C16-00901 CRB, WL 3401763 ................... 2

*Mitchell v. Robert DeMario Jewelry, Inc.*

    (1960) 361 U.S. 288 .................................................................................... 8

*Oracle Am., Inc., v. Myriad Grp., A.G.*

    (9th Cir. 2013) 724 F.3d 1069 .................................................................... 2

*Pokorny v. Quixtar*

    (9th Cir. 2010) 601 F.3d 987 .................................................................... 10

*Rent-A-Center, West, Inc. v. Jackson*

    561 U.S. 63, 69 fn. 1 (2010) ....................................................................... 2

PLAINTIFF'S REPLY TO DEF RXO LAST MILE, INC.'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MTC ARBITRATION

*Roe v. SFBSC Mgmt., LLC*

(N.D. Cal. Mar. 2, 2015) Case No. 14-cv-03616-LB, WL 930683 .. 10

**Statutes**

Cal. Labor Code § 203 .................................................................... …..5, 13

Cal. Labor Code § 226 ...................................................................... ..5

Labor Code § 226.7………………………………………………………..13

Labor Code § 510……………………………………………………………13

Labor Code § 512………………………………………………………….…13

Labor Code § 1194……………………………………………………...…13

Labor Code § 229 ........................................................................ …1, 12

Labor Code section 925 ........................................................................ 4

## I.     <u>INTRODUCTION</u>

Defendant RXO Last Mile, Inc.'s Motion ("RXO" or "Defendant") fails across the board.  In its latest effort to shield its blatant misclassification of last-mile delivery drivers as "independent contractors" and minimize its resultant obligation to pay wages under California law, RXO now seeks to move this case to private arbitration by not even wanting the Court to judge its arbitration provision and its unconscionability, claiming that disputes about the enforceability of its arbitration provision belong with the arbitrator. *See* Dkt. 34.

On the threshold issue of whether the parties delegated the enforceability of the arbitration clause to the arbitrator, it is clear they did not. Plaintiff is an unsophisticated, low wage worker with no relevant business or legal experience and, thus, is incapable of understanding and consenting to complex "delegation" clauses in already complex arbitration contracts that span many single-spaced pages. The arbitration provision is not consistent or clear that only an arbitrator can decide issues of arbitrability which further dooms its delegation arguments.

The *Gentry* factors have also been met and satisfied. RXO misconstrues the *Gentry* factors, for example, demanding "actual" and "real" evidence of retaliation and that Class Members were not informed of their rights, which is not the relevant standard.  Contrary to RXO's arguments, a number of decisions have applied Labor Code § 229 in the absence of the FAA's applicability. This case is no exception. For all the foregoing reasons, RXO's Motion must be denied.

## II.     <u>ARGUMENT</u>

### A.     *The Purported Delegation Clause Fails*

The "gateway" question of arbitrability refers to "whether the parties have submitted a particular dispute to arbitration." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "[T]he federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc., v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). The opposite is true because parties typically believe a judge, not an arbitrator, will decide whether the

arbitration agreement is valid in the first instance. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). For this reason, there must be "clear and unmistakable" evidence that the parties agreed to delegate arbitrability to the arbitrator. *Id*. at 944-46. This imposes a "heightened standard" on party asserting delegation. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 fn. 1 (2010). Clear and unmistakable evidence of intent to delegate arbitrability fails in a variety of contexts.

 *First*, where the party resisting delegation is unsophisticated, courts find that even broadly worded delegation clauses such as those requiring arbitration of "disputes arising out of or relating to interpretation or application of [an arbitration agreement]" are not clear and unmistakable. This is so because it is unreasonable to assume the unsophisticated party understood the delegation clause and its impact on who decides arbitrability. *Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, at *5 (N.D. Cal. June 21, 2016). This is especially true where the individual had to accept a number of terms in a number of documents, delegation being one term. *Id*.; *see*, *e.g.*, *Meadows v. Dickey's Barbecue Restaurants*, 144 F.Supp.3d 1069, 1078 (N.D. Cal. 2015).

 *Second*, and separately, even with a broadly worded delegation clause, where other parts of the contract suggest that a court might also decide threshold arbitrability issues, there is no clear and unmistakable intent to delegate arbitrability. *Parada v. Superior Ct.*, 176 Cal. App. 4th 1554, 1565-66 (2009); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 655 (2022) ("attempted delegation cannot be equivocal or ambiguous"). For example, where the contract contains a delegation clause but also suggests or alludes to a "court" or "trier of fact" determining threshold arbitration issues, delegation fails. *Id*. The same is true where a "provision indicated that the court might find a provision unenforceable." *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 893 (2008).

1    RXO cannot meet its heightened burden here under these binding

2    authorities. Reading sections 21.5 and 21.6[1] of the DSA in tandem demonstrably

3    shows that the purported delegation clause is ambiguous, leaving the court to

4    decide the "scope or validity" of the class and collective action waiver but also

5    insisting that the arbitrator resolve any dispute relating to the formation,

6    enforceability, applicability, or interpretation of this Arbitration Agreement. This

7    inevitably invites the Court to analyze whether the class waiver is contained

8    within an enforceable agreement. Accordingly, the DSA is not consistent on

9    arbitrability and fails to exclusively vest the arbitrator with the ability to

10   determine this issue.

11       Plaintiff is also not sophisticated in such a way that he would

12   understanding the concept of arbitrability.  Declaration of Maynor Mejia Lopez I

13   Opposition to Defendant's Motion to Compel Arbitration ("Mejia Decl."), ¶ 3 ("I

14   signed a bunch of documents which I understood I had to do in order to receive

15   work from XPO…. While I can read and understand the English language,

16   Spanish is my preferred language.  I do not remember seeing an agreement to

17   arbitration and I did not know what that arbitration meant until my lawyer

18   explained it to me.").

19       This is especially true since the relevant arbitration provisions are buried

20   in the middle of a fifteen-page, single-spaced DSA agreement which

21   incorporates various schedules spanning the entirety of the DSA to be in excess

22   of 90 pages altogether. Thus, for each reason, RXO cannot meet its heightened

23   burden to show clear and unmistakable delegation of arbitrability.

24   ////

25   ////

26

27   _____
     [1] "Any question or dispute concerning the scope or validity of [the class and
28   collective action waiver] shall be decided by a court of competent jurisdiction
     and not the arbitrator."  DSA Section 21.6.

3

**B.** *The Gentry Factors Are Satisfied*

The *Gentry* rule invalidates class waivers in employment or wage and hour claims where each individual claim is likely to have a modest value and the individual class members' rights would likely not be effectively vindicated without a representative claim. The California Supreme Court in *Gentry* explained that this rule was essential to ensure the protection of employees' substantive rights and to prevent arbitration from becoming "a de facto waiver of statutory rights." *Gentry v. Superior Court*, 42 Cal. 4th 443, 457 (2007).

To the extent that application of Georgia law would allow enforcement of the class action waiver in this case, it would deprive Plaintiff and the putative class of delivery drivers substantive rights protected by California law and therefore should be invalidated pursuant to Cal. Labor Code section 925.[2] Also, because the *Gentry* test is a factor test, it must be evaluated on a sliding scale, and even where one factor does not weigh strongly towards a finding of unconscionability, the provision as a whole may still be found unconscionable based upon the weight of the remaining factors. *Muro v. Cornerstone Staffing Solutions, Inc.*, 20 Cal.App.5th 784, 793 ("The court has broad discretion in ruling on this issue"). Plaintiff has sufficiently met all of the *Gentry* factors for the Court to invalidate the waiver.

////

---

[2] California Labor Code § 925 makes out of state choice of law provisions voidable by the employee as follows:
(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
(1) Require the employee to adjudicate outside of California a claim arising in California.
(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
**(b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.**

*First*, Plaintiff has put forth evidence that in relying on the figures Defendant provided in its Notice of Removal, the ranges of potential individual recovery satisfy the first *Gentry* factor requiring a modest size of potential recovery. Defendant's Notice of Removal calculates the maximum damages for the putative class as $22,331,525, broken down as $13,398,915 in unpaid overtime and $8,932,610 in meal and break penalties.  Notice of Removal, ¶¶ 34, 38.  Moreover, in terms of the putative class size, Defendant calculates that there are "more than 500 Delivery Service Providers that in turn engaged hundreds, if not thousands of drivers ("Secondary Drivers") and helpers ("Helpers") to perform deliveries arranged through RXO LM's brokerage and freight forwarding services".  Notice of Removal, ¶ 18.  Thus, using a lower end estimate, if there are even 1,000 putative class members, than the average *maximum* recovery, according to Defendant's own calculations would amount to $22,331.53 ($22,331,525 / 1,000 class members).  A figure in the low $20,000s is well-within the scope of the first *Gentry* factor.

Moreover, while Defendant continuously harps on this two-million figure as supposed generated earnings of Plaintiff, Defendant's Answer alleges no less than twenty-three affirmative defenses, any one of which could significantly lessen the amount of recovery owed to Plaintiff.

For example, Defendant's Tenth Affirmative Defense alleges that RXO acted in good faith and without any knowledge or intent to harm Plaintiff and the putative class. (Dkt. 1-1, Defendant's Answer, Exh. B to Notice of Removal, filed Dec. 15, 2022, at 4:10-14). If RXO establishes this affirmative defense, Plaintiff's "waiting time penalty" claim under Cal. Labor Code § 203 and wage statement claim under Cal. Labor Code § 226 would have zero value.

Similarly, Defendant's Sixth Affirmative Defense alleges that Plaintiff's meal and rest breaks are preempted by federal law pursuant to the Federal Motor Carrier Safety Administration and Federal Motor Carrier Act (Answer, at 3:11-

14.) If this defense theory is successful, Plaintiff's meal and rest break claims would be completely gutted and the Class would recover nothing.

Not to mention, Defendant's Seventh Affirmative Defense regarding "Offset" if proven to be true, then the two million dollars RXO purportedly paid to Plaintiff will impact Plaintiff's compensatory damages, dramatically reducing it as well, resulting in even a more "modest sum." But there is no established upper limit as to what constitutes a "modest recovery" for purposes of the first *Gentry* factor, and the question is whether the potential award may fail to "provide[] 'ample incentive' for an individual lawsuit". *Muro,* 20 Cal.App.5th at 793.

The unreasonableness of Defendant's $2.2 million revenue figure for Plaintiff as a measure of damages can also be seen by virtue of Defendant's estimated size in the putative class of contract carriers, what Defendant terms the Delivery Service Providers.  Defendant estimates that it "contracted with more than 500 Delivery Service Providers" that fall within the scope of this suit. Notice of Removal, ¶ 18.  If that's the case, if Plaintiff's paid revenue represents the average for Defendant's contract carriers, then with 500 plus contract carriers, over $1,100,000,000 is at issue in this suit for this subclass alone before even considering the secondary drivers and helpers, a patently unreasonable figure.  Defendant may want to argue that Plaintiff was paid more than most contract carriers, but even if that's the case, even if the average figure is, for example, $1,000,000 in revenue per contract carrier, the total for this subclass alone would still amount to $500,000,000, a wholly unreasonable figure because Defendant's Seventh Affirmative Defense for Offset is not factored into that calculation.

In other words, even if the Court finds that Plaintiff's claims are large enough to provide an incentive for an individual action, the fact that the DSA's class action waiver provision would also serve to bar class-wide litigation of the

claims belonging to the putative class, which clearly meet the "modest recovery" factor espoused by *Gentry*, ultimately weighs in favor of unconscionability. As stated by the Cal. Supreme Court:

> We also agree [...] that "class actions may be needed to assure the effective enforcement of statutory policies **even though some claims are large enough to provide an incentive for individual action**. While employees may succeed under favorable circumstances in recovering unpaid overtime through a lawsuit or a wage claim filed with the Labor Commissioner, **a class action may still be justified if these alternatives offer no more than the prospect of 'random and fragmentary enforcement' of the employer's legal obligation**"

*Gentry*, 42 Cal.4th at 462 (emphasis added).

*Second*, regarding the "fear of retaliation" factor, RXO argues that Plaintiff has not presented any "actual retaliation because none has occurred." Dkt. 34, 4:13-14. But such a contention is nonsensical. Actual retaliation is not the relevant standard, only a potential for retaliation is needed to adequately demonstrate that this factor has been met. In his declaration, Plaintiff testified that "I was told that I needed to sign a variety of paperwork so that I could be assigned routes. I signed a bunch of documents which I understood I had to do in order to receive work from XPO." Mejia Decl., ¶ 3. As the *Gentry* Court recognized, "retaining one's employment while brining formal legal action against one's employer is not 'a viable option for many employees" and "[t]he difficulty of suing a current employer is likely greater for employees further down on the corporate hierarchy [...] [because] the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *Gentry*, 42 Cal.4th at 459-460.

In addition, the DSA gives XPO unfettered discretion to terminate the agreement upon fifteen-day written notice. *Gentry*, 42 Cal.4th at 460 ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.") (citing

PLAINTIFF'S REPLY TO DEF RXO LAST MILE, INC.'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MTC ARBITRATION

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960))

*Third*, and again, RXO demands *actual* proof that the putative class were not informed of their rights and relies on the disclosure of the agreement as some type of bullet proof measure that the putative class was indeed informed of their rights. Not so. Plaintiff need not present "affirmative evidence that rights were not communicated to absent class members in order to satisfy the third Gentry factor". *Muro*, 20 Cal.App.5th at 794-795. *Gentry* noted that "it may often be the case that the illegal employer conduct escapes the attention of employees" and "some individual employees may not sue because they are unaware that their legal rights have been violated." 42 Cal.4th at 46. Plaintiff was not aware of his rights under the Labor Code while employed by Defendant; Defendant regularly misrepresented to him and other Drivers that they were independent contractors not entitled to the wage and hour protections espoused by the Labor Code.

*Fourth*, in attempting to stave off any argument of the "other real world obstacles" Plaintiff and the Putative Class face, RXO points out that the DSA contains an opt-out provision. But such a provision does not inoculate an employee against the economic pressure to accept the agreement when trying to avoid drawing the ire of a new employer. *See Gentry*, 42 Cal. 4th at 471. ("Given the inequality between employer and employee and the economic power that the former wields over the latter . . . it is likely that [the defendant's] employees felt at least some pressure not to opt out of the arbitration agreement.")

Realistically, the very essence of this suit is that Defendant not only failed to inform Plaintiff of his rights, but also took active steps to misinform him about his rights, such as misrepresenting to him and other class members' true employment status.  In any "other real world obstacles to the vindication of class members' rights," the Court must consider that a "requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the

costs of arbitration and diminish the prospect that the overtime laws will be enforced." *Garrido v. Air Liquide Industrial U.S. LP*, 41 Cal.App.4th 833, 846-847 (2015). Here, there are potentially hundreds if not thousands of affected class members serving as last-mile Delivery Drivers for RXO, the majority of which statistically will never seek arbitration to vindicate their rights. Just as contemplated in *Garrido*, for the workers that do seek relief, it makes little sense to require the same exact legal and factual issues to be adjudicated again and again in separate arbitral forums.

Requiring such would not only increase the overall costs of obtaining relief for an even smaller number of employees claims than would be resolved by class adjudication, but would further run the risk of inconsistent rulings on the same facts and claims. Based upon the foregoing, it is clear that "a class proceeding here would be a significantly more effective way of allowing employees to vindicate their statutory rights". *Id*. at 847. Further, where the *Gentry* factors are met, such a "class waiver constitute[s] an unlawful exculpatory clause." *Id*.

C.   ***The Arbitration Provision and the Delegation Clause Are Unconscionable And Cannot Be Enforced***

RXO's Arbitration Provision and its purported delegation clause are both unconscionable. Establishing this requires a showing of both procedural and substantive unconscionability. *OTO, LLC v. Kho*, 8 Cal.5th 111, 125 (2019). These factors need not be present in the same degree and instead are evaluated on a sliding scale. *Id*. at 125, 130.  As few as two unconscionable terms can "permeate" an arbitration agreement and support a decision not to enforce it. *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005-1006 (9th Cir. 2021).  Plaintiff has presented more than two and ample unconscionable terms (*See* Dkt. 25, 33) rendering the only conclusion that Plaintiff's claims must proceed in Court.

RXO's incorporation of AAA commercial rules forces last-mile delivery drivers, like Mr. Mejia, to risk being on the hook for arbitration costs, including

1  paying the arbitrator – a risk they would not face in court. Putting costs on a

2  plaintiff seeking wages that it would not face in court is substantively

3  unconscionable. *See Lim*, 8 F.4th at 1003; *Roe v. SFBSC Mgmt., LLC*, Case No.

4  14-cv-03616-LB, 2015 WL 930683, at *11 (N.D. Cal. Mar. 2, 2015) (arbitration

5  cost splitting is unconscionable).  RXO has double-downed on its approach,

6  highlighting that RXO will pay for the arbitrator costs until such time as the

7  Arbitrator determines payment responsibility. But even if the Court were to

8  accept Defendant's representations, the AAA Commercial Rules provide that the

9  arbitrator "apportion such fees, expenses, and compensation among the parties in

10  such amounts as the arbitrator determines is appropriate." R-47 of Exh. A (Dkt.

11  33-1, p. 32). Thus, there is no express prohibition on the arbitrator ever shifting

12  arbitration costs to Plaintiff in a final award under R-47. This fee-shifting clause

13  creates for plaintiffs a "greater financial risk in arbitrating claims than they

14  would face if they were to litigate those same claims in federal court." *Pokorny*

15  *v. Quixtar*, 601 F.3d 987, 1004 (9th Cir. 2010).

16       Finally, and notably, at the prior hearing, the Court inquired whether

17  Defendant would be willing to absorb all costs unique to arbitration as a

18  condition for the Court to grant Defendant's motion under the California

19  Arbitration Act.  But as set forth in Plaintiff's prior brief, a court may not to

20  reform an unconscionable arbitration agreement but must void it.  The California

21  Supreme Court stated in *Armendariz v. Foundation Health Psychare Services*, 24

22  Cal.4th 83 (2000):

23       "Civil Code section 1670.5 does not authorize such reformation by
          augmentation, nor does the arbitration statute. Code of Civil
24       Procedure section 1281.2 authorizes the court to refuse arbitration if
          grounds for revocation exist, not to reform the agreement to make it
25       lawful. Nor do courts have any such power under their inherent,
          limited authority to reform contracts. (*See Kolani v. Gluska* (1998) 64
26       Cal.App.4th 402, 407-408, 75 Cal.Rptr.2d 257 [power to reform
          limited to instances in which parties make mistakes, not to correct
27       illegal provisions]; *see also Getty v. Getty* (1986) 187 Cal.App.3d
          1159, 1178-1179, 232 Cal.Rptr. 603."

28

1    *Armendariz*, 24 Cal.4th at 125.

2         Here, there is simply no term that can be severed from the arbitration

3    agreement to make it such that Plaintiff is not liable for extraordinary

4    administrative costs, at least until essentially proving misclassification, under

5    AAA's commercial arbitration rules.  The Court cannot order the Parties to

6    substitute AAA's employment rules nor can the Court order Defendant to pay all

7    costs unique to arbitration, even before Plaintiff proves misclassification,

8    because that requires more than the severance of any particular term, it requires

9    *reformation* of the Parties' agreement, and that is simply not permitted under

10   California law as interpreted by the California Supreme Court in *Armendariz*.

11        The Northern District of California has acknowledged as much, refusing to

12   modify a contract by reforming its provisions when it is clear that 'mistake' is

13   not at issue.  *See Applied Materials, Inc. v. Advanced Micro-Fabrication Equip.*

14   *(Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091 (N.D. Cal. 2009) ("In this case, the

15   Court has found that the Assignment Clause operates as an unlawful non-

16   compete provision.  As such, it is void under California law. … The Court is not

17   permitted to apply any narrowing construction to limit the application of the

18   Assignment Clause to confidential information or to inventions conceived by

19   former Applied employees during their tenure at Applied.") (citations omitted).

20        For these reasons, the unconscionable terms of the arbitration agreement

21   cannot be reformed.  As severance of any specific term does not solve the issue,

22   the only outcome prescribed by California law is that the entire arbitration

23   agreement must be struck down.

24        **D.   *Labor Code Section 229 Exempts Plaintiff's Claims from the***

25             ***Agreement***

26         In arguing that Labor Code section 229 does not preclude arbitration,

27   RXO solely relies on the *Bravo v. RADC Enters., Inc.*, 33 Cal. App. 5th 920

28   (2019) decision. As that same court previously held, in cases where a contract is

PLAINTIFF'S REPLY TO DEF RXO LAST MILE, INC.'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MTC ARBITRATION

enforceable under California law exclusively and therefore governed by the CAA, "an action under Labor Code Section 229 may be maintained in court." *Garrido*, 41 Cal.App.4th at 844-845. Sensing that Labor Code section 229 claim poses a problem to RXO's efforts to compel arbitration, Defendant's strained interpretation of Labor Code section 229 turns the plain meaning of the statute on its proverbial head. Labor Code section 229 reflects the Legislature's intent to assure a judicial forum for disputes involving state-mandated wages, notwithstanding that there is also a strong public policy in favor of arbitration. *Flores v. Axxis Network & Telecommunications, Inc.*, 173 Cal. App. 4th 802, 811 (2009).

Such state-mandated wages obviously include (but are not limited to), minimum wages and overtime wages. The plain meaning of Labor Code section 229 supports Plaintiff's position. *See Bodell Construction Co. v. Trustees of Cal. State University*, 62 Cal. App. 4th 1508, 1515-1516 (1998) ("The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. … In determining that intent, we first examine the words of the statute itself. … Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning.")

To the extent that the CAA governs, in the absence of FAA, Labor Code § 229 governs. Subsequent to *Bravo*, in *Muller*, the court there found the FAA inapplicable thus turning to California law to determine that the lower court properly found that Section 229 renders the parties' arbitration agreement ineffective on Muller's cause of action for unpaid wages. *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal. App. 5th 1056, 1059-1060 (2019). Moreover, in *Nieto v. Fresno Beverage Co. Inc.*, 33 Cal. App. 5th 274, 281 (2019) the court applied Labor Code 229 to claims of a California driver arising under Labor Code § § 203, 226, 226.7, 510, 512, and 1194 where the FAA was inapplicable

12

1  because the Plaintiff was exempt under Section 1.

2       Because the CAA, not the FAA, applies in the instant case, section 229

3  allows Plaintiff to litigate his 226.7 claim regardless of the terms of the

4  Arbitration Agreement. California Labor Code section 226.7 guarantees the

5  employee's right to a meal or rest period. The employee is owed one additional

6  hour of pay for every workday the meal or rest period is not provided. The

7  additional hour of pay, guaranteed under section 226.7, is a wage that the

8  employee has earned by working through their meal or rest period. As such,

9  California Labor Code Section 229, which allows for the collection of due and

10 unpaid wages regardless to any private agreement to arbitrate, applies to 226.7

11 claims.  Contrary to RXO's argument, a claim for payment under 226.7 is not

12 merely a legal remedy, but a wage intended to compensate employees. *Murphy v.*

13 *Kenneth Cole Productions, Inc*., 40 Cal. 4th 1094, 1114 (2007) ("The statute's

14 plain language, the administrative and legislative history, and the compensatory

15 purpose of the remedy compel the conclusion that the 'additional hour of pay' is

16 a premium wage intended to compensate employees.").

17      The California Supreme Court recently re-confirmed that meal and rest

18 period premiums are considered wages in *Murphy* in *Naranjo v. Spectrum Sec.*

19 *Servs*. 13 Cal.5th 93 (2022), holding that meal period payments "constitute[]

20 wages subject to the same timing and reporting rules as other forms of

21 compensation for work," and give rise to valid causes of action for non-payment

22 of wages under Lab. Code § 226 (improper wage statements) and § 203 (late-

23 paid wage statements). Accordingly, § 229 applies here and Plaintiff may bring

24 his claims for unpaid wages and attendant penalties that are largely derivative in

25 nature and largely seek to recover from the same pool of damages as the primary

26 claims listed above.

27 ////

28 ////

III.   **CONCLUSION**

For all the foregoing reasons, Defendant's Motion must be denied.

Dated: June 23, 2023                          BOYAMIAN LAW, INC.


By: /s/ Michael Boyamian
MICHAEL H. BOYAMIAN
Attorneys for Plaintiff Maynor Mejia
Lopez and all others similarly
situated


**ATTESTATION**

I hereby attest that the concurrence in the filing of this document has been

obtained from Michael H. Boyamian of Boyamian Law, Inc., Attorneys for

Plaintiff.

Dated: June 23, 2023                 By:    /s/ Armand R. Kizirian
Armand R. Kizirian
Attorneys for Plaintiff Maynor Mejia
Lopez and all others similarly
situated

PLAINTIFF'S REPLY TO DEF RXO LAST MILE, INC.'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MTC ARBITRATION