UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA, <br><br> Plaintiff, <br><br> v. <br><br> RXO LAST MILE, INC., <br><br> Defendant. | Case No. 22-cv-08976-SI <br><br> **ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. No. 20 |

Before the Court is defendant RXO Last Mile, Inc.'s motion to compel arbitration. Dkt. No. 20. For the reasons discussed below, the motion is DENIED.

## BACKGROUND

Defendant RXO Last Mile, Inc.[1] is in the business of "arrang[ing] freight deliveries for its customers." Motion to Compel Arbitration ("Motion"), Dkt. No. 20, at 1. Plaintiff Maynor Mejia brings this proposed class action against RXO Last Mile, Inc., alleging that RXO denied plaintiff and other delivery drivers the benefits and protections required under the California Labor Code and other state laws. Dkt. No. 1-1, Complaint at ¶ 1. Plaintiff filed suit in the Superior Court for the State of California for the County of Alameda, Case No. 22-CV-020443. The case was removed to this court. Dkt. No. 1.

Per plaintiff's allegations, RXO "provides logistics and delivery services to its retail merchants like Samsung, Peloton, Macy's, and others, to deliver product[s] and services to [RXO's] customers." Compl. ¶ 7. RXO's delivery drivers engage in "last mile" delivery, meaning that they

---

[1] RXO Last Mile, Inc. was formerly known as "XPO Last Mile, Inc.," and was initially sued under that name. *See* Dkt. No. 20 at 2; Dkt No. 1-1.

"pick up the merchandise at the merchants' stores or warehouses and . . . deliver and install them at the customers' homes or businesses." *Id.* Plaintiff alleges RXO "exercises pervasive control over the work these Delivery Drivers perform" and "has established an elaborate system and scheme . . . to conceal its true status as the employer of its Delivery Drivers." *Id.* ¶¶ 14, 16. RXO hires drivers under the guise of contractors but controls the manner in which drivers perform the work through the Delivery Service Agreement ("DSA") it requires the drivers to sign. *Id.* ¶ 17–18. RXO refers each driver it hires "to a company that processes the paperwork to create a purported corporate or limited liability company entity" and requires each driver to do so in order to work for RXO. *Id.* ¶ 18. Plaintiff alleges that RXO engages in this and other processes to deprive the drivers of wages and other benefits due to employees under California law. *See id.* ¶ 2.

Plaintiff owns an LLC, ABC Logistics LLC, and signed a DSA on behalf of ABC Logistics on June 6, 2018. Declaration of Benjamin J. Schnayerson, Dkt. No. 21, ¶ 4, Ex. 1 ("DSA"). The DSA includes an Arbitration Agreement that requires arbitration of "any demand, assertion, or claim or cause of action for money, property, enforcement of a right, or equitable relief, including but not limited to allegations of misclassification or wage and hour violations (except as carved out below) arising out of or relating to the Agreement, or the breach thereof . . . ." DSA ¶ 21.1. The Arbitration Agreement includes a class action waiver. *Id.* ¶ 21.6. It delegates resolution of disputes "relating to the formation, enforceability, applicability, or interpretation of this Arbitration Agreement" to the arbitrator, with an exception for the validity of the class action waiver. *Id.* ¶ 21.5. The Arbitration Agreement provides that any questions as to the validity and scope of the class action waiver "shall be decided by a court of competent jurisdiction and not the arbitrator." *Id.* ¶ 21.6.

The Arbitration Agreement allows for the contract carrier to opt out within 30 days of the date the DSA was signed. *Id.* ¶ 21.10. The DSA does not appear to contain a choice of law provision except that it requires the Arbitrator to apply Georgia law in the case of an arbitration. *Id.* ¶ 21.8.

The DSA may be terminated unilaterally by either party upon 15-day notice to the other party. *Id.* ¶ 18.2.

Defendant seeks an order compelling arbitration pursuant to the Arbitration Agreement in

2

the DSA and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* Motion to Compel, Dkt. No. 20. In the alternative, defendant requests that the Court stay proceedings until the Ninth Circuit decision on remand in another FAA case, *Carmona v. Domino's Pizza*, LLC, 21 F.4th 627 (9th Cir. 2021). *Id.* Plaintiff opposes, arguing that he is exempted from the FAA due to the "transportation worker" exemption to the FAA, 9 U.S.C. § 1, and that the Arbitration Agreement is procedurally and substantively unconscionable. Opposition to Motion to Compel, Dkt. No. 25.

The Court heard oral argument on the motion on May 3, 2023, and requested additional briefing on the whether arbitration should be compelled by the California Arbitration Act ("CAA") if the FAA does not apply. Dkt. No. 30. The parties submitted supplemental briefing on this issue. Dkt. Nos. 33–35.

**LEGAL STANDARD**

The FAA "places arbitration agreements on an equal footing with other contracts." *In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020). But Section 1 of the FAA excludes from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The question of whether an arbitration agreement is exempted under Section 1 is a question for the courts. *New Prime v. Oliveira*, 139 S.Ct. 532, 537 (2019). This is true even where the arbitration agreement contains a delegation clause. *Id.* at 538.

The CAA provides that arbitration agreements are "valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. P. § 1281. However, because the CAA is a state statute, it "obviously does not prevent [the California State] Legislature from selectively prohibiting arbitration in certain areas." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98, 6 P.3d 669, 679 (2000).

Under California Law, the trial court may resolve a motion to compel arbitration "in summary proceedings, in which [t]he petitioner bears the burden of proving the existence of a valid Arbitration Agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 683 (2014) (quoting *Engalla v. Permanente*

3

1  *Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997).

## DISCUSSION

**I.     The Federal Arbitration Act Does Not Apply.**

The Court must first determine whether Section 1 exempts this contract from the FAA. 9 U.S.C. § 1. The issue is whether Mejia belongs to a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1787 (2022). Mejia is a member of a "class of workers" based on what Mejia does, not what RXO Last Mile does generally. *See id.* at 1788 (accepting argument that Section 1 "exempts classes of workers based on their conduct, not their employer's"). Mejia conducted "last mile" deliveries for RXO Last Mile's retail clients, in which Mejia would drive the purchased item from a warehouse to a customer's address. Mejia Decl., Dkt. No. 25-2, at ¶ 6. Mejia drove mostly within California, although one delivery took him out-of-state to Nevada. *Id.* ¶ 8.

The Court must determine whether the class of "last mile" delivery drivers like Mejia are "engaged in foreign or interstate commerce" under Section 1. *Saxon*, 142 S. Ct. at 1789. The Court finds that they are. Both the Supreme Court and the Ninth Circuit have shed light on this issue.

In *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 918 (9th Cir. 2020), the Ninth Circuit concluded that "last mile" delivery drivers for Amazon qualified as "transportation workers" under Section 1. Like the plaintiff in this case, the workers in *Rittmann* delivered goods from a warehouse to customers within the same state. The Ninth Circuit determined that the Amazon drivers were engaged in foreign or interstate commerce because they "complete the delivery of goods that Amazon ships across state lines and for which Amazon hires [the] workers to complete the delivery." *Id.* at 917. The Ninth Circuit noted that "Amazon packages do not 'come to rest,' at Amazon warehouses, and thus the interstate transactions do not conclude at those warehouses." *Id.* at 916.

In *Saxon*, the Supreme Court held that a ramp supervisor for Southwest Airlines whose work frequently required her to load and unload baggage to and from planes traveling interstate fell within Section 1's exemption. The "Court declined to adopt a broad rule that exempts all workers of a

1    business engaged in interstate commerce" but also "refused to limit the exemption to only workers
2    who physically traveled across state lines." *Rizvanovic v. United Parcel Serv., Inc.*, No. 1:21-CV-
3    01278-CDB, 2023 WL 346800, at *4 (E.D. Cal. Jan. 20, 2023) (discussing *Saxon*, 142 S. Ct. at
4    1791–93). It explained that, to qualify as a "transportation worker" under Section 1, a worker "must
5    play a direct and 'necessary role in the free flow of goods' across borders." *Saxon*, 142 S. Ct. at
6    1790. The Supreme Court acknowledged *Rittmann* in *Saxon* but expressly declined to review it.
7    *Saxon*, 142 S. Ct. at 1789 n. 2 (noting *Rittmann*); *Amazon.com, Inc. v. Rittmann*, 141 S. Ct. 1374
8    (2021) (petition for writ of certiorari denied).

9        Following *Saxon*, the Ninth Circuit has clarified that its reasoning in *Rittmann* "was rooted
10   both in the interstate nature of Amazon's business, and in the fact that 'AmFlex workers complete
11   the delivery of goods that Amazon ships across state lines and for which Amazon hires [them] to
12   complete the delivery.' " *In re Grice*, 974 F.3d 950, 957 n.5 (9th Cir. 2022). While the first part of
13   that analysis is undermined by *Saxon*, the second part is not. *Saxon* is consistent with the reasoning
14   that last mile delivery drivers are engaged in interstate commerce because they deliver items that
15   are in the flow of interstate commerce and have not yet come to rest.

16       Because *Rittmann* remains controlling law, and because the reasoning of both *Rittmann* and
17   *Saxon* support plaintiff's argument, this Court agrees that Section 1 exempts application of the FAA
18   to this contract. The Court need not stay proceedings pending the outcome of *Carmona v. Domino's*
19   *Pizza, LLC*, 21 F.4th 627, 629 (9th Cir. 2021), *cert. granted, judgment vacated*, 143 S. Ct. 361
20   (2022), because *Rittmann* remains good law and is nearly identical to the relevant facts here.
21   Because the DSA is a "contract[] of employment of seamen, railroad employees, or any other class
22   of workers engaged in foreign or interstate commerce," it is excluded from the FAA. 9 U.S.C. § 1.

23

24   **II.    The California Arbitration Act Does Not Compel Arbitration of This Case.**

25       Although the FAA does not apply, the Court must still determine if arbitration is required
26   by state law. *Rizvanovic v. United Parcel Serv., Inc.*, No. 1:21-CV-01278-CDB, 2023 WL 346800,
27   at *5 (E.D. Cal. Jan. 20, 2023). The parties agree that California law applies. *See* Dkt. No. 20 at 9
28   (arguing DSA is not unconscionable under California law); Dkt. No. 25 (arguing DSA is

5

unconscionable under California law).

The California Arbitration Act ("CAA") provides that "a written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code Section 1281. Arbitration agreements are "governed by contract law." *Mendoza v. Trans Valley Transp.*, 75 Cal. App. 5th 748, 764 (2022). They are "construed like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply." *Id.* "California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." *Coast Plaza Drs. Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686 (2000), *as modified* (Sept. 7, 2000). However, arbitration agreements that "encompass *unwaivable* statutory rights must be subject to particular scrutiny." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 100 (2000). This is because these kinds of arbitration agreements may "impermissibly interfere" with employees' ability to "vindicate unwaivable rights and to enforce the overtime laws." *Gentry v. Superior Ct.*, 42 Cal. 4th 443, 457 (2007).

Plaintiff argues that the CAA does not compel arbitration because the arbitration agreement impermissibly interferes with the vindication of plaintiff's statutory rights and because the agreement is unconscionable. Dkt. No. 33. Defendant argues that the question of arbitrability is delegated to an arbitrator, the agreement does not violate plaintiff's statutory rights, and the agreement is not unconscionable. Dkt. No. 34.

The first issue for the Court is whether the validity of the arbitration agreement should be decided by the Court or an arbitrator. The Arbitration Agreement contains the following delegation clause:

> Except as noted Paragraph 21.6, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Arbitration Agreement, including without limitation any claim that this Arbitration Agreement is void or voidable. Thus, except as noted in Paragraph 21.6, the parties voluntarily waive the right to have a court determine the enforceability of this Arbitration Agreement. In the event any portion of this Arbitration Agreement is deemed unenforceable, then such portion will be modified or, if modification is not possible, stricken to the extent necessary to allow enforcement of this Arbitration Agreement, and the remaining

provisions will remain in full force and effect.

DSA at ¶ 21.5. But paragraph 21.6 includes a class action waiver and provides that disputes as to the scope or validity of the class action waiver "shall be decided by a court of competent jurisdiction and not the arbitrator." *Id.* at ¶ 21.6. Paragraph 21.6 further provides that if the class action waiver is invalid for any reason, the parties "waive any right to arbitration . . . and instead agree to stipulate that [class or collective] claims will be heard only by a judge." *Id.* Thus, the Court must determine whether the class action waiver is valid. If the class action waiver is invalid, arbitration is waived by the parties and all remaining issues are moot. *Id.*

Plaintiff argues that the class action waiver is invalid because it impermissibly burdens employees' ability to exercise their unwaivable statutory rights. Dkt. No. 33 at 3. California courts "will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights." *Gentry v. Superior Ct.*, 42 Cal. 4th 443, 464 n.7 (2007) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110 (2000)). In *Gentry v. Superior Ct.*, the California Supreme Court held that class arbitration waivers are unenforceable if they undermine enforcement of overtime laws.[2] *Id.* at 463. Under the *Gentry* rule, the court must consider four factors: "the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration." *Id.* If, after considering those factors, the court determines that the class waiver "will likely lead to a less comprehensive enforcement of overtime laws" and proceeding as a class would be "a significantly more effective practical means of vindicating the rights of the affected employees," the court must invalidate the class waiver. *Id.*

*Gentry* does not "say categorically that all class arbitration waivers in overtime cases are unenforceable." *Id.* at 462. The plaintiff is required to make "a factual showing under the four-

---

[2] In light of the Supreme Court's ruling in *ATT&T Mobility LLC v. Conception*, 563 U.S. 333 (2011), the FAA preempts the *Gentry v. Superior Court* rule. *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 362 (2014). However, "the *Gentry* rule remains valid under the CAA." *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 845 (2015). Because the FAA does not apply to this case, the Court applies the *Gentry* rule.

7

factor test." *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 497, as modified (July 20, 2011). However, the Court has "broad discretion" in ruling this issue. *Muro v. Cornerstone Staffing Sols., Inc*, 20 Cal. App. 5th 784, 792 (2018).

### A. The Modest Size of the Potential Individual Recovery

Plaintiff argues there is a modest size of potential individual recovery because his pay fell below the minimum wage and precluded him from receiving overtime compensation, among other variations. Dkt. No. 33 at 5. Defendant argues plaintiff's potential recovery is substantial because it not only includes his wage loss, but also large amounts of business expenses if both employment status and business expense claims are proven. Dkt. No. 34 at 4. In response, plaintiff argues any of defendant's twenty-three affirmative defenses could significantly lower the amount owed to him. Dkt. No. 35 at 5.

Plaintiff has shown a modest size of potential individual recovery. Generally, "individual awards in wage-and-hour cases tend to be modest" because they ""usually involve[ ] workers at the lower end of the pay scale." *Gentry*, 42 Cal. 4th at 457. Potential damages "up to $37,000" have been found to satisfy a modest size of potential individual recovery under the *Gentry* rule. *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 846 (2015); *see Betancourt v. Transportation Brokerage Specialists, Inc.*, 62 Cal. App. 5th 552, 557 (2021) (finding damages ranging from $16,376 to $36,512 to be modest under *Gentry*). In its Notice of Removal, defendant calculated the maximum damages for the putative class to be $22,331,525. Dkt. No. 1 at ¶¶ 34, 38. It is undisputed that there are at least 500 Delivery Service Drivers, who in turn "engaged hundreds, if not thousands" of secondary drivers and helpers, all of whom are part of the putative class. *Id.* ¶ 18. Assuming the low end of 1,000 class members, the average potential recovery of each class member would be no more than $22,331.53.

Defendant argues that plaintiff's individual recovery is likely higher because he "employed 10 delivery drivers and helpers and performed delivery services amounting to more than $2.2 million." Dkt. No. 34 at 4. This argument is unpersuasive for several reasons. The figure cited by defendant is the total services rendered by plaintiff and the other 10 drivers and helpers, not

8

plaintiff's claim for recovery. *See id.* Further, as plaintiff points out, any of defendant's twenty-three affirmative defenses may lessen the amount of damages awarded to plaintiff. Dkt. No. 35 at 5. And *Gentry* suggests that the Court should look at the potential recovery of the average class member, not outliers within the class. The *Gentry* court explains:

> [C]lass actions may be needed to assure the effective enforcement of statutory policies even though some claims are large enough to provide an incentive for individual action. . . . [A] class action may still be justified if . . . alternatives offer no more than the prospect of random and fragmentary enforcement of the employer's legal obligation to pay overtime. . . . [A]bsent effective enforcement, the employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying overtime.

Gentry, 42 Cal. 4th at 460–61. Because the concern of *Gentry* is vindication of the rights of the class as a whole, the Court considers the average potential recovery and finds that this factor of the *Gentry* test is met.

### B.     The Potential for Retaliation Against Members of the Class

The next factor is fear of retaliation. *Id.* at 460 ("[I]t is reasonably presumed that potential class members still employed by employer might be unwilling to sue individually or join a suit for fear of retaliation at their jobs.") (internal quotation marks omitted) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)). Plaintiff argues that there is potential for retaliation against class members because RXO controls all aspects of the employer-employee relationship through DSA contracts and retains the right to terminate the contracts with 15 days' notice. Dkt. Nos. 33, 35. Defendant argues that this factor is not met because plaintiff has not shown actual retaliation and the Arbitration Agreement includes an opt-out provision. Dkt. No. 34.

Defendant's arguments miss the mark. The standard under *Gentry* is *potential* for retaliation, not actual retaliation. *Gentry*, 42 Cal. 4th at 457 ("Given that retaliation would cause immediate disruption of the employee's life and economic injury, and given that the outcome of the complaint process is uncertain . . . fear of retaliation will often deter employees from individually suing their employers."); *see Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th 784, 794 (2018) (finding plaintiff's declaration that he feared retaliation sufficient). That plaintiff has not shown actual

retaliation is irrelevant. And the issue is whether employees fear retaliation for bringing claims, not whether they fear retaliation for opting out of the Arbitration Agreement. Thus, the fact that the contract terms prohibited retaliation against contract carriers who opt out of arbitration is likewise irrelevant.

The Court finds that this factor is met. Plaintiff has stated in a declaration that he was "told by XPO" to complete certain requirements and "sign a variety of paperwork" which he "understood [he] had to do in order to receive work from XPO." Dkt. No. 25-2, Mejia Decl., at ¶ 3. Further, the DSA gives either party the right to terminate the relationship with fifteen days' notice to the other party. DSA at ¶ 18.1. Plaintiff and other members of the class drove trucks or assisted with deliveries. In light of the showing that the class members are low-wage workers, the relationship is controlled by RXO Last Mile, and RXO Last Mile retains the right to terminate the relationship with class members on fifteen days' notice, the Court finds that there is a high potential for retaliation.

### C. Individual Class Members May Be Ill-Informed About Their Rights

According to the *Gentry* court, "it may often be the case that the employer's illegal conduct escapes the attention of employees" and that "employees may not be aware of the nuances of overtime laws with their sometimes-complex classifications of exempt and nonexempt employees." *Gentry*, 42 Cal. App. 4th at 461. Plaintiff argues that he and other drivers were unaware of their rights because RXO Last Mile required plaintiff (and, it can be inferred, other drivers) to sign paperwork he did not understand and represented to him that he was a contract worker who did not have rights as an employee. Dkt. Nos. 33, 35. Defendant argues that plaintiff has not shown affirmative evidence that rights were not communicated and that defendant encourages contract carriers to get a lawyer before signing a DSA.

Affirmative evidence that rights were not communicated to absent class members is not required to satisfy the third prong under *Gentry*. *Muro*, 20 Cal. App. 5th at 794. In *Garrido v. Air Liquide Indus. U.S. LP*, the plaintiff declared he was "unaware of his rights under the Labor Code while employed by Air Liquide, and that Air Liquide made no effort to inform him or other truck drivers of such rights." *Garrido*, 241 Cal. App. 4th at 846. From this evidence, the court determined

10

1   the trial court "could reasonably infer that absent class members may be ill informed of their rights."
2   *Id*; *see also Muro*, 20 Cal. App. 5th at 794 (finding plaintiff showed absent members of the class
3   may be ill informed of their rights because the plaintiff stated he "(1) did not know what his rights
4   were when he worked for Cornerstone, (2) did not understand he was not getting paid for all hours
5   worked and not receiving his meal and rest breaks according to California law, and (3) was not
6   informed by Cornerstone of his rights under California law").

7   Plaintiff submitted a declaration stating that he signed paperwork that was given to him by
8   RXO Last Mile and understood it to be mandatory. Dkt. No. 25-2, Mejia Decl., at ¶ 3. He declared
9   that his preferred language is Spanish and he did not know what an arbitration agreement was until
10  his lawyer told him. *Id.* The class members are low-wage workers, and the Court may reasonably
11  presume other class members were similarly misinformed. *See Muro*, 20 Cal. App. 5th at 794.

### D.   Other Real-World Obstacles

Plaintiff makes no particularized showing as to other real-world obstacles. Plaintiff's arguments on this point amount to a general conclusion that class action waivers inhibit claims. This factor weighs in favor of defendant.

### E.   This Class Action Waiver is Invalid Under *Gentry*

In sum, plaintiff has made a strong showing as to three of the four *Gentry* factors. Although it is a somewhat close question, the Court concludes that the class action waiver is invalid under the *Gentry* test. Because the class action waiver is invalidated, ¶ 21.6 of the DSA provides that the parties waive their right to arbitration and the case must proceed in court. DSA at ¶ 21.6; *see* Dkt. No. 34 at 16. The Court need not reach the parties' other arguments.

///
///

11

**CONCLUSION**

For the foregoing reasons, defendant's motion to compel arbitration is **DENIED.**

**IT IS SO ORDERED**.

Dated: August 10, 2023

SUSAN ILLSTON
United States District Judge