1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

MAYNOR MEJIA LOPEZ,                          Case No. 22-cv-08976-SI

8

Plaintiff,

9

v.                                          **ORDER GRANTING MOTION TO DISMISS THIRD-PARTY COMPLAINT AGAINST ABC LOGISTICS, INC.**

10

RXO LAST MILE, INC.,

Re: Dkt. No. 63

11

Defendant.

12
13

Before the Court is plaintiff's motion to dismiss the third-party complaint filed by RXO Last

14

Mile, Inc. ("RXO") against ABC Logistics, Inc. ("ABC Logistics").  Dkt. No. 63.[1]  RXO opposes.

15

Dkt. No. 65.  The Court heard oral argument on this motion on April 5, 2024.  For the reasons set

16

forth below, the Court GRANTS the motion.

17
18

**BACKGROUND[2]**

19

On January 9, 2024, the Court granted RXO's motion for leave to file a third-party complaint

20

against ABC Logistics.  Dkt. No. 53.  RXO filed its third-party complaint on January 17, 2024.  Dkt.

21

No. 55.  Plaintiff Maynor Mejia Lopez now moves to dismiss this complaint.  Dkt. No. 63.

22

RXO alleges that ABC Logistics is a limited liability company ("LLC") with plaintiff Mejia

23

Lopez as its founding and managing member.  Dkt. No. 55 ("Third Party Compl.") ¶¶ 2-3.  Mejia

24
25

[1] Plaintiff Maynor Mejia Lopez filed the motion to dismiss.  The third-party complaint was filed against ABC Logistics, Inc.  For legal purposes, the Court treats this motion to dismiss as filed by ABC Logistics, Inc.

26
27

[2] For purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in third-party plaintiff RXO's complaint and draws all reasonable inferences in third-party plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

28

United States District Court
Northern District of California

Lopez formed ABC Logistics on or about March 7, 2018 and has continually operated it since. *Id.* ¶ 4. During ABC Logistics's operation, it has made several filings with the California Secretary of State to maintain its authorization to conduct business as an LLC. *Id.* ¶ 5.

RXO is a "third party logistics company that operates as an authorized broker and freight forwarder for its clients, such as retailers and distributors of furniture, appliances, large electronics, and building supplies." *Id.* ¶ 12. RXO enters into Delivery Service Agreements ("DSAs") with "independent delivery service providers," referred to as "Contract Carriers," that "are authorized by the federal government to move goods from retailers, warehouses, and other locations to consumers' homes." *Id.* ¶ 13. According to RXO, ABC Logistics is an "independent, federally authorized, Contract Carrier that agreed to complete deliveries arranged by RXO." *Id.* ¶ 14.

RXO and ABC Logistics entered into a DSA on June 21, 2018. *Id.* ¶ 15, Ex. A. The DSA was signed by plaintiff Maynor Mejia Lopez, indicating that he is the "Business Owner" of ABC Logistics. *Id.* ¶ 16, Ex. A. The DSA is a "written contract for the safe efficient pickup, transportation, delivery, and installation of freight." *Id.* ¶¶ 17, 19. The DSA warrants that RXO and ABC Logistics are "independent, established businesses, and vests ABC with 'sole control over the manner and means of performing' Delivery Services." *Id.* ¶ 21, Ex. A ¶ 4.1.

Upon information and belief, ABC Logistics employed workers in connection with providing delivery services under the DSA and made all decisions about how Mejia Lopez and each of ABC Logistics' workers were paid "in connection with any services that [Mejia Lopez] or ABC Logistics' workers performed in the course of their employment with ABC [Logistics]." *Id.* ¶¶ 27-28. Upon information and belief, ABC Logistics set the terms and conditions of its workers' employment and supervised its workers when they were completing deliveries "tendered by RXO [] and accepted by ABC [Logistics]." *Id.* ¶¶ 29-30. "Pursuant to the DSA, ABC [Logistics] was able to, and did, determine which of its workers would complete deliveries." *Id.* ¶ 31. The DSA obligates ABC Logistics "to comply with all other local, state, and federal laws, regulations, and requirements applicable to its employees or affecting their compensation or conditions of employment applicable to the Contract Carrier or the performance of its services" under the DSA. *Id.* ¶ 22, Ex. A ¶ 4.4(a).

Under the terms of the DSA, RXO is obligated to pay ABC Logistics for the delivery services it provides. *Id.* ¶¶ 20, 25. The DSA also contains an indemnification provision that states:

> Contract Carrier [ABC Logistics] shall at all times (both during and after the term hereof) defend, indemnify and hold harmless [RXO] Last Mile, its customers, agents, employees, and affiliates against and from any and all settlements, losses, damages, costs, counsel fees and all other expenses relating to or arising from any and all claims (whether or not groundless) of every nature or character (including, but without limitation, claims for personal injury, death and damage to property) asserted against [RXO] Last Mile (a) by Contract Carrier or any agent or employee of Contract Carrier; (b) by any other person or entity whose actions or claims arise out of services performed or are in connection with this agreement; or (c) by any other person or entity which alleges acts or omissions related to or arising out of services performed in connection with this agreement. [RXO] Last Mile reserves the right to offset against payment due to Contract Carrier amounts for claims [RXO] Last Mile reasonably believes are due under this section. In the event such claims or losses exceed the monies available for offsets to payments, Contract Carrier authorizes [RXO] Last Mile to use the fund created under section 6 to pay such claims or losses.

*Id.* Ex. A ¶ 15.

Plaintiff Mejia Lopez brought a proposed class action against RXO alleging that RXO denied plaintiff and other delivery drivers the benefits and protections required under the California Labor Code and other state laws[3] by classifying and treating the drivers as independent contractors rather than employees. Dkt. No. 43 ¶¶ 1-3, 26. Plaintiff further alleges that the DSAs are "pre-printed contracts of adhesion [] drafted exclusively by [RXO] and/or on behalf of its agents" and that RXO requires each Contract Carrier create their own "corporation" or "limited liability company." *Id.* ¶¶ 16, 18. Plaintiff alleges that "these business entities are nothing more than fictitious business names for the Contract Carrier themselves and serve no purpose other than to perpetuate and shield [RXO's] scheme of mischaracterizing its employees as independent contractors." *Id.* ¶ 18. Following the commencement of this lawsuit, RXO requested that ABC Logistics "honor its contractual obligation to defend and indemnify RXO [] in connection with Plaintiff's lawsuit." Third Party Compl. ¶ 32. ABC Logistics has not responded to this letter request for indemnification.

---

[3] Specifically, plaintiffs allege failure to pay minimum wage, failure to pay overtime compensation, failure to reimburse employment expenses, unlawful deductions from wages, failure to provide meal periods, failure to authorize and permit rest periods, failure to furnish accurate wage statements, and waiting time penalties under the California Labor Code, IWC Wage Order No. 9, and the Minimum Wage Order; violations of the California Unfair Competition Act; and violations of the Private Attorneys General Act of 2004.

*Id.* ¶ 33.

RXO claims that ABC Logistics has breached its duty to defend and indemnify, and requests the following: (1) a judgment of indemnity whereby ABC Logistics is required to indemnify RXO the total amount of any judgment or settlement paid by RXO as a result of Mejia Lopez's lawsuit, along with RXO's attorneys' fees, expenses, and costs incurred in defending Mejia Lopez's complaint and prosecuting the third-party complaint; (2) a declaration that ABC Logistics is required to advance RXO's fees and expenses related to this action; and (3) an award of attorneys' fees and costs incurred by RXO in its defense of Mejia Lopez's complaint and/or prosecution of the third-party complaint. *Id.* ¶ 40.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher*, 828 F.2d at 561. However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953,

959 (9th Cir. 2013).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citations omitted).

## DISCUSSION[4]

Plaintiff argues that RXO's "attempt to hold Mr. Lopez personally responsible and even bringing in the third-party LLC constitutes an unlawful abdication of responsibility for its alleged violations of the Wage Order and Labor Code." *Id.* at 10.  Plaintiff asserts that there is no right to contribution or indemnification for employers under California law and that such attempts violate California's public policy. *Id.*  Plaintiff contends that the validity of RXO's third-party complaint can and should be determined as a matter of law on the pleadings and that the Court need not first determine whether plaintiff is an employee or independent contractor. *See* Dkt. No. 68 at 13.  RXO contends that plaintiff's motion rests "exclusively on Plaintiff's untested, unproven allegation that he was RXO's employee" and that plaintiff's position that RXO is effectively suing him for indemnification by filing a third-party complaint against ABC Logistics is "not legally sound." Dkt. No. 65 at 7.  RXO further contends that plaintiff's motion "relies on assumptions about multiple factual findings that cannot be resolved or determined at the motion to dismiss stage." *Id.* at 14.

In support of his assertion that there is no right to contribution or indemnification for employers under California law, plaintiff points the Court to numerous decisions from courts around the country finding that indemnification provisions in cases with similar facts to the present case were unenforceable as a matter of public policy under the Fair Labor Standards Act ("FLSA") and

---

[4] In the motion, plaintiff contends that Rule 14 does not permit joinder because the purported claim against ABC Logistics is not based upon or derivative of plaintiff's original claims against RXO.  Dkt. No. 63 at 7.  The Court already granted RXO leave to file the third-party complaint and does not find it necessary to reach the arguments made under Rule 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

other state laws.  Some of these cases addressed the public policy arguments prior to resolving the merits of whether the workers were employees or independent contractors.  The Court finds these cases persuasive and follows them here to conclude that the third-party complaint against ABC Logistics should be dismissed on the pleadings as contrary to public policy.  It is undisputed that California wage and hour laws are more protective of workers than federal law.  *See, e.g.*, *Guerrero v. Superior Court*, 213 Cal. App. 4th 912, 945 (2013) ("[i]t is well established that states may adopt wage and hour laws that are *more protective* of workers than the FLSA, and California has done so") (emphasis in original).  The Court thus finds it appropriate to apply the body of case law finding contractual indemnification agreements contrary to public policy under the FLSA and other state laws to this case.  The Court reviews this case law below.

In *Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182 (E.D. Cal. 2017), the plaintiffs worked for Chevron as well/drill site managers and alleged they were intentionally misclassified as independent contractors and denied overtime wages pursuant to the FLSA.  *Id.* at 1185.  They were required to receive their pay through an LLC or other corporate entity and created corporate entities to continue to work for Chevron through a company Chevron contracted with called Cenergy.  *Id.*  Plaintiffs were the only workers of their respective corporate entities.  *See id.* at 1189.  The agreements between the corporate entities and Cenergy included indemnification provisions, and signing the agreements was a condition of working for Chevron through Cenergy. *Id.* at 1185.  Plaintiffs filed suit seeking a declaration under the Declaratory Judgment Act that the indemnification clauses in the agreements were unenforceable as contrary to public policy under the FLSA.  *Id.* at 1191.  Cenergy moved to dismiss, arguing in part that the plaintiffs' claim was not ripe because the plaintiffs' theory was dependent on the applicability of the FLSA to the underlying suit.  *Id.*  Plaintiffs responded that even if Chevron prevailed in proving plaintiffs were not employees under the FLSA, public policy would nonetheless be violated if Chevron, through Cenergy and the agreements with plaintiffs' corporations, was able to shift its attorneys' fees stemming from the FLSA litigation to plaintiffs.  *Id.* at 1192.  The court acknowledged a split in authority among district courts but noted that at least two district courts had concluded that FLSA public policy forecloses indemnity provisions that shift attorneys' fees for FLSA suits onto the

workers who file those suits, regardless of the outcome of the case on the merits.  *Id.* at 1194.  The court noted that the agreements' indemnity clauses attempted to bind the plaintiffs' corporate entities, not the individual plaintiffs, but found that a loss to the corporate entities due to indemnity may result in a loss to the plaintiffs' capital investment in their respective entities, or pass through to the plaintiffs as individuals if the entities failed, and thus attorneys' fees from the FLSA litigation could at least in part be shifted onto the workers who filed suit.  *Id.*  The court held that for purposes of pleading, this established ripeness.  *Id.*  The Court finds this case persuasive.  Although Mejia Lopez is allegedly not the only worker of ABC Logistics, a loss to ABC Logistics may result in a loss to plaintiff, its founding and managing member, such that the same public policy concerns outlined by the court in *Cummings* are implicated here.

*Williams v. TopHat Logistical Solutions, LLC*, No. 23 C 1573, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023) is also instructive.  There, delivery drivers filed a class action complaint against delivery services corporations, alleging they were misclassified as independent contractors in violation of the FLSA and alleging violations of Iowa, Nebraska, and Illinois state law.  *Id.* at *1. The defendants filed a third-party complaint against three independent companies owned solely by the delivery drivers.  *Id.*  The Court held that indemnity provisions in the contracts between the drivers and the services corporations were unenforceable as violative of FLSA public policy and public policy of the state laws at issue.  *Id.* at *3-4.  The Court noted that a similar argument as that made by the defendants—that common carrier agreements between the services corporations and the independent companies required the companies to indemnify the corporations from any costs incurred as a result of the lawsuit—had made their rounds in many circuits and "most courts have looked upon it unfavorably due to the public policy concerns it raises."  *Id.* at *2 (listing cases).  The court agreed with the "myriad courts who have refused indemnity claims in FLSA misclassification cases on public policy grounds" that "the public policies underlying the FLSA are implicated when FLSA claims are filed, meaning that indemnity counterclaims are unenforceable as violating FLSA public policy even if the plaintiffs are ultimately determined to be independent contractors."  *Id.* at *3.  This case involved a motion to dismiss and facts similar to the present case, and the Court agrees with the reasoning it sets forth.

*Fernandez v. Kinray, Inc.*, No. 1:13–cv–04938–LDH–SMG, 2014 U.S. Dist. LEXIS 17954 (E.D.N.Y. Feb. 5, 2014) is also persuasive.  In this putative FLSA collective action and New York Labor Law ("NYLL") class action, delivery driver plaintiffs alleged they were misclassified as independent contractors, resulting in wage violations.  *Id.* at *5-6.  The defendant asserted a counterclaim against some of the plaintiffs, asserting they signed an "Independent Contractor Agreement" in which they agreed to indemnify the defendant against claims, suits, or damages, including legal fees.  *Id.* at *6-7.  The court held the counterclaim failed to state a claim upon which relief could be granted because the defendant's claim for indemnification did not fall within the scope of the contractual indemnification provision.  *Id.* at *33.  The court also held that a contrary interpretation of the indemnification provision would contravene the remedial purposes of the FLSA and NYLL, "since requiring plaintiffs to indemnify defendants if they lose would contravene the FLSA and NYLL's clear intent to protect plaintiffs' ability to bring suit."  *Id.* at *25, 33-34.  The defendant argued that it was premature to dismiss the counterclaim since the court had not yet determined whether plaintiffs were employees such that the FLSA applies.  *Id.* at *27-28.  The court disagreed, noting that "[b]y enacting provisions for attorneys' fees for prevailing plaintiffs but not prevailing defendants, the drafters of the FLSA and NYLL made a clear policy choice intended to encourage citizens to bring wage and hour claims."  *Id.* at *29, 31.  Further, the "policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims."  *Id.* at *30-31.  The court agreed with the plaintiffs that the defendant should not be able to use the indemnification provision as an "end run" around this scheme because "[r]equiring plaintiffs to indemnify defendants for the costs of litigating an unsuccessful FLSA claim would deter plaintiffs from bringing suit in the first place."  *Id.* at *31-32.

Plaintiff also cites to *Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.*, 99 F. Supp. 2d 219 (D. Conn. 2000).  There, employees and their union sued their employer alleging FLSA and Connecticut state law overtime violations.  *Id.* at 220.  The employer counterclaimed against the union for indemnification pursuant to a collective bargaining agreement.  *Id.*  In granting the plaintiffs' motion to dismiss the counterclaim, the court held that the indemnification clause in

United States District Court
Northern District of California

the union's collective bargaining agreement violated public policy embodied in the FLSA and was therefore void. *Id.* at 221. The court reasoned that enforcing the indemnification clause would mean employers would have little reason to be concerned about whether their labor agreements comply with FLSA requirements because if found to violate these requirements, employers could be totally compensated. *Id.* The court also reasoned that the union would utilize funds collected as dues from the plaintiffs to satisfy the judgments, making the individual employees, who the FLSA was designed to protect, pay for the wrongful acts of the defendant. *Id.* As defendants point out, this case involves important factual differences. However, it does highlight the same underlying public policy concerns at the dismissal stage as the above-referenced cases.

The cases RXO affirmatively cites in support of its argument that plaintiff's employment status has to be resolved before the public policy arguments can be reached fall short. *Williams* declined to follow *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188 (D.D.C. 2010) and *Dobbins v. Scriptfleet, Inc.*, No. 8:11-cv-1923-T-24-AEP, 2012 WL 2282560 (M.D. Fla. June 18, 2012), two short opinions RXO relies on. 2023 WL 8190366 at *3. *Jones v. Henry Indus.*, No. 4:16CV1184 SNLJ, 2017 WL 513038 (E.D. Mo. Feb. 8, 2017) and *Hose v. Henry Indus.*, No. 4:15-CV-01913-JAR, 2017 WL 386565 (E.D. Mo. Jan 27, 2017) both relied on *Spellman* and *Dobbins*. The Court declines to follow *Spellman* and *Dobbins* given the myriad well-reasoned cases that have held to the contrary.[5]

Plaintiff cites two additional cases that are less persuasive given their factual and procedural differences, but that lend additional support to the Court's conclusion. The Court reviews these cases below.

In *Cordova v. FedEx Ground Package Sys.*, 104 F. Supp. 3d 1119 (D. Oregon 2015), delivery driver plaintiffs brought a wage class action against FedEx under Oregon law alleging that FedEx improperly treated them as independent contractors. *Id.* at 1122. FedEx filed third-party complaints against two companies with which it had operating agreements. *Id.* at 1124. Plaintiffs were allegedly employed by these companies to assist them in performing their obligations to

---

[5] RXO also affirmatively cites two cases involving joint employers. *See* Dkt. No. 65 at 17. The Court has reviewed these cases and does not find them persuasive on these facts.

United States District Court
Northern District of California

FedEx.  *Id.*  FedEx alleged that these third-party defendants were responsible for managing the plaintiffs' employment and that pursuant to the operating agreements, the third-party defendants undertook contractual obligations to FedEx including an indemnification obligation.  *Id.*  The third-party defendants moved to dismiss on several grounds, including on the ground that FedEx's third-party claims attempted to shield it from the application of Oregon wage laws, contrary to the public policy of Oregon.  *Id.* at 1126, 1135.  In granting the third-party defendants' motion to dismiss the third-party claims, the court reasoned that the conduct at issue in plaintiffs' claims was FedEx's conduct, so FedEx was seeking indemnification for its own alleged misconduct.  *Id.* at 1133.  The court held that FedEx's third-party claims violated Oregon law and public policy because, assuming plaintiffs were FedEx's employees, FedEx "cannot avoid its liability for unlawful deductions and associated penalties by relying on its contracts" with third-party defendants.  *Id.* at 1136.  An important distinction between *Cordova* and the present case is that in *Cordova*, the court assumed as true that the plaintiffs were employees of FedEx, in part because this had already been determined in similar class action cases against FedEx for what appeared to be almost identically situated drivers.  *See id.* at 1132.  The court noted that if plaintiffs were employees of FedEx, as must be assumed to be true, then the independent contractor agreements which provide the basis for FedEx's third-party claims were invalid.  *Id.*  The Court cannot and does not assume that plaintiff was an employee of RXO at this stage in the case.  However, the court in *Cordova* also highlighted the same underlying public policy concerns as the above-cited cases.

Lastly, in *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 2345129 (N.D. Cal. June 5, 2008), the defendant provided truck delivery services to Home Depot and the plaintiffs were hired by the defendant as delivery truck drivers.  *Id.* at *1.  The plaintiffs alleged that as a condition of their employment, they were forced to form their own business entities, usually LLCs, so they could be classified as independent contractors.  *Id.*  The plaintiffs brought a class action lawsuit alleging the defendant unlawfully classified its drivers as independent contractors and alleging violations of the California Labor Code, California Business and Professions Code, and civil penalties pursuant to Private Attorneys General Act of 2004.  *Id.* at *1-2.  Like in the present case, the third-party complaint sought indemnification from the LLC based on an indemnification

provision in the agreement.  *Id.* at *2.  The court struck the defendant's third-party complaint on the grounds that the third-party claims were not derivative of the claims asserted by the plaintiffs.  *Id.* at *3.  However, as relevant here, the Court stated that it was worth noting that the plaintiffs alleged that they were forced to form LLCs so that the defendant would be able to avoid classifying them as employees.  *Id.* at *3.  Like here, the plaintiffs argued that these LLCs were "nothing more than fictitious business names for the drivers themselves."  *Id.*  The court stated that "[i]t would be anomalous, in light of these allegations, to permit [the defendant], in an effort to deflect liability, to turn around and sue the very LLCs that Plaintiffs claim [the defendant] required Plaintiffs to form in order to secure employment."  *Id.*  Although this case involved a ruling under Rule 14, the same can be said here.[6]

In sum, the Court finds the body of district court case law relied on by plaintiff to be persuasive and applicable to the facts of this case.  Having found no equally persuasive case law to the contrary, the Court finds it appropriate to dismiss the third-party complaint as contrary to public policy embodied in California wage and hour law.

///

_____

[6] The parties also dispute whether the California Labor Code is a one or two-way fee shifting statute.  Plaintiff alleges violations of numerous sections of the California Labor Code.  Section 1194, "[a]ction to recover minimum wage, overtime compensation, interest, attorney's fees, and costs by employee," is a one-way fee shifting provision.  *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1248 (2012).  RXO bases its argument that the California Labor Code is a two-way fee shifting provision on section 218.5 of the Labor Code, which plaintiff does not allege was violated in his complaint.  Section 218.5 covers actions "for nonpayment of wages, fringe benefits, or health and welfare or pension contributions" and is a two-way fee-shifting provision.  *Id.*  Section 218.5 "does not apply to any cause of action for which attorney's fees are recoverable under Section 1194."  Lab. Code § 218.5.  According to plaintiff, most other Labor Code sections have one-way fee shifting.  The Court does not find it necessary to parse out at this stage which alleged Labor Code violations will remain in this case and whether those Labor Code sections are one or two-way fee shifting provisions.

United States District Court
Northern District of California

# CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to dismiss RXO's third-party complaint filed against ABC Logistics.

**IT IS SO ORDERED**.

Dated: April 5, 2024

SUSAN ILLSTON
United States District Judge