Benjamin J. Schnayerson (State Bar No. 257857)
Dahn A. Levine (State Bar No. 321923)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone:  (415) 394-9400
Facsimile:  (415) 394-9401
E-mail:  Ben.Schnayerson@jacksonlewis.com
E-mail:  Dahn.Levine@jacksonlewis.com

Attorneys for Defendant
RXO LAST MILE, INC. (ERRONEOUSLY SUED
HEREIN AS XPO LAST MILE, INC.)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYNOR MEJIA LOPEZ, an individual; individually and on Behalf of All Similarly Situated Individuals,<br><br>    Plaintiff(s),<br><br>    v.<br><br>XPO LAST MILE, INC., A Georgia Corporation, and DOES 1 through 25, Inclusive,<br><br>    Defendants. | Case No. 3:22-CV-08976-SI<br><br>**DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Action Filed:    10/24/2022<br>Trial Date:    None Set<br>Date Removed:    12/19/2022 |

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

**Table of Contents**

Page

I.      INTRODUCTION .................................................................................................9

II.     FACTUAL BACKGROUND ..............................................................................10

    A.      RXO LM's Brokerage Operation ..............................................................10

    B.      Carriers' Operations. ................................................................................13

    C.      RXO LM's California Operation. ..............................................................15

    D.      Daily Operations. .....................................................................................16

    E.      ABC Logistics – Plaintiff's Business........................................................17

III.    PROCEDURAL HISTORY ...............................................................................19

IV.     STANDARD OF REVIEW ................................................................................19

V.      ARGUMENT .....................................................................................................20

    A.      Plaintiff Has Not Established Commonality or Predominance...................20

    B.      Individualized Questions Outweigh those Common to the Employment
        Status Issue...............................................................................................21

    C.      The Substantive Labor Code Claims Involve Many Elements Requiring
        Individualized Inquiry that Cannot Be Resolved with Common Evidence.32

    D.      This Court Will Have to Address Individualized Issues Concerning
        Nonresident Class Members. .....................................................................37

    E.      A Class Action is Not Superior..................................................................38

    F.      Plaintiff's Claims Are Not Typical of the Class. ......................................40

    G.      Plaintiff is Not an Adequate Representative. .............................................42

    H.      The Class is Not Ascertainable. .................................................................42

VI.     CONCLUSION..................................................................................................43

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022)........................................................................................40, 41

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012)....................................................................................37, 38

*Almanzar v. Home Depot U.S.A., Inc.*,
No. 2:20-cv-00699, 2022 U.S. Dist. LEXIS 127724 (E.D. Cal. July 18, 2022)....................37

*Best v. Pac. Elite Nannies, Inc.*,
No. 30-2022-01260217-CU-OE-CJC, 2025 Cal. Super. LEXIS 78032
(Orange Cnty. Aug. 8, 2025)...........................................................................................33

*Bowerman v. Field Asset Servs.*,
242 F. Supp. 3d 910 (N.D. Cal. 2017) .............................................................................26

*Bowerman v. Field Asset Servs.*,
60 F.4th 459 (9th Cir. 2023).................................................................................... *passim*

*Bowerman v. Field Asset Servs., Inc.*,
No. 13-cv-00057-WHO, 2014 U.S. Dist. LEXIS 131998
(N.D. Cal. Sept. 17, 2014)...............................................................................................29

*Brinker Rest. Corp. v. Sup. Ct.*,
53 Cal. 4th 1004 (2012) ..................................................................................................36

*Carlos v. Wal-Mart Assocs., Inc.*,
No. 5:21-cv-00294, 2022 U.S. Dist. LEXIS 231841 (C.D. Cal. Sept. 6, 2022) ....................34

*Casey v. Home Depot*,
No. EDCV 14-2069.........................................................................................................35

*Castillo v. Bank of Am., N.A.*,
980 F.3d 723 (9th Cir. 2020).............................................................................20, 21, 27

*Clarkson v. Alaska Airlines Inc.*,
No. 2:19-cv-00005, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash. Aug. 4,
2020) ...........................................................................................................................42

*Cole v. CRST Van Expedited, Inc.*,
842 F. App'x 162 (9th Cir. 2021) .....................................................................................36

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..........................................................................................................21

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

*Curry v. Equilon Enters., LLC,*
    23 Cal. App. 5th 289 (2018)....................................................................................................24, 31

*Curtis v. Irwin Indus.,*
    913 F.3d 1146 (9th Cir. 2019)...........................................................................................................37

*Dynamex Operations W. v. Superior Court,*
    4 Cal. 5th 903 (2018) ............................................................................................. *passim*

*Espinal v. Bob's Discount Furniture, LLC,*
    Civil Action No. 17-2854 (JMV) (JBC), 2021 U.S. Dist. LEXIS 208306
    (D.N.J. Oct. 28, 2021) ......................................................................................................................43

*Garcia v. Border Transp. Grp., LLC,*
    28 Cal. App. 5th 558 (2018).......................................................................................................22, 23

*Gonzales v. San Gabriel Transit, Inc.,*
    40 Cal. App. 5th 1131 (2019).........................................................................................................22

*Haitayan v. 7-Eleven, Inc.,*
    CV 17-7454 ......................................................................................................................................21

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..........................................................................................................42

*Henderson v. Equilon Enters., LLC,*
    40 Cal. App. 5th 1111 (2019)....................................................................................................24, 31

*Hennighan v. Insphere Ins. Sols., Inc.,*
    38 F. Supp. 3d 1083 (N.D. Cal. 2014) .............................................................................................26

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019)............................................................................................................20

*Jabbari v. Farmer,*
    965 F.3d 1001 (9th Cir. 2020)..........................................................................................................24

*James v. Uber Techs, Inc.,*
    338 F.R.D. 123 (N.D. Cal. 2021) .....................................................................................................29

*Jimenez v. Allstate Ins. Co.,*
    765 F.3d 1161 (9th Cir. 2014)..........................................................................................................20

*Jinks v. Credico (USA) LLC,*
    488 Mass. 691 (2021)........................................................................................................................31

*Johnson v. Goodyear Tire & Rubber Co.,*
    No. CV 15-5745 RGK, 2015 U.S. Dist. LEXIS 174847 (C.D. Cal. Dec. 22,
    2015) ...........................................................................................................................37

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ..............................................................................................20

*Lampe v. Queen of the Valley Med. Ctr.*,
19 Cal. App. 5th 832 (2018) ..................................................................................................37

*Lara v. First Nat'l Ins. Co.*,
25 F.4th 1134 (9th Cir. 2022) .............................................................................................9, 39

*Li v. A Perfect Day Franchise, Inc.*,
No. 5:10-CV-01189-LHK, 2011 U.S. Dist. LEXIS 114821 (N.D. Cal. Oct. 5,
2011) .......................................................................................................................................35

*Ludlow v. Flowers Foods, Inc.*,
No. 18cv1190-JO-JLB, 2022 U.S. Dist. LEXIS 118092 (S.D. Cal. July 5,
2022) ..................................................................................................................................27, 29

*Maharaj v. Hertz Corp.*,
No. 23-cv-04726-JSC, 2026 U.S. Dist. LEXIS 47194 (N.D. Cal. Mar. 6,
2026) ..................................................................................................................................33, 34

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) .....................................................................................................9, 24, 25

*Morales-Garcia v. Higuera Farms, Inc.*,
No. 2:18-cv-05118-SVW-WR, 2021 U.S. Dist. LEXIS 200527 (C.D. Cal.
Oct. 15, 2021) .........................................................................................................................26

*Moreno v. JCT Logistics*,
No. EDCV 17-2489 ....................................................................................................... *passim*

*Narayan v. EGL, Inc.*,
285 F.R.D. 473 (N.D. Cal. 2012) ..........................................................................................22

*Nguyen v. Bank of Am., N.A.*,
No. 23-cv-04999-PCP, 2025 U.S. Dist. LEXIS 127349 (N.D. Cal. July 3,
2025) .......................................................................................................................................42

*Oman v. Delta Air Lines, Inc.*,
9 Cal. 5th 762 (2020) .............................................................................................................38

*Pablo v. ServiceMaster Global Holdings, Inc.*,
No. C 08-03894 SI, 2009 U.S. Dist. LEXIS 79584 (N.D. Cal. Aug. 17, 2009) ...................34

*Padilla v. City of Richmond*,
509 F. Supp. 3d 1168 (N.D. Cal. 2020) ............................................................................21, 29

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ............................................................................................20, 41

5    Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

*Prachasaisoradej v. Ralphs Grocery Co.*,
  42 Cal. 4th 217 (2007) ...............................................................................................35

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
  342 F.R.D. 274 (N.D. Cal. 2022) ................................................................................29

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*,
  48 Cal. 3d 341 (*Borello*)...................................................................................... *passim*

*Salazar v. McDonald's Corp.*,
  No. 14-cv-02096-RS, 2016 U.S. Dist. LEXIS 108764 (N.D. Cal. Aug. 16,
  2016) ...........................................................................................................................26

*Salter v. Quality Carriers*,
  No. CV 20-479-JFW(JPRx), 2021 U.S. Dist. LEXIS 109280 (C.D. Cal. Apr.
  9, 2021) .................................................................................................................25, 27

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 2:17-cv-00035-VAP-KSx, 2020 U.S. Dist. LEXIS 49943 (C.D. Cal.
  Mar. 3, 2020).............................................................................................................24

*Tavares v. Cargill, Inc.*,
  No. 1:18-cv-00792-ADA-SKO, 2023 U.S. Dist. LEXIS 182865 (E.D. Cal.
  Oct. 10, 2023).............................................................................................................20

*Tidewater Marine W., Inc. v. Bradshaw*,
  14 Cal. 4th 557 (1996) ...............................................................................................38

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................................21

*Ubaldi v. SLM Corp.*,
  No. 11-01320 EDL, 2014 U.S. Dist. LEXIS 38587 (N.D. Cal. Mar. 24, 2014) ....................21

*United States v. Johnson*,
  256 F.3d 895 (9th Cir. 2001) (en banc)................................................................28

*Vasquez v. Jan-Pro Franchising Int'l, Inc.*,
  986 F.3d 1106 (9th Cir. 2021).............................................................................28, 29

*Vazquez v. Jan-Pro Franchising Intl.*,
  10 Cal. 5th 944 (2021) ...............................................................................................23

*Vietnam Veterans of Am. v. CIA*,
  288 F.R.D. 192 (N.D. Cal. 2012)...............................................................................43

*Walter v. Leprino Foods Co.*,
  670 F. Supp. 3d 1035 (E.D. Cal. 2023)......................................................................43

Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

*Ward v. United Airlines, Inc.*,
  9 Cal. 5th 732 (2020) ...............................................................................................................38

*Washington v. Joe's Crab Shack*,
  271 F.R.D. 629 (N.D. Cal. 2010) ..............................................................................................41

*White v. Osmose, Inc.*,
  204 F. Supp. 2d 1309 (M.D. Ala. May 13, 2002) ......................................................................42

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001)...............................................................................................39, 40

**Statutes**

Cal. Bus. & Professions Code §§ 17200-17209...................................................................................19

Cal. Lab. Code § 201............................................................................................................................19

Cal. Lab. Code § 202............................................................................................................................19

Cal. Lab. Code § 203............................................................................................................................19

Cal. Lab. Code § 221............................................................................................................................19

Cal. Lab. Code § 223............................................................................................................................19

Cal. Lab. Code § 226............................................................................................................................19

Cal. Lab. Code § 226.3.........................................................................................................................19

Cal. Lab. Code § 226.7.........................................................................................................................19

Cal. Lab. Code § 510......................................................................................................................19, 32

Cal. Lab. Code § 512............................................................................................................................19

Cal. Lab. Code § 1182.11.....................................................................................................................19

Cal. Lab. Code § 1194 .........................................................................................................................19

Cal. Lab.  Code § 2775...................................................................................................... *passim*

Cal. Lab. Code § 2776(a)(1) ................................................................................................................25

Cal. Lab. Code § 2775(b)(1) ................................................................................................................23

Cal. Lab. Code § 2775(b)(1)(C)...........................................................................................................29

Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et. seq.*) ..............................19

Cal. Lab. Labor Code § 2776 ..............................................................................................................23

Case No. 3:22-cv-08976-SI
DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Cal. Lab. Labor Code § 2776's B2B ........................................................................................27

Cal. Lab. Code § 2802 ...............................................................................................................19

**Court Rules**

Federal Rule of Civil Procedure 23 ..................................................................................... *passim*

**Other Authorities**

IWC Wage Order No. 9 ...................................................................................................... *passim*

Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

In opposition to Plaintiff Maynor Mejia Lopez ("Plaintiff" or "Mejia")'s Motion for Class Certification ("Motion"), Defendant RXO Last Mile, Inc. ("RXO LM"), erroneously sued as XPO Last Mile, Inc., states as follows:

## I.    INTRODUCTION

This case is not amenable to class treatment because it is far too complex. The putative class includes business owners and their employees, and the class claims include RXO liability for alleged employment violations. Compounding this complexity, Plaintiff has not offered any evidence of a common policy or practice that results in a Labor Code or Wage Order violation in the class period, which reaches back to 2018.

*First*, Plaintiff's claim is predicated on his assertion that he, and other workers, were misclassified as independent contractors during the class period. To prove misclassification, however, Plaintiff must show how common evidence can resolve five different employment status tests, including the common law *Borello* test, the *Dynamex* introduction of the ABC Test, the Labor Code's later adoption of the ABC Test and related business-to-business exception to the ABC Test, and the joint employment test articulated in *Martinez*. Plaintiff ignores three of these tests, and could not articulate common evidence that would allow this Court to make a class-wide determination of employment status for the entirety of the putative class.

*Second*, even if Plaintiff can establish some evidence that he, or the 34 declarants he picked out of a class of approximately 3,107, were misclassified, Plaintiff has not presented evidence sufficient to resolve liability on a class wide basis. As explained, there are too many individualized issues about employment status and substantive liability to certify the class. There are a litany of elements to consider in connection with the employment status inquiry. And there are numerous elements to prove in connection with substantive liability. If this class were to proceed, this Court would be parsing employment status and substantive liability given the individual circumstances of business owners and their workers who provided delivery services that were arranged by RXO LM. The individualized nature of these inquiries are not amenable to aggregated treatment.

*Third*, if an employment status class is certified, it would be a hollow victory because

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

misclassification itself does not afford the class the substantive relief it seeks through alleged wage violations. Plaintiff cannot carry his burden to show that common evidence will resolve class-wide Labor Code violations for the entirety of the class period. Plaintiff's own testimony about how he treated his workers as W2 employees and paid his employees minimum wage and overtime highlights the point here. Plaintiff's otherwise conclusory and unsupported arguments are not enough to prove that this case should be certified for class treatment.

*Fourth*, Plaintiff himself testified consistently that the executive exemption from overtime applied to him, which calls into question the exempt status of every other Carrier-owner. Indeed, if these putative class members were exempt, they would not be entitled to overtime, meal period or rest break penalties. And this calls into question whether Plaintiff's claims are actually typical of a putative class that includes the very employees whom he paid, supervised, trained, and scheduled, among other things.

*Fifth*, given the unique relationships between the Carrier-owners and the delivery teams they hired (drivers and helpers), the joint employment doctrine becomes important for evaluating the claims of drivers and helpers in the class. Consequently, the employment practices of the 647 Carriers becomes critically important to evaluate substantive liability in this case. Plaintiff has not even acknowledged this aspect of the case, let alone presented evidence about how to resolve it on a class-wide basis.

Plaintiff's Memorandum in Support of the Motion for Class Certification tries to lure this Court into believing this is a straightforward, run-of-the mill, trucking class case. It is not. This is one of the most complex set of legal and factual circumstances in employment law. RXO LM respectfully requests that this Court deny class certification to avoid further, unnecessary, unwieldy litigation, and thereby avoid the problems the parties experienced in *Bowerman* where it took bellwether trials to show that a class like this is not amenable to class treatment.

## II.   FACTUAL BACKGROUND

### A.   RXO LM's Brokerage Operation

RXO LM operates as a federally authorized freight forwarder and broker. Declaration of Fernando Rabel in Support of Opposition to Motion ("Rabel Decl.") at ¶ 4. It offers brokerage

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

services to its clients, generally retailers, to arrange and facilitate last-mile delivery of large footprint goods—such as home furnishings, appliances, and electronics—to consumers. *Id.* Given that RXO LM is and was authorized only to broker freight it is not authorized to, and did not, complete the deliveries that it arranges for its clients. *Id.* at ¶ 5. Instead, RXO LM contracts with independent motor carriers, which are authorized to transport freight, to complete deliveries that RXO LM arranges. *Id.* at ¶ 6.

RXO LM serves its clients by accepting and managing client inventories, and consolidating orders into efficient and profitable delivery routes that are then offered to motor carriers based on their truck capacity and availability. *Id.* at ¶ 8; *see also* Carrier Settlement and Routing Playbook, RXO_0002683–2696, attached as Ex. 21 to Pl.'s Compendium of Evidence.

RXO LM operates a dynamic logistics network in California. During the relevant period, RXO LM operated two types of California facilities: last mile hub ("LMH") and client "Dedicated" facilities. See Declaration of Benjamin J. Schnayerson in Support of Opposition to Motion ("Schnayerson Decl."), Ex. 1: Deposition Transcript of Fernando Rabel, Feb. 12, 2026, ("Rabel Tr.") at 18:7-22. Dedicated facilities served a single client—Best Buy, Costco, or Macy's. Rabel Tr. at 18:23-25. LMH facilities were leased by RXO LM and served multiple clients. *Id.* at 19:1-4. RXO LM operated up to 25 locations during the relevant period, but now operates only three LMH sites and four Dedicated sites in California. Rabel Decl. at ¶ 9; Schnayerson Decl., Ex. 2: RXO LM's Response to Interrogatory No. 4.

The logistics service that RXO LM offers to its clients is complicated. Generally, RXO collects information from its clients about all of the delivery orders that have been placed for delivery. Rabel Decl. at ¶ 8. Using its routing expertise, it compiles efficient and profitable truckloads that can be tendered to carriers for delivery to the clients' customers. *Id.*

A delivery record is generated for each delivery. The delivery record contains details about what good(s) are to be delivered, to whom and at what location. RXO LM then gathers those delivery records to create a delivery manifest—the delivery manifest is a list of all deliveries that are combined into a truck load, identifies the recipients, and the dates and times when the customer should expect a delivery to arrive. Rabel Decl. at ¶ 17. After RXO LM

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

completes this consolidation and routing function, it offers the resulting truckloads to Carriers with which RXO LM has a Delivery Service Agreement ("DSA"). *Id.* at ¶¶ 8, 25.

The DSA governs the contractual relationship between RXO LM and Carriers. The DSA's stated objective is to establish "arrangements to accomplish the safe and efficient pick up, transportation, delivery, and installation of freight." See Pl.'s Compendium of Evidence, Ex. 13: Delivery Service Agreement entered into between ABC Logistics LLC and XPO Last Mile, Inc. ("DSA") at page 2, Objectives.

The DSA also provides that RXO LM will not evaluate a Carrier's performance. DSA at § 3.1. Accordingly, the Carrier agrees to perform delivery services commensurate with RXO LM's client expectations, including providing services at a level that achieves the clients' and their customers' delivery experience expectations. *Id.* at §§ 3.1 ("Service Results"), 11 ("Service Commitment").

In doing so, however, the DSA disclaims RXO LM's control over the Carrier's operation, and structures the relationship so that the Carriers make all of the decisions about how they perform the delivery services they complete, including how they staff and when they offer those delivery services. *Id.* at §§ 4.1, 4.2, 5 ("Contract Carrier's Employees"). Carriers may freely accept or decline any load without penalty and decide which types of deliveries to perform. DSA at § 2 ("Engaged Services"); Rabel Decl. at ¶ 16.

Carriers represent to RXO LM that the relationship between RXO LM and Carrier is "strictly between two independent entities" and does not create an employer-employee relationship. DSA at § 4.1. Hence, Carriers each represent that they have (or will obtain) the vehicles and tools needed to provide delivery services. *Id.* at § 3.3; *see also* Rabel Decl. at ¶¶ 48, 50. They further agree to comply with identification, security, and appearance standards that exist within the industry for in-home delivery. DSA at. § 3.5. Carriers are also responsible for obtaining and maintaining insurance covering their business operations. Rabel Decl. at ¶¶ 53, 55; DSA at §§ 4.4 (workers' compensation), 12 (scheduled insurances).

In exchange for supplying delivery services, RXO LM agrees to pay Carriers for the delivery services they provide. The DSA sets the formula for how a Carrier earns revenue for

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

completing delivery services. Rabel Decl. at ¶¶ 43-44; Pl.'s Compendium of Evidence., Ex. 22: DSA Schedules. Some carriers negotiate unique earning structures that include day rates, stop rates, mileage rates, or a combination. Rabel Tr. at 33:2-6. Importantly, RXO LM paid Carriers for the delivery services they completed under the DSA, it did not compensate individual drivers or helpers who actually performed the delivery service. Rabel Decl. at ¶ 47. RXO LM used a third-party settlement administrator, Openforce, to pay Carriers what was owed each week. *Id.* at ¶ 45; *see also* Pl.'s Compendium of Evidence, Ex. 14: Self-Employment Business Ledger for ABC Logistics, LLC.

Because carriers may substitute workers to complete the deliveries the Carrier accepts, the DSA also requires Carriers to comply with applicable employment laws and to carry workers' compensation and employer's liability insurance covering the delivery teams they employ. DSA at § 4.4. Indeed, the DSA expressly allows, without prior notice to RXO LM, Carriers to "employ or otherwise provide qualified individuals to assist" with deliveries. *Id.* at § 5. To be qualified, the Carrier agrees that individuals performing delivery services must pass background and drug screenings. Rabel Decl. at ¶ 12; *see also* DSA at § 14.

### B.    Carriers' Operations.

RXO LM does business with independently operated, federally authorized motor carriers to complete the deliveries it arranges for its clients. Rabel Decl. at ¶ 10. RXO LM does not help these carriers obtain or maintain their licensing or authority. *Id.*

Each of the carriers is unique in a variety of ways. For example, some carriers were in business long before they contracted with RXO LM, and others started their business shortly before contracting with RXO LM. *Id.* at ¶ 11. Some of the carriers have one truck, and others have multiple trucks. *Id.* Some of the carriers provide services exclusively within California, and others offer services within and outside of the state. Declaration of Stephen G. Bronars in Support of Opposition to Motion, Ex. A ("Bronars Rpt.") at ¶¶ 29, 33-36, 51.

Each Carrier determines the scope and scale of its operations, including how much truck capacity it offers to RXO LM versus other brokers or freight forwarders. Rabel Decl. at ¶ 11. Some Carriers offer only single truck capacity and others offer multiple truck capacity. *Id.* As is

13                    Case No. 3:22-cv-08976-SI

relevant here, the delivery data shows that the majority of deliveries completed by the putative class here are completed by Carriers that have multiple trucks. Bronars Rpt. at ¶¶ 52-53, 58. The delivery data also shows that a significant number of Carriers have grown their businesses during the time that they accepted deliveries arranged by RXO LM. Bronars Rpt. at ¶¶ 48-49.

Because many Carriers operate multiple trucks, they hire and manage multiple drivers and helpers (collectively referred to as "delivery teams"). Rabel Decl. at ¶ 12. RXO LM does not get involved with hiring, training, supervising, or scheduling working days of the delivery teams that Carriers hire. *Id.* at ¶ 13; Rabel Tr. at 151:2–8. RXO LM relies on the Carriers' expertise in providing in-home delivery services and does not train Carriers or their delivery teams on loading out, delivering goods, vehicle operation, product assembly, or customer interaction. Rabel Decl. at ¶14. Each Carrier choses how to compensate those drivers and helpers that work for the Carrier – RXO LM is not involved with compensating delivery teams. *Id.* at ¶ 47.

Some statistics about Carrier operations are useful for perspective. Approximately one–third of the Carriers that started with one truck and appeared in the available delivery data for more than 10 weeks eventually grew to have a larger capacity.[1] Bronars Rpt. at ¶¶ 48-49. Sixty-seven percent of driver days were supplied by Carriers who had a maximum truckload capacity of five or more delivery teams, and an additional 20% of driver days were supplied by Carriers with a maximum capacity of three or four delivery teams. *Id.* at ¶ 57

The available data shows that the "Carrier-owners"—the individuals that operated Carriers and signed a DSA—relied on different numbers of delivery trucks and other employees to supply delivery services to RXO LM. *Id.* at ¶¶ 54-56, 61-63. Moreover, how many trucks the Carriers utilized varied, demonstrating they acted as businesses shifting their capacity based on demand. *Id.* at ¶¶ 32-36, 48-49, 52-53.

Of the primary drivers that appear in the delivery data, approximately one-third (36%)

---

[1] In performing his analysis, Bronars looked mostly at "California Carriers," which he defined as a Carrier that performed at least 20 delivery days during the class period. Four Hundred Forty-Seven of the 950 Carriers in the data met this definition. Bronars Rpt. at ¶ 30. The reason for this designation is because some of the carriers had very few delivery days in California. When referring to percentages and statistics from Bronars' Report in this Opposition, "Carriers" refers to the 447 Carriers that Bronars defines as "California Carriers" unless otherwise stated.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

worked less than 3 days a week. *Id.* at ¶ 54. A plurality (45%) worked between 2.5 and 5 days a week. Only 18% of primary drivers worked five or more days a week on average. *Id.* And at least 43 Carrier-owners never completed a delivery. *Id.* at ¶ 57.

Of the secondary drivers, a plurality (40%) worked for Carriers that had a maximum delivery capacity of ten or more trucks. *Id.* at ¶ 60. An additional 35% of secondary drivers worked for Carriers with maximum delivery capacity of between five to nine trucks. *Id.* at ¶ 68. Less than ten percent of secondary drivers worked for Carriers with a maximum delivery capacity of one or two trucks. *Id.*

**C.     RXO LM's California Operation.**

Operations differed between LMH and Dedicated sites. At Dedicated sites, Carriers understood they were serving one client; at LMH sites, Carriers serviced a variety of RXO LM clients. Rabel Tr. at 43:16-23. Some Carriers assigned their delivery fleets to service Dedicated and LMH operations simultaneously. Rabel Decl. at ¶ 30.

RXO LM clients frequently used its routing and delivery management platforms, but Dedicated clients could (and did) use their own platforms for routing; for those Dedicated clients, RXO LM performed quality control. Rabel Tr. at 57:9-59:4, 63:4-10; Rabel Decl. at ¶ 20. RXO LM also communicated delivery windows to end customers at LMH sites and some Dedicated sites, while other Dedicated clients handled customer outreach themselves. *Id.* at 60:15-61:6.

Carriers that chose to service LMH sites used an RXO mobile app to manage delivery completion. *Id.* at 61:15-22. However, Dedicated clients often had their own platforms or apps that they used. *Id.* at 61:23-62:1.

Carriers who operated out of LMH sites did not have a specific uniform, but they were expected to have a professional appearance. *Id.* at 74:6-14. RXO LM provided access to Carriers so they could purchase attire through a separate company. *Id.* at 74:15-21, 173:12-15. Carriers working out of Dedicated sites were not required to wear a uniform either, but were encouraged to wear clothes that matched the retail clients' color scheme. *Id.* at 74:22-75:4.

For safety reasons, RXO LM required Carriers and their employees to display

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

identification cards. *Id.* at 77:24-78:5. At Dedicated sites, the identification cards displayed the specific client's logo, among other things. *Id.* at 78:7-10. RXO LM employees at Dedicated sites were there to interface with the client, not to supervise Carriers or their employees. Rabel Decl. at ¶ 30.

### D.   Daily Operations.

The delivery process typically began the day before the scheduled delivery, when RXO LM created efficient and profitable truckloads and offered those routes to Carriers. Carriers could accept or reject the routes offered. Rabel Decl. at ¶ 25; Schnayerson Decl., Ex. 3: Deposition of Plaintiff, Mar. 30, 2026 ("Pl. Tr."), at 117:22-118:18. After accepting a truckload for delivery, Carriers decided which of their delivery teams would complete each route and communicated that information to RXO LM so it could maintain complete delivery records. Rabel Decl. at ¶¶ 23-24; Pl. Tr. at 116:22-117:12. The Carrier would also assign one or more "helpers" to accompany the driver and help with moving, placing, and installing the goods that were delivered. *See* Rabel Decl. at ¶ 27. Although RXO LM associated drivers with particular loads, RXO LM does not maintain information that associates a helper with a particular load. *Id.* at ¶¶ 22, 28.

When a Carrier's delivery team arrived in the morning, RXO LM distributed the route manifest and the delivery team loaded the merchandise. Rabel Decl. at ¶¶ 20. The manifest was often distributed via RXO LM's mobile app. *Id.* Delivery teams used the app to communicate information about the deliveries they completed, inform customers of the teams' expected time of arrival, maintain delivery records, and to ensure the customer received the goods. *Id.*; Pl.'s Compendium of Evidence, Ex. 8: RXO Deliver – User Guide: Simple Tips for a Perfect Route.

Although there were no formal meetings, RXO LM communicated with teams about various subjects. Rabel Tr. at 79:4-12. Plaintiff testified that he would often miss or leave the informational sessions early. Pl. Tr. at 157:20-158:7. RXO LM did not require teams to arrive or depart at a specific time; it expected only that teams leave with enough time to reach the first stop within the customer's delivery window. Rabel Decl. at ¶ 29.

After the delivery teams were on the road, RXO LM monitored delivery completions to

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

help facilitate communication with its clients' customers and to help troubleshoot problems encountered by the delivery teams. *Id.* at ¶¶ 34-36. Plaintiff testified that when the day went smoothly, he often had no contact with RXO LM while making deliveries. Pl. Tr. at 165:18-22. After completing their routes, some delivery teams returned to the facility to unload hauled-away items and discard trash. *See id.* at 136:18-137:15.

RXO LM shared performance metrics with Carriers, but did not use them to decide who could continue providing services. Rabel Decl. at ¶ 39. Instead, the metrics helped match work to each Carrier's capabilities. *Id.* at ¶ 41. When there was insufficient work for all Carriers, RXO LM tried to offer first choice of routes to Carriers with the highest customer-service and on-time ratings. *Id.* at ¶ 42.

### E.    ABC Logistics – Plaintiff's Business.

Plaintiff first interacted with RXO LM in 2017, when he worked for his brother's business performing deliveries arranged by RXO LM. Pl. Tr. at 22:5-8. Plaintiff formed his Carrier, ABC Logistics, in June 2018. *Id.* at 31:18-20; Pl.'s Compendium of Evidence, Ex. 61: Declaration of Plaintiff ("Pl. Decl.") at ¶ 5. In addition to performing work for RXO LM, Plaintiff delivered appliances for another logistics provider, DSI. Pl. Tr. at 26:22-27:10.

With the help of an accountant, Plaintiff filed taxes on behalf of ABC Logistics and deducted business expenses, including fuel and maintenance. *Id.* at 47:19-20, 48:17-49:17, 50:7-11. During his relationship with RXO LM, Plaintiff rented or purchased six trucks, with no more than three trucks operating at one time. *Id.* at 52:12-18. Plaintiff's trucks did not display RXO LM's logo. *Id.* at 59:14-16.

In 2019, Plaintiff reported $110,831 in business income. Schnayerson Decl., Ex. 4: Plaintiff's 2019 1040, MEJIA790-802. ABC Logistics reported $769,187 in gross revenue, and Plaintiff claimed deductions for car and truck expenses, contract labor, depreciation, insurance, office expenses, leasing or renting vehicles, taxes and licenses, travel, meals, processing fees, tools, telephones, and uniforms. *Id.*

RXO LM did not prevent ABC Logistics from hiring employees; on one occasion, it suggested Plaintiff consider assigning a different individual to a route because it involved

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

delivering and installing refrigerators. Pl. Tr. at 74:11-13, 75:17-19, 76:5-9, 77:2-7. When Plaintiff received negative survey scores, he coached his employees to improve performance and "make the client happy." *Id.* at 79:4-10. Plaintiff used survey scores to decide which employees to assign to routes. *Id.* at 115:1-9.

ABC Logistics purchased shirts from RXO LM for employees to wear, and Plaintiff deducted that expense on ABC Logistics' taxes. Pl. Tr. at 80:16-82:1. For a period, ABC Logistics also provided employees with company phones for use in performing deliveries. *Id.* at 87:24-88:12.

Although RXO LM provided Plaintiff a script for customer interactions, it did so at Plaintiff's request and as a suggestion, not a mandatory speech. Pl. Tr. at 95:8-97:2. RXO LM also interacted with customers who alleged damage caused by Plaintiff or his employees. *Id.* at 97:19-100:1. When Plaintiff did not pay damage claims, RXO LM maintained a reserve fund to pay such claims. *Id.* at 106:16-107:17.

Although RXO LM suggested ABC Logistics' delivery teams arrive at 5:00 a.m., they regularly arrived around 6:30 a.m. Pl. Tr. at 140:11-16. The work varied depending on the client and product. Macy's wanted delivery teams to roll out a red carpet at end customers' homes. *Id.* at 109:11-17. Amazon deliveries required only dropping off the product at the front of the house. *Id.* at 149:8-150:13. Samsung wanted delivery teams to follow manufacturer instructions for installation. *Id.* at 199:17-25. On routes with more appliances, installation took more time than driving. *Id.* at 169:19-23.

Plaintiff hired at least four employees to work for ABC Logistics and trained them. Pl. Tr. at 62:2-63:22, 66:9-17, 67:1-2. Employees were paid biweekly; although initially paid via 1099s, ABC Logistics paid them as W-2 employees in 2020 or 2021. *Id.* at 67:6-20. Employees received minimum wage and overtime when applicable. *Id.* at 68:18-21, 69:11-12. Employees reported hours to Plaintiff, typically by text message. *Id.* at 68:22-69:2, 69:16-20. RXO LM did not instruct Plaintiff on how much to pay or how to pay his employees. *Id.* at 84:22-85:4. Plaintiff also negotiated with RXO LM for higher service rates. *Id.* at 177:2-178:6, 190:6-18.

Plaintiff encouraged his employees to take meal breaks. Pl. Tr. at 153:19-23.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Plaintiff would take a meal break if he "had the time," but admitted that he and his employee would also "rather just complete the route to be able to get home as soon as possible." *Id.* at 152:23-153:2. RXO LM never told Plaintiff that he and his employee could not take a break. *Id.* at 154:17-22.

## III.    PROCEDURAL HISTORY

On February 13, 2025, Plaintiff filed a Second Amended Complaint on behalf of himself and similarly situated individuals, seeking to hold RXO LM liable for: (1) failure to pay minimum wages (Cal. Labor Code §§ 1182.11, 1194 *et seq.*; IWC Wage Order No. 9; Minimum Wage Order); (2) failure to pay overtime compensation (Cal. Labor Code §§ 510, 1194 *et seq.*; IWC Wage Order No. 9); (3) reimbursement of employment expenses (Cal. Labor Code § 2802); (4) unlawful deductions from wages (Cal. Labor Code §§ 221, 223; IWC Wage Order No. 9); (5) failure to provide meal periods (Cal. Labor Code §§ 226.7, 512; IWC Wage Order No. 9); (6) failure to authorize and permit rest periods (Cal. Labor Code § 226.7; IWC Wage Order No. 9); (7) failure to furnish accurate wage statements (Cal. Labor Code §§ 226, 226.3; IWC Wage Order No. 9); (8) waiting time penalties (Cal. Labor Code §§ 201, 202, 203); (9) violations of the California Unfair Competition Act (Cal. Bus. & Professions Code §§ 17200-17209); and (10) violations of the Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et. seq.*). ECF 79. Plaintiff's claims are based on the theory that RXO LM misclassified Plaintiff and other putative class members as independent contractors. *Id.*

Plaintiff defines the proposed class as follows:

> All individuals who performed delivery services for Defendant XPO Last Mile, Inc. a/k/a RXO Last Mile, Inc. (hereinafter "Defendant" or "XPO"), in the state of California who were classified as independent contractors or as a non-employee and worked as a Contract Carrier, Driver, and/or Helper from April 29, 2018, to the date of trial.

Motion at 2.

This class necessarily includes Carrier-owners alongside the drivers and helpers that those Carrier-owners hired and assigned to perform deliveries arranged by RXO LM.

## IV.    STANDARD OF REVIEW

Plaintiff "bears the burden of demonstrating that the class meets the requirements of

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017). The four requirements of Federal Rule of Civil Procedure 23(a) include: numerosity, commonality, typicality, and adequacy. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). The proposed class action must also satisfy one of the Rule 23(b) options. *Id.* Plaintiff proceeds "under Rule 23(b)(3), which requires that questions of law or fact common to class members must predominate over any questions affecting only individual members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (internal quotation marks omitted). Additionally, "[i]n deciding whether to certify a litigation class, a district court must be concerned with manageability at trial." *Id.*

## V.   ARGUMENT

### A.   Plaintiff Has Not Established Commonality or Predominance.

This Court should decline to certify the class because Plaintiff has not proven there are common questions amenable to class resolution or that any common questions predominate. Given their close relationship, courts often address commonality and predominance together. *See Tavares v. Cargill, Inc.*, No. 1:18-cv-00792-ADA-SKO, 2023 U.S. Dist. LEXIS 182865, at *12 (E.D. Cal. Oct. 10, 2023) (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010)). "The requirement of commonality means that the class members' claims must depend upon a common contention and that the common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Castillo v. Bank of Am., N.A.*, 980 F.3d 723, 728 (9th Cir. 2020) (internal quotation marks omitted). "Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *see also Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims.").

"The focus of the predominance inquiry is whether a proposed class is sufficiently

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

cohesive to warrant adjudication by representation." *Castillo*, 980 F.3d at 730 (cleaned up). In other words, a court must "take a close look at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (internal quotation marks omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important that the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotes omitted).

**B.      Individualized Questions Outweigh those Common to the Employment Status Issue.**

Plaintiff primarily argues class certification turns on the evidence available to support his position that he was misclassified under the ABC Tests articulated in *Dynamex* and later codified in Labor Code § 2775. Plaintiff's claims, however, implicate several other tests related to employment status, and the fact that Plaintiff addresses only the ABC Test is an independent reason why this Court should deny the motion. *See Haitayan v. 7-Eleven, Inc.*, CV 17-7454 DSK (ASx), 2021 U.S. Dist. LEXIS 38619, at *16-17 (C.D. Cal. Feb. 8, 2021) (certification denied because plaintiff did not address the proper misclassification test); *Ubaldi v. SLM Corp.*, No. 11-01320 EDL, 2014 U.S. Dist. LEXIS 38587, at *38-39 (N.D. Cal. Mar. 24, 2014) (certification denied because plaintiff failed to identify and address which laws and elements are at issue). Consequently, Plaintiff has not proven that the different employment tests that may apply to the claims at issue can be proven with common evidence, or that the individualized issues they implicate do not overwhelm the resolution of any common issue.

As pleaded, this case implicates five different tests to determine if a putative class member is an employee. Plaintiff has not even proposed how to address three of the applicable tests, and should be barred from doing so on reply. *See Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) ("As a general rule, courts do not consider arguments raised for the first time on reply.").

The first test is the totality of the circumstances test articulated in *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal. 3d 341 (*Borello*). In *Borello*, the court held that while "the principal test" for employment considers the hiring entity's "right to control the

21                                                   Case No. 3:22-cv-08976-SI

*manner and means of accomplishing the result desired*," *id.* at 350 (cleaned up and collecting cases), it also held that no less than thirteen secondary factors are considered when evaluating employment status, *id.* at 351, 354-55.

Plaintiff has not addressed *Borello*, but RXO LM will do so in its defense to Plaintiff's claim that he and the class were employees entitled to expense reimbursements. This test applies to every business expense reimbursement claim that accrued on or before December 31, 2019. *See, e.g.*, *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019) (holding the *Borello* test applies to Labor Code claims not rooted in the wage orders); *Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 571 (2018) (*Borello* provides the proper standard for non-wage-order claims).

Even if Plaintiff had mentioned the test, several of the *Borello's* secondary factors necessitate individual inquiry.[2] Factors requiring individual analysis include: whether the worker holds themselves out as in a business distinct from the alleged employer; whether the worker has invested in the business by purchasing equipment or materials; whether there is an opportunity for profit or loss based on the worker's managerial skill; whether the worker hires their own employees or helpers; and whether the worker and hiring entity believe they are creating an employer-employee relationship. *Borello*, 48 Cal. 3d at 351, 354. Plaintiff has not proposed a method for resolving any of these issues on a class-wide basis.

A couple non-exhaustive examples show how these factors turn on individual inquiries. *See Narayan v. EGL, Inc.*, 285 F.R.D. 473, 480 (N.D. Cal. 2012) ("[T]he *Borello* factors suggest that the court cannot look only to the details of the relationship as specified between the parties but must also consider the employer's and presumptive employee's situations."). There is no logical way to evaluate each Carrier-owner's opportunity for profit/loss across the class. The delivery data indicates that Carriers were large and small, grew over time, and faded in and out of performing deliveries, but there is no way to explain any of those changes with common evidence. *See* Bronars Rpt. at ¶¶ 48-49, 65. Similarly, while RXO LM intended to create an

---

[2] The arguments RXO LM makes below regarding control addresses the Borello "principal" control inquiry in addition to the ABC Test.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

independent contractor relationship with Carriers, the allegations here suggest at least Plaintiff believed he was in an employer-employee relationship with RXO LM. Pl. Tr. at 128:20-129:10. There is no other evidence that the class universally held any beliefs about the relationship.

The second employment test at issue is the ABC Test articulated in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018). In *Dynamex*, the California Supreme Court held that the hiring entity must show that a) a person providing services to the hiring entity is free from the hiring entity's control and direction in the performance of the work, b) the worker performs work outside of the hiring entity's usual course of business, and c) the worker is customarily engaged in an independent trade, occupation or business of the same nature as that of the work performed for the hiring entity. *Id.* at 957; s*ee also Vazquez v. Jan-Pro Franchising Intl.*, 10 Cal. 5th 944, 952 (2021) (holding *Dynamex* applies retroactively). This test applies to wage-related claims arising out of Wage Order 9 that accrued prior to December 31, 2019. *See Garcia*, 28 Cal. App. 5th at 571-72 & n.12 (limiting *Dynamex* to Wage Order claims, noting retroactivity); Counts 1-2, 4-7 of the Complaint.

The third test, which applies to all Labor Code and Wage Order claims accruing on or after January 1, 2020, is a statutory ABC Test established by Labor Code § 2775. Under the statute, a person providing labor or services is presumptively an employee unless the hiring entity shows:

> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, *both under the contract for the performance of the work and in fact*. (B) The person performs work that is outside the usual course of the hiring entity's business. (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Lab. Code § 2775(b)(1) (emphasis added).

The reason for addressing the *Dynamex* and Labor Code ABC Tests separately is twofold. First, *Dynamex* applies only to Wage Order Claims predating December 31, 2019, but Labor Code § 2775 covers Labor Code and Wage Order claims after January 1, 2020. Thus, there is a temporal and claims limitation under *Dynamex* that does not exist for Labor Code § 2775. Second, Labor Code § 2776 creates an exception to Labor Code § 2775, which is

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

also the fourth test that this Court will be required to evaluate. Under this exception, the statutory ABC Test does not apply when a "bona fide business-to-business contracting relationship" exists ("B2B" exception). The B2B exception is defined by twelve factors, eleven of which apply here. Plaintiff has said nothing about these factors; however, several of the factors necessitate individualized inquiry. *Cf. Bowerman v. Field Asset Servs.*, 60 F.4th 459, 479, n.17 (9th Cir. 2023) ("We do not foreclose the district court from determining, on remand, that [the employer] may not rely on the business-to-business exception as to a particular class member, should the undisputed evidence as to that class member so warrant.").

Finally, the joint employment test articulated in *Martinez v. Combs*, 49 Cal. 4th 35 (2010), will be used to evaluate some of the driver and helper claims because at least some were employed by the Carriers. *See Bowerman*, 60 F.4th at 473-74; *Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 1125-30 (2019); *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289, 314 (2018). This circumstance also impacts the burden of proof—absent a presumption of employment called for by the ABC Test, the class will be required to establish liability. *Curry*, 23 Cal. App. 5th at 314 (discussing rationale).

Each of the five tests requires individualized proof. This issue, which relates to variations in law, often arises in class cases where different states' laws might apply. *See, e.g.*, *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020). Where this unique phenomenon occurs, courts have held that "[r]esolving disparate claims with different elements and requirements would be unwieldy at best." *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KSx, 2020 U.S. Dist. LEXIS 49943, at *35 (C.D. Cal. Mar. 3, 2020). The logic is even more profound here where the parties will need to present evidence regarding five employment tests.

Plaintiff's circumstances show why this issue is important. Plaintiff admitted he worked as a secondary driver and helper for his brother's business. Pl. Tr. at 21:16-22:4. Plaintiff *also* owned and operated ABC Logistics, which hired and supervised up to six trucks. Bronars Rpt. at ¶ 41. Plaintiff himself provided services roughly from 2017 to 2022. Pl. Tr. at 22:5-8, 44:15-17. Thus, Plaintiff's work implicates all five of the employment status tests; yet, he did not

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

address how to certify a class under three of the applicable tests.[3] Although conceivable Plaintiff could satisfy all five tests, it is inconceivable (and unproven) that he can present evidence that resolves all of the numerous legal issues for a class of Carrier-owners and the delivery professionals *they* hired.

Plaintiff's Misplaced Reliance on Control. Plaintiff's argument is *that* none of this matters because he can demonstrate RXO LM exercised sufficient control over the entire class to make them all employees. Mot. at 27-28. The law does not support the proposition. *Borello* examines the "right to control" the "manner and means of accomplishing the result desired." 48 Cal. 3d at 350. *Dynamex* and Labor Code § 2775 examine "control and direction . . . in the performance of the work." 4 Cal. 5th at 955. So does the B2B exception. Cal. Labor Code § 2776(a)(1). *Martinez* mashes up all of the tests, but most importantly, it does not create an affirmative defense, unlike the other tests. 49 Cal. 4th at 64. Plaintiffs have not addressed, no less cited authority, to suggest that these five tests can be reduced to a single control test that can be resolved with common evidence. None of the evidence Plaintiff cites establishes the absolute and ubiquitous control required to overcome the differences in these tests. Even more importantly, none of the Carriers' delivery teams (also part of the proposed class) signed a DSA, which makes everything more problematic.

Taking all of this into consideration leads to one conclusion. The DSA cannot establish class-wide control. "While any written contract *is a necessary starting point*, the rights spelled out in a contract may not be conclusive if other evidence demonstrates a practical allocation of rights at odds with the written terms." *Salter v. Quality Carriers*, No. CV 20-479-JFW(JPRx), 2021 U.S. Dist. LEXIS 109280, at *26 (C.D. Cal. Apr. 9, 2021) (cleaned up and emphasis added). And, if the DSA showed "some uniform control" it is not enough to *show* "that common issues predominate." *Id.* at *24.

Here, the DSA disclaims control, which makes it necessary to consider the factual circumstances of every one of the 3,107 putative class members. DSA at Page 2, Objectives;

---

[3] Plaintiff's example also raises failures of proof on manageability and superiority. *See supra* § V(E).

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

DSA at §§ 3.1, 4.1, 4.2. The DSA also includes a mutual termination clause, which suggests an independent contractor relationship. *See Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1105 (N.D. Cal. 2014) ("A mutual termination clause is evidence of an independent-contractor relationship."). Furthermore, Plaintiff's testimony that he directly hired, supervised, and set the terms and conditions of his delivery teams' employment shows that RXO LM did not exercise the type or degree of control necessary to establish an employment relationship. Pl. Tr. at 62:2-7, 67:6-68:24; *see Bowerman v. Field Asset Servs.*, 242 F. Supp. 3d 910, 945 (N.D. Cal. 2017) (recognizing ability to hire workers "suggests more of an independent contractor relationship").

Plaintiff relies on other circumstances to show control, such as the Carrier's contractual obligation to fund an escrow for damages, to background those entering customer homes, to maintain legal authority to transport goods, to maintain acceptable insurance levels, to complete accepted deliveries according to standard, to use a mobile application to coordinate with the logistics provider, and others. *See* Mot. at 15-16. These are all characteristic of traditional business relationships and do not establish control over the work itself.

Moreover, Plaintiff's tax deductions for business expenses indicates he is an independent contractor. *See Hennighan*, 38 F. Supp. 3d at 1105 (deducting costs on taxes and identifying as self employed makes it "likely" plaintiff is an independent contractor). Moreover, to the extent Plaintiffs rely on performance expectations and efforts to communicate performance metrics, this does not move the needle. *See* Mot. at 16-17. RXO LM did not evaluate performance, Rabel Decl. at ¶¶ 40-42, and any focus on quality control or minimum performance standards are not indicia of control, *see, e.g.*, *Morales-Garcia v. Higuera Farms, Inc.*, No. 2:18-cv-05118-SVW-WR, 2021 U.S. Dist. LEXIS 200527, at *31-32 (C.D. Cal. Oct. 15, 2021) (enforcing quality standards not control); *Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2016 U.S. Dist. LEXIS 108764, at *31-33 (N.D. Cal. Aug. 16, 2016) (optional brand resources, training materials, and performance metrics not indicia of control).

Perhaps more importantly, operations differed between Dedicated and LM Hubs. Different clients had different expectations and the work varied depending on which client's

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

products a delivery team was delivering. See, e.g., Pl. Tr. at 109:7-17, 149:8-150:13, 199:17-25. Courts recognize that "there will be significant differences from terminal to terminal, customer to customer, and Class member to Class member, and the Court will be forced to engage in individual inquiries to resolve the common question of misclassification."[4] Salter, 2021 U.S. Dist. LEXIS 109280, at *29. The number of delivery teams a Carrier provided fluctuated, calling into question the level of control that RXO LM could, as one entity, exercise over the hiring process. See Bronars Rpt. at ¶¶ 70-71.

Plaintiff's final attempt to demonstrate some uniformity of control was to present declarations from a handful of cherry-picked individuals. This is not "representative evidence"; it is a feeble attempt to glue together a class broken by differences. See Castillo, 980 F.3d at 733 (certification denied where the case raised "complicated questions" of who was subject to allegedly uniform conduct, and whether those exposed were legally harmed). Plaintiff has done nothing to establish the kind of universal policy or practice that would supply the necessary level of control to convert 647 Carrier-owners and 2,460 secondary drivers into employees. It is unclear from the data how many helpers Plaintiff seeks to convert into employees of RXO LM. Thus, the only way to analyze whether RXO LM maintained sufficient control is to analyze how RXO LM interacted with every putative class member. Plaintiff has not proposed another legally defensible or feasible alternative.

Plaintiff's Offensive Use of the B-Prong. Plaintiff also tries to skirt these problems by weaponizing the B-prong (which necessarily applies only to claims governed by Dynamex or Labor Code § 2775) and asserting it can be satisfied by examining only RXO LM's business operations. Mot. at 28-29.

First, Plaintiff has not attempted to explain how resolving B-Prong minimizes the issues here. Critically, Plaintiff does not address the impact of Labor Code § 2776's B2B exception. Functionally, the B2B exception supplants the statutory B-Prong test with the Borello test when

---

[4] Plaintiff relies on *Ludlow v. Flowers Foods, Inc.*, No. 18cv1190-JO-JLB, 2022 U.S. Dist. LEXIS 118092, at *21 (S.D. Cal. July 5, 2022), to support the argument he met his burden on the A-prong. But, *Ludlow* court ruled on the B-prong and did not address how differences among the workers creates a class problem due to the *in fact* portion of the A-prong. *See Id.* Thus, *Salter* is more persuasive.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

12 additional factors are considered. This tanks the argument. Plaintiff did not address how this impacts the class analysis.

Second, Plaintiff's interpretation of the B-Prong and the evidence required to prove it is incorrect, based on Ninth Circuit dicta that suggested the B-Prong asks whether the service rendered by the putative employee is integral to or part of the hiring entity's business. *Vasquez v. Jan-Pro Franchising Int'l, Inc.,* 986 F.3d 1106, 1125-26 (9th Cir. 2021). That is not what the statute says. The Ninth Circuit's interpretation is inconsistent with the plain language of the statute and imposes criteria beyond that suggested by Labor Code 2775, and Dynamex. This portion of the Vasquez opinion was unnecessary to the holding and, because it contravenes the statutory language without explanation, constitutes nonbinding dicta. See *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc).

The B-Prong asks if a worker "performs work" that does not involve the hiring entity, that is, whether the worker performs "outside the usual course of the hiring entities' business." This interpretation of Labor Code § 2775, which has not been addressed or rejected by California courts, honors the statutory language and examines whether the alleged employee does work for someone other than the hiring entity. Dynamex supports this interpretation because it explains that B-Prong asks whether an individual can be "viewed as providing services to the business in a role comparable to that of an employee, rather than in a role comparable to that of a traditional independent contractor" that would perform work for others. 4 Cal. 5th at 959. The worker's activities become the focus of this inquiry.

That is an individualized inquiry implicating not only what work the worker performs for RXO LM, but also whether the worker actually performs outside of the alleged employer's business. This is especially important where, as here, the DSA does not create exclusivity, and Plaintiff himself worked for other logistics businesses during the class period. See DSA at §§ 2, 22; Pl. Tr. at 26:22-28:6. There are entire Carriers where the Carrier-owner did not perform any deliveries, and there is no evidence about what they did when they were not providing delivery services pursuant to the DSA. See Bronars Rpt. at ¶ 57.

Plaintiff has done nothing to show how he can aggregate these disparate experiences,

28

Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

belying his characterization that "[a]ll Drivers perform the same work." Mot. at 29. The cases on which Plaintiff relies to support this proposition are distinguishable. In those cases, class members each signed an agreement with the defendant, making it possible to look solely at common policies and practices and the defendant's description of its business. See *Vasquez*, 986 F.3d at 1118; Ludlow, 2022 U.S. Dist. LEXIS 118092, at *11-12; *Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 289 (N.D. Cal. 2022). In this case, common evidence will not answer the question of whether the Carrier-owners and their delivery teams performed for others or look more like an employee (who works mostly for one employer) or an independent contractor (who provides services within the market for those services).

Plaintiff Does Not Address the C-Prong. Plaintiff's failure to address the C-Prong precludes addressing it on reply. See *Padilla*, 509 F. Supp. 3d at 1180. The C-Prong (and similar factors in Borello, and the B2B exception), which RXO LM will assert to defend against the employment claim, asks whether a worker is "customarily engaged in an independently established trade, occupation or business." See Labor Code § 2775(b)(1)(C). The C-Prong is inherently individualized because it focuses on the factual circumstances of the individual claiming to be an employee. See, e.g., *James v. Uber Techs, Inc.*, 338 F.R.D. 123, 138-39 (N.D. Cal. 2021) (denying class certification on the C-prong); *Bowerman v. Field Asset Servs., Inc.*, No. 13-cv-00057-WHO, 2014 U.S. Dist. LEXIS 131998, at *36 (N.D. Cal. Sept. 17, 2014) (denying certification under *Borello* because some class members "have independent businesses and do not work full time for" defendant and class members' businesses varied in size).

The record in this case reveals quite a bit about the nature and extent of the Carrier-owners' businesses. This information is important not only to show how individualized C-Prong analysis will be, but also helpful for this Court to consider in the context of evaluating employment status under Borello, related inquiries for the B2B exception, and whether joint employment is a common issue given the variety and extent of Carriers' businesses.

As for Plaintiff's business, there is little question he established a going concern. Plaintiff procured a business license, a federal license to operate a motor carrier, and purchased trucks that bore his company name. Pl. Tr. at 46:25-47:11, 51:15-24, 58:12-20. ABC Logistics also

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

provided delivery services for logistics businesses other than RXO LM. *Id*. at 26:20-29:3. In doing so, Plaintiff reported revenues exceeding $700,000. Schnayerson Decl., Ex. 4.

RXO LM also engaged an expert to analyze the *record* here and evaluate the delivery data to better understand the extent to which the Carrier-owners in this case were operating independent businesses. Highlights from the report are compelling: (a) Plaintiff started and grew his business through independent decision making; (b) other carriers also grew their capacity; (c) Carriers operated within and outside California; (d) 74 percent of Carriers operated more than one truck; and (e) 36 percent of all Carrier-owners worked less than 2.5 days per week and 14% worked less than one day a week on the truck capacity they assigned to provide delivery services arranged by RXO LM.   Bronars Rpt. at ¶¶ 46 – 48, 51, 54 and Exhibit 7A. These metrics logically suggest going business concerns. There is no question that C-Prong requires individualized inquiry to evaluate whether Carriers and their workers were involved in independent businesses.

Individualized Inquiry Regarding the Business-to-Business Exception. This Court will have to consider whether the B2B Exception applies for each of the approximately 647 Carrier-owners who signed a DSA. The following factors in this analysis require individualized evidence: (1) freedom from control (as discussed above); (2) for whom and how the contractual service is rendered, and whether the service provider contracts with other businesses; (5) whether the service provider maintains a separate business location; (8) whether the service provider holds itself out to the public as available to provide the services; (9) whether the service provider supplies its own tools and equipment to perform services; and (10) whether rates are negotiated. Indeed, the Ninth Circuit recognized the B2B exception necessitates individual inquiry. See *Bowerman*, 60 F.4th at 479 n.17 (requiring the district court to determine if the B2B exception applies to particular class members).

There is no common evidence on which to evaluate whether this code section applies, and thus whether the ABC Test applies to certain class claims.

Individualized Inquiry On Joint Employment. The ABC Test is limited to the issue of allegedly misclassified independent contractors and does not extend to the joint employment

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

context. *Bowerman*, 60 F.4th at 473-74; *Henderson*, 40 Cal. App. 5th at 1125-30; Curry, 23 Cal. App. 5th at 313. Thus, where a worker is an employee of one entity and seeks to recover from a second entity by proving it is also the worker's employer, the ABC Test does not apply. See *Jinks v. Credico (USA) LLC,* 488 Mass. 691, 703 (2021) ("In short, using the independent-contractor test to answer the joint-employment question would be rather like using a hammer to drive in a screw: it only roughly assists the task because the hammer is designed for a different purpose." (internal quotation marks omitted)). Rather, whether an employment relationship exists between the worker and the second entity is determined by the joint employment standard articulated in Martinez. See *Henderson*, 40 Cal. App. 5th at 1125-30 (explaining the test applies to any indirect employment claim).

Most of the putative class members are the Carriers' delivery teams—individuals hired by the Carriers to satisfy their contractual obligations to RXO LM. Indeed, 67% of all driving days were supplied by Carriers operating five or more trucks. Bronars Rpt. at ¶ 53. Applying a joint employment test to some of this putative class is inescapable, even though Plaintiff never addressed the issue.

Plaintiff's bid to certify fails for yet another reason involving joint employment. Plaintiff must show that the putative class members suffered an injury as a result of RXO LM's actions. See *Moreno v. JCT Logistics*, No. EDCV 17-2489 JGB (KKx), 2019 U.S. Dist. LEXIS 117342, at *41 n.17 (C.D. Cal. May 29, 2019). RXO LM has the right to present evidence showing that putative class members did not suffer any harm because the Carriers complied with their obligations under the Labor Code and wage orders. Consequently, this Court must consider every Carrier's employment practices to rule on the joint employment test.

Plaintiff can certainly testify about how he and his employees were paid, whether he incurred business expenses, whether he did or did not take a break, etc. But he has no first-hand knowledge or other basis to testify about the other Carriers' employment practices. Plaintiff has presented no proof, much less common proof, showing other Carriers did not comply with their employment law obligations.5 The DSA required carriers to comply with all federal and state

---

5 Plaintiffs' declarants do not even identify the Carriers for which they allegedly worked.

31

Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

wage and hour laws. DSA at § 4.4(a). And though it is not RXO LM's burden to affirmatively disprove Plaintiff's case, Plaintiff stated he paid his employees minimum wage and overtime. See Pl. Tr. at 68:18-20, 69:11-12. Plaintiff wants this Court to assume that every Carrier operated identically. But assumptions are not evidence. No common evidence exists to establish that RXO LM is the joint employer with the hundreds of Carriers.

**C.    The Substantive Labor Code Claims Involve Many Elements Requiring Individualized Inquiry that Cannot Be Resolved with Common Evidence.**

In addition to Plaintiff's burden to show how the employment status claims could be resolved on a class-wide basis, Plaintiff must also establish how this Court can evaluate whether the putative class suffered the substantive wage and expense reimbursement violations. Plaintiff has not shown how common evidence will resolve the substantive claims or how the individualized issues arising out of them will not overshadow employment status claim. The court in *Wilson v. The La Jolla Group* said it best: "Class treatment is not appropriate if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the class judgment on common issues." 61 Cal. App. 5th 897, 913 (2021) (cleaned up). A court properly denies class certification if it cannot "identify a common policy or practice requiring overtime or denying meal and rest breaks, which could be proved by common evidence." *Id.* at 912. Plaintiffs do not present common evidence of such a common policy and this Court will have to entertain countless inquiries to resolve liability.

Overtime and minimum wage. "[A] putative employer cannot be liable to an entire class of putative employees for failing to . . . pay them overtime—unless the putative employer in fact failed to do so for each of them." *Bowerman*, 60 F.4th at 479. Plaintiff has not proffered common evidence to establish substantive violations of the overtime and minimum wage requirements. That is because there is none.

To establish overtime liability on a class-wide basis, Plaintiff must show that, at bare minimum, common evidence proves (i) each putative class member worked overtime, (ii) each putative class member was not paid overtime, and (iii) the amount of overtime owed. Labor

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Code §§ 510, 1194; *see also Best v. Pac. Elite Nannies, Inc.*, No. 30-2022-01260217-CU-OE-CJC, 2025 Cal. Super. LEXIS 78032, at *11 (Orange Cnty. Aug. 8, 2025) (setting forth elements of overtime claim). Plaintiff cannot do this; in fact, he did not offer any common evidence to show that any putative class member worked overtime. *See* Mot. at 32. The delivery data shows a large number of putative class members worked less than five days per week. Bronars Rpt. at ¶ 73. This creates a dispositive question: were they even entitled to overtime? Additionally, absent evidence of consistent pay practices, there is no way to determine if any putative class member was shorted overtime. Plaintiff's own testimony suggests at least his delivery teams were paid overtime. Pl. Tr. at 68:18-21, 69:11-12.

Another thorny question arises about whether Plaintiff and other Carrier-owners are subject to the executive exemption. *See* Wage Order 9; *Maharaj v. Hertz Corp.*, No. 23-cv-04726-JSC, 2026 U.S. Dist. LEXIS 47194, at *14 (N.D. Cal. Mar. 6, 2026). The exemption applies to any employee in transportation who meets six requirements – namely if they manage an enterprise (the Carriers), direct the work of two or more employees (delivery teams), have authority to hire and fire (delivery teams), exercise discretion and independent judgment (running their businesses), has the primary duty of completing these tasks (as owner-operators of their transportation business), and draw a sufficient salary. *See id.* at *14-15.

The *Maharaj* court recognized that assessing an individual's primary duties "requires at least some proof as to how an individual class member spends their time," and because the plaintiffs' evidence consisted of only their declarants' estimates of the time they spent performing non-exempt duties, "this question cannot be answered exclusively through a common body of evidence." *Id.* at *19 (internal quotation marks omitted). Likewise, Plaintiff has no way of showing the time spent on exempt or non-exempt duties without hundreds of individualized inquiries involving the Carrier-owners. The delivery data shows that the majority of driving days were supplied by Carriers with a five or more delivery teams, 31 Carriers had a maximum capacity of 10 or more trucks, and 80 Carriers had a maximum capacity of 6 or more trucks. Bronars Rpt. at ¶¶ 53, 75, Ex. 17. These statistics suggest that (a) at least some Carrier-owners supervised more than two employees (each truck represents at least 2 workers); and (b) they

33                                                Case No. 3:22-cv-08976-SI

likely contributed significant amounts of time on exempt, business managerial duties. *See id.* at ¶ 76.

As for minimum wage liability, under Plaintiff's piece-rate theory, "Plaintiff must show that Defendants paid drivers on a piece-rate basis that did not compensate for nonproductive time." *Moreno*, 2019 U.S. Dist. LEXIS 117342, at *38. Plaintiff's problem is that RXO LM was not responsible for and did not pay the Carriers' delivery teams, and there is no common evidence showing the Carrier's pay policies for the court to determine if there was liability. *Id.* at *40 ("The Court would need to conduct individualized inquiries into how they were paid by the carriers who hired them."). What's more, Plaintiff himself admitted that he paid his employees the minimum wage. Pl. Tr. at 68:18-21.

Because there is no common evidence concerning minimum wage and overtime payments, the parties will necessarily be required to engage in individualized inquiries involving each Carriers' pay practices to determine if there was a minimum wage or overtime violation. *See Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08-03894 SI, 2009 U.S. Dist. LEXIS 79584, at *16-17 (N.D. Cal. Aug. 17, 2009) (denying certification because overtime liability turned on individualized inquiries).

Reimbursement of business expenses. To establish liability for unreimbursed business expenses, a putative class member must establish they (1) incurred expenses as an employee, (2) the "expenses were reasonably necessary to the discharge of [their] duties," and (3) were not reimbursed by RXO LM. *Carlos v. Wal-Mart Assocs., Inc.*, No. 5:21-cv-00294, 2022 U.S. Dist. LEXIS 231841, at *12 (C.D. Cal. Sept. 6, 2022). "Necessity is generally a question of fact which requires an inquiry in each and every instance as to what was reasonable under the circumstances." *Id.* (internal quotation marks omitted). RXO LM "cannot be liable to an entire class of putative employees for failing to reimburse their business expenses . . . unless [it] in fact failed to do so for each of them." *Bowerman*, 60 F.4th at 479.

Plaintiff claims that there are common expenses across the "Self-Employment Business Ledgers" and "Administrative Services Addenda." Mot. at 30. The ledgers were issued by Openforce, a third-party settlement administrator. Both the ledgers and the service addenda were

34                                    Case No. 3:22-cv-08976-SI

issued only to Carrier-Owners. Plaintiff has not offered any evidence that expenses were universally incurred by the putative class at large, or how they could be proven by common evidence. Not a single one of Plaintiff's declarants identified with clarity the expenses they incurred. Vague, individual assertions that they incurred costs for uniforms or damaged items does not constitute common evidence.[6] *See Casey v. Home Depot*, No. EDCV 14-2069 JGB (SPx), 2016 U.S. Dist. LEXIS 192441, at *84-86 (C.D. Cal. Sept. 15, 2016) (denying certification of expense reimbursement claim because individualized evidence needed to determine whether each putative class member has a viable claim); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 U.S. Dist. LEXIS 114821, at *42-43 (N.D. Cal. Oct. 5, 2011) (finding common issues did not predominate on business expense claim because class members claimed different expenses and inquiry into whether expenses were necessary "would likely be fact intensive").

Unlawful deductions. Plaintiff's unlawful deduction claim will ask whether RXO LM "subtracts, withholds, sets off, or requires the employee to return, a portion of the *compensation* offered, promised, or paid as offered or promised, so that the employee, having performed the labor, actually receives or retains less than the *paid, offered, or promised compensation*," [*Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 228 (2007)], or whether a wage was reduced for any number of reasons articulated in Wage Order No. 9-2001 (including, for example, "cash shortage, breakage, or loss of equipment"). Again, Plaintiff points to no deduction that was universally incurred by the putative class. *See* Mot. at 30-31. Plaintiff even admitted his company did not pass on any deductions or withhold wages from his employees. *See* Pl. Tr. at 87:24-88:8.

The logic of *Moreno* applies here. Any deductions were incurred by the Carriers themselves. RXO LM had no contractual relationship with any secondary driver or helper, and thus each Carriers' policies and practices on deductions is necessary to determine if any

---

[6] Additionally, RXO LM has a defense that requires individualized evidence. To the extent Plaintiff seeks reimbursement for expenses incurred in purchasing hand tools, this Court necessarily must consider individualized evidence to determine if a putative class member earned at least two times the minimum wage. *See* Wage Order 9-2001(9)(B). Accordingly, common issues do not predominate for the reimbursement of business expenses.

35                                    Case No. 3:22-cv-08976-SI

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

deductions were incurred. *See Moreno*, 2019 U.S. Dist. LEXIS 117342, at *40-41 (finding class certification inappropriate for claims raised on behalf of employees hired by carriers). Additionally, Plaintiff and his declarants admit that they suffered deductions for damaged items, and they have no way to establish through common evidence which of these deductions were for "breakage[s]" and which were not. Plaintiff presented no common evidence for this Court to evaluate this claim.

<u>Failure to provide meal and rest periods</u>. "[A]n employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1034 (2012). Here, the only common evidence is that RXO LM required its contractors to comply with the California Labor Code. DSA at § 4.4(a). RXO LM assigned Carriers routes and provided expectations for when its clients expected deliveries to be performed. But that evidence demonstrates nothing about meal and rest periods.

Plaintiff relies on an absence of evidence—the lack of a policy—as common evidence. Mot. at 31. But as Plaintiff admitted, RXO LM never told him or his employees they could not take breaks, he and his employees sometimes took breaks, and at other times they would forego their breaks to finish their day sooner. Pl. Tr. at 152:23-153:2, 153:19-23, 154:17-22. If a Carrier provided breaks or a premium, then RXO LM cannot be liable. *See Moreno*, 2019 U.S. Dist. LEXIS 117342, at *42-43 (finding no predominance on rest period claims for secondary drivers "because those carriers may have had their own pay policies which remunerated drivers for rest time"). Plaintiff's own evidence shows that individualized inquiries are necessary to determine if RXO LM is liable to each putative class member. *See Cole v. CRST Van Expedited, Inc.*, 842 F. App'x 162, 163 (9th Cir. 2021) (affirming district court's decertification order because, "[b]ased on the deposition testimonies of CRST drivers, the district court properly concluded that individualized inquiries predominated regarding the multitude of reasons that CRST drivers may or may not have taken the entire meal and rest periods afforded under California and provided by CRST").

<u>Wage statement and waiting time penalties</u>. As for Plaintiff and other Carrier-owners, their wage statement and waiting time claims rise and fall with the employment status

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

determination. *Lampe v. Queen of the Valley Med. Ctr.*, 19 Cal. App. 5th 832, 852 (2018) (affirming trial court order denying certification because "there was no basis to certify the wage statement class which was derivative of the other wage claims"); *Johnson v. Goodyear Tire & Rubber Co.*, No. CV 15-5745 RGK (PJWx), 2015 U.S. Dist. LEXIS 174847, at *15 (C.D. Cal. Dec. 22, 2015) ("Having concluded that common issues do not predominate as to [the other wage claims], the Court also finds that common issues do not predominate on the derivative claim alleging deficient wage statements."). As for the secondary drivers and helpers, individualized inquiries are necessary because this Court must determine if each Carrier provided compliant wage statements. If the Carrier provided compliant wage statements, then RXO LM cannot be liable. This cannot be established through common evidence. *See Moreno*, 2019 U.S. Dist. LEXIS 117342, at *42-43. Additionally, there is no common question as it pertains to waiting time penalties, as this claim would only apply to former drivers. *See Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-cv-00699, 2022 U.S. Dist. LEXIS 127724, at *14-15 (E.D. Cal. July 18, 2022). And, again, as it related to the secondary drivers and helpers, this Court will have to determine if each Carrier paid its employees all wages upon termination in order to assess RXO LM's potential liability.[7] *See Moreno*, 2019 U.S. Dist. LEXIS 117342, at *42-43.

Unfair competition. Plaintiff's unfair competition claim is derivative of the others, and because class certification is inappropriate on those, it is also inappropriate for this derivative claim as well. *See Curtis v. Irwin Indus.*, 913 F.3d 1146, 1150 n.3 (9th Cir. 2019); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012). Because common issues do not predominate, this Court should deny class certification.

**D.     This Court Will Have to Address Individualized Issues Concerning Nonresident Class Members.**

The available delivery data shows that of the 950 Carriers that provided delivery services originating in or destined for California locations, only 447 Carriers completed 20 or more

---

[7] Indeed, Plaintiff admitted he paid via W2 for some period, making it likely he had a formal practice on these issues. *See* Pl. Tr. at 67:6-20.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

delivery days in California. Bronars Rpt. at ¶ 30. Indeed, 423 of the 950 Carriers drove for less than six days in California. *Id.* Even some of Plaintiff's declarants worked primarily outside of California during some period of time. *See* Pl.'s Compendium of Evidence, Exs. 35 and 40: Bankston Decl. at ¶ 4, Camacho Decl. at ¶ 4.

The Labor Code and Wage Orders do not apply to out-of-state employees who only episodically perform work in California. *See, e.g.*, *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 776 (2020) (holding that Labor Code "section 226 does not apply to work performed in California during pay periods in which the employee, based outside California, works primarily outside California"); *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996) ("[T]he Legislature may not have intended IWC wage orders to govern out-of-state businesses employing nonresidents, though the nonresident employees enter California temporarily during the course of the workday. Thus, we are not prepared without more thorough briefing of the issues, to hold that IWC wage orders apply to *all* employment in California, and *never* to employment outside California."). Hence, this Court will have to conduct individualized inquiry for every putative class member that has an extraterritorial connection. *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 752 (2020).

In addition to evaluating whether each statute applies extraterritorially, this Court will have to consider each putative class member who was based outside of California individually to determine if they are subject to the California Labor Code. Plaintiff has not proposed any method on how to conduct this inquiry. Is the threshold a certain number of days? What about percentage of days? A combination of the two? Some other combination of factors? What about a Carrier who has both in-state and out-of-state employees? Individualized inquiries are necessary to determine if a driver primarily based outside of California should be considered part of the class.

### E.    A Class Action is Not Superior.

To evaluate superiority under Fed. R. Civ. P. 23(b)(3), four factors are considered: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

the claims in the particular forum; and (d) the likely difficulties in managing a class action.

"A consideration of these factors requires the court to focus on the efficiency and the economy elements of the class action so that cases allowed under subsection (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Id.* at 1192.

///

"If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.*

A trial in this case will be far more difficult and complex than what Plaintiff wants this Court to believe. A jury will have to apply five different legal tests to evaluate the threshold issue whether RXO LM can be held liable to any putative class member. Plaintiff has not explained how this Court could manage such a trial. *See Lara v. First Nat'l Ins. Co.*, 25 F.4th 1134, 1138 (9th Cir. 2022) ("Whether a class action will be manageable is, by far, the most critical concern in determining whether a class action is a superior means of adjudication." (cleaned up)).

But misclassification is only part of the inquiry, as there is no liability without a substantive violation. This Court would have to conduct hundreds of mini trials to determine the individual employment practices of the Carriers who contracted with RXO LM. Such proceedings will be incredibly time-consuming and burdensome for this Court and the jury.

The experience of the *Bowerman* court is instructive. In *Bowerman*, the plaintiffs were employees or contractors who worked for third-party vendors that contracted with a broker. 60 F.4th at 464. The plaintiffs alleged claims for misclassification, overtime violations, and failure to reimburse business-related expenses. *Id.* The district court granted class certification as well as summary judgment on the issue of misclassification. *Id.* at 464-66.

Following summary judgment, the district court held a bellwether jury trial on damages for just 10 of the 156 class members—which lasted eight days due to the absence of any records from the bellwether plaintiffs establishing the overtime hours they worked or expenses they

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

apparently incurred. *Id.* at 466. The defendant moved for decertification, and although the district court denied the motion, it "acknowledged the difficulty of calculating every class member's damages on an individualized basis with no method for doing so other than the class members' individualized testimony" and noted "that the damages phase of this class action will be far messier than promised by plaintiffs' counsel when the case was certified." *Id.* at 466-67 (cleaned up).

On appeal, the Ninth Circuit held that the district court erred in refusing to decertify the class "because any common question as to misclassification is outweighed by the individual questions going to injury and damages." *Id.* at 469. The court emphasized the difficulty plaintiffs had to establish damages for just the bellwether plaintiffs—relying on individual testimony because of a lack of record evidence, requiring individual credibility determinations. *Id.* at 470. Common evidence went only to part of the plaintiffs' claims: "whether they were misclassified as independent contractors. It does not bear on whether the class members actually worked overtime or incurred reimbursable business expenses." *Id.*

There is no way for Plaintiff to establish through common evidence that any putative class member worked overtime, incurred business expenses, how much overtime and how many expenses they incurred, whether they had any deductions from their wage, whether any deduction was authorized by law, or whether they did not receive compliant meal and rest periods. This Court will have to consider individualized evidence from each class member. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. Certification is inappropriate.

### F.    Plaintiff's Claims Are Not Typical of the Class.

This Court should also deny certification because Plaintiff's claims are not typical of the class. "To establish typicality, as required by Rule 23(a)(3), plaintiffs must show that the claims or defenses of the representative parties are typical of the claims or defenses of the class." *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury,

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). "Rule 23(a)'s commonality and typicality requirements occasionally merge: Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Parsons*, 754 F.3d at 685 (internal quotation marks omitted).

Plaintiff only has personal knowledge of his interactions with RXO LM, and he has not provided any delivery services arranged by RXO LM since 2022. *See* Pl. Tr. at 44:15-17, 193:12-14. Plaintiff's speculation about how RXO LM interacted with other Carriers is insufficient to show that his claims are typical of the interactions with other Carriers. Indeed, Plaintiff's testimony differs from his declarants' in significant ways,[8] demonstrating his claims are not typical. *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637 (N.D. Cal. 2010) (finding plaintiff made an "inconclusive" showing of typicality when his claims were "not co-extensive with those of the class members who submitted declarations in support of [a defendant]'s opposition to the present motion").

Additionally, Plaintiff was a Carrier-owner, not a secondary driver or helper during the class period.[9] As the *Moreno* court explained, there are major differences between the two that warrant this Court treating those claims differently. *See* 2019 U.S. Dist. LEXIS 117342, at *42-43. Under B2B, whether a class member signed or did not sign a DSA is critical to determining the proper test to apply. Plaintiff is unlike any putative class member—including his own employees—whose claims must be analyzed according to the joint employment framework. Furthermore, Plaintiff has no knowledge if any of the putative class members were injured by any of RXO LM's actions or policies because he has provided no evidence to establish the

---

[8] Plaintiff's deposition testimony also differs from his own declaration, as described in RXO LM's objections to Plaintiff's evidence.

[9] While Mejia claims to have worked for his brother as a secondary driver or helper, he has provided no evidence that he did so during the class period.

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

employment practices of any other Carriers. *See Clarkson v. Alaska Airlines Inc.*, No. 2:19-cv-00005, 2020 U.S. Dist. LEXIS 138838, at *15 (E.D. Wash. Aug. 4, 2020) (finding"[p]laintiff's paid leave claim is only typical of his own employment group . . . [b]ecause the comparative forms of leave varied by non-pilot employee groups and by employer . . .").

Plaintiff could have a viable claim, and other putative class members may or may not. The various tests this Court must apply to determine RXO LM's liability are highly fact intensive. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Nguyen v. Bank of Am., N.A.*, No. 23-cv-04999-PCP, 2025 U.S. Dist. LEXIS 127349, at *9 (N.D. Cal. July 3, 2025) (cleaned up). That is not necessarily the case here. Plaintiff's claims are not typical for many reasons, including his own admission that he paid his workers properly.

### G.    Plaintiff is Not an Adequate Representative.

Plaintiff is not an adequate representative because he has conflicts with other class members. The adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff's interests diverge from the class members as he is potentially liable for the same employment practices he challenges as illegal. While this Court ruled that RXO LM cannot file a third-party complaint against ABC Logistics, that ruling would not stop one of ABC Logistics' employees from filing their own complaint against ABC Logistics. One district court has found in an FLSA collective action that a foreman could not represent crewman because the foreman could be individually liable to the crewman for the alleged wage and hour violations. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314-15 (M.D. Ala. May 13, 2002). That same logic should apply here; Mejia (and every other Carrier) is potentially liable for any violations in this case. Therefore, Mejia is not an adequate class representative.

### H.    The Class is Not Ascertainable.

Plaintiff's proposed class is not ascertainable. "While it is not an enumerated requirement

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

of Rule 23, courts have recognized that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (internal quotation marks omitted). The class definition must allow a putative member to identify themselves "by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Id.* (internal quotation marks omitted). "While the ascertainability requirement provides for an 'objectively ascertainable' class, the Ninth Circuit does not require that the proposed class also be 'administratively ascertainable.'" *Walter v. Leprino Foods Co.*, 670 F. Supp. 3d 1035, 1047 (E.D. Cal. 2023) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123-26 (9th Cir. 2017)).

Moreover, Plaintiff's proposed class definition focuses solely on the joint employment and employment status inquiries, not on any of the alleged substantive violations. This becomes particularly problematic because drivers and helpers were not limited to working exclusively for RXO LM. *See* DSA at §§ 2, 22. Even if a driver or carrier worked overtime and incurred expenses, if that person performed deliveries for an entity other than RXO LM, there is no method of determining overtime liability or if those expenses were necessarily incurred for the benefit of RXO LM. *See Espinal v. Bob's Discount Furniture, LLC*, Civil Action No. 17-2854 (JMV) (JBC), 2021 U.S. Dist. LEXIS 208306, at *18 (D.N.J. Oct. 28, 2021) (finding class definition for overtime claim was too broad because it "would sweep in class members with no connection to the class claim for overtime pay violations").

## VI.     CONCLUSION

For the foregoing reasons, RXO LM respectfully requests that this Court enter an order denying Plaintiff's Motion for Class Certification.

Dated: May 1, 2026

JACKSON LEWIS P.C.

By: _____
Benjamin J. Schnayerson
Dahn A. Levine
Attorneys for Defendant
RXO LAST MILE, INC. ERRONEOUSLY
SUED AS XPO LAST MILE, INC.

4901-2799-0951, v. 6

DEFENDANT RXO LAST MILE, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION