United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAYNOR MEJIA,
Plaintiff,
v.
RXO LAST MILE, INC.,
Defendant.

Case No. 22-cv-08976-SI

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 89

On June 12, 2026, the Court held a hearing on plaintiff's motion for class certification. Plaintiff seeks to certify a class of all individuals who performed delivery services for defendant XPO Last Mile, Inc. a/k/a/ RXO Last Mile, Inc. in the state of California who were classified as independent contractors or as non-employees and worked as a Contract Carrier, Driver, and/or Helper (collectively referred to as "Delivery Drivers") from April 29, 2018 to the date of trial. Dkt. No. 89 ("Mot.") at 1. Plaintiff seeks to certify nine causes of action alleged under California's Industrial Welfare Commission ("IWC") wage orders, California Labor Code, and California's Unfair Business Practices Act. *Id.* Plaintiff also seeks to certify Mr. Maynor Mejia ("Mejia") as class representative and Boyamian Law as class counsel. *Id.* at 2. For the reasons set forth below, the Court DENIES plaintiff's motion.

## BACKGROUND

### I. Factual Background

According to plaintiff's second amended complaint, defendant RXO Last Mile, Inc.[1]

[1] RXO Last Mile, Inc. was formerly known as "XPO Last Mile, Inc." and was initially sued under that name. *See* Dkt. No. 20; Dkt. No. 1-1 ¶ 1 & n. 1.

(hereinafter "defendant" or "RXO") "provides logistics and delivery services to its retail merchants like Samsung, Peloton, Macy's and others[.]" Dkt. No. 79 ("SAC") ¶ 7. RXO engages in "last mile" delivery, meaning its Delivery Drivers "pick up the merchandise at the merchants' stores or warehouses and [] deliver and install them at the customers' homes or businesses." *Id.* Plaintiff alleges that RXO's classification of its Delivery Drivers as independent contractors is a "sham designation," as RXO "exercises pervasive control over the work these Delivery Drivers perform" and "has established an elaborate system and scheme in an attempt to conceal its true status as the employer of its Delivery Drivers." *Id.* ¶¶ 14, 16.

The SAC describes three categories of RXO Delivery Drivers: Contract Carriers, Drivers, and Helpers. *Id.* ¶¶ 1, 16, 18, 23, 24. RXO hires Contract Carriers who own trucks and requires that they sign a standardized Delivery Service Agreement ("DSA"). *Id.* ¶¶ 15, 16; *see* Dkt. No. 79-1, Ex. 1 ("DSA"). Plaintiff alleges that, through the DSA, RXO "controls the manner in which . . . work is performed in virtually every way" and "requires the [Contract Carrier] to 'agree' to pay numerous expenses incident to the employment that ordinarily and by law are the responsibility of an employer." *Id.* ¶ 17. RXO refers each Contract Carrier it hires "to a company that processes the paperwork to create a purported corporate or limited liability company entity" and requires each Contract Carrier to do so in order to work for RXO. *Id.* ¶ 18. These Contract Carriers then may bring on Drivers and Helpers "at their own expense who have been screened, qualified, and approved by [RXO]." *Id.* ¶¶ 15, 24. RXO requires Drivers and Helpers to "follow the same work methods and standards it requires [Contract Carriers] to follow" and to "follow and to comply with all other requirements communicated by [RXO], including attendance at meetings." *Id.* ¶¶ 23, 24. Plaintiff also lists an extensive series of directives Delivery Drivers allegedly must abide by, despite being classified as independent contractors. *Id.* ¶¶ 19-23. Plaintiff alleges that RXO engages in these processes to deprive Delivery Drivers of wages and other benefits due to employees under California law. *See id.* ¶ 2.

Named plaintiff Maynor Mejia alleges that he was unlawfully classified as an independent contractor and worked as a Contract Carrier and Driver out of the warehouse owned and operated by RXO in Union City, California. *Id.* ¶ 6. Mejia alleges he was required to form ABC Logistics,

LLC to secure work from RXO and to sign RXO's standardized DSA. *Id.* ¶ 18, *see* Ex. 1, DSA. The DSA provides that the agreement is "strictly between two independent entities and does not create an employer/employee relationship for any purpose." DSA § 4.1. Further, the DSA contains a section regarding Contract Carrier's Employees, which states in relevant part:

> **5. Contract Carrier's Employees.** Contract Carrier agrees that it retains complete and exclusive direction and control over its employees and all those working for it in any capacity. As such Contract Carrier may, without prior notice to XPO Last Mile, employ or otherwise provide qualified person(s) to assist Contract Carrier in performing the obligations specified by this Agreement. All persons so employed or provided by Contract Carrier, either driving or non-driving, shall be qualified pursuant to applicable federal, state and municipal safety standards. All persons employed or provided by Contract Carrier shall be fully trained, at Contract Carrier's expense and discretion, to operate all equipment used in furtherance of this Agreement. Contract Carrier understands and agrees that such persons shall not be considered employees of XPO Last Mile and that it is Contract Carrier's responsibility to assure that such persons conform fully to the applicable obligations undertaken by Contract Carrier pursuant to this Agreement. Contract Carrier further agrees to:
>
> > (a) Assume sole responsibility for ensuring that its employees, agents and workers are screened and qualified in accordance with the same standards as Contract Carrier was screened and qualified prior to its engagement for the services to be provided herein, and in conformance with all requirements as may be communicated by XPO Last Mile from time to time;
> >
> > …
> >
> > (d) Assume sole responsibility with respect to such persons for compliance with all applicable laws, rules, and regulations, including but not limited to wage and hour laws, discrimination law, immigration laws and all laws relating to employment such as orders respecting payroll deductions and maintenance of payroll and employment records; and, …

DSA § 5(a) & (d).

## II. Procedural Background

On November 17, 2022, plaintiff Maynor Mejia filed this proposed class action against RXO, alleging that RXO denied plaintiff and other Delivery Drivers the benefits and protections required under the California Labor Code and other state laws. Dkt. No. 1-1, Compl. ¶ 1. Plaintiff filed suit in the Superior Court for the State of California for the County of Alameda, Case No. 22-CV-020443. The case was removed to this Court. Dkt. No. 1.

On March 17, 2023, RXO moved to compel arbitration. Dkt. No. 20. The Court denied

RXO's motion to compel arbitration on August 10, 2023. Dkt. No. 40. Plaintiff filed an amended complaint. Dkt. No. 43. RXO answered. Dkt. No. 48. The Court granted RXO leave to file a third-party complaint against ABC Logistics, LLC. (Dkt. No. 53), which RXO subsequently filed on January 17, 2024 (Dkt. No. 55). On April 5, 2024, the Court granted plaintiff's motion to dismiss RXO's third-party complaint against ABC Logistics, LLC. Dkt. No. 70. On February 13, 2025, plaintiff filed the second amended complaint. Dkt. No. 79. After the parties stipulated to extend RXO's time to respond, RXO answered on March 14, 2025. Dkt. No. 81.

On April 10, 2026, plaintiff moved to certify the following class:

> All individuals who performed delivery services for Defendant XPO Last Mile, Inc. a/k/a RXO Last Mile, Inc. (hereinafter "Defendant" or "XPO"), in the state of California who were classified as independent contractors or as a non-employee and worked as a Contract Carrier, Driver, and/or Helper from April 29, 2018, to the date of trial.

Dkt. No. 89. ("Mot.") at 1.[2] Plaintiff also cursorily suggested that, in the alternative, the Court certify three subclasses of Contract Carriers, Drivers, and Helpers. *Id.* RXO filed its opposition on May 1, 2026. Dkt. No. 94. ("Opp'n"). Plaintiff filed its reply on May 15, 2026. Dkt. No. 97. ("Reply").

Following a hearing on plaintiff's motion for class certification on June 12, 2026, the Court ordered three categories of additional briefing from plaintiff clarifying: (1) plaintiff's proposed subclasses and how each subclass meets the Rule 23(a) and (b) requirements; (2) plaintiff's plans to pursue a joint employment theory of liability against RXO; and (3) plaintiff's proposed class periods, in light of the various cases settled in plaintiff's counsels' prior "identical last-mile independent contractor misclassification class action matter against RXO's predecessor," in *Garcia v. Macy's West Stores, Inc*, 16-cv-4440-WHO. Dkt. No. 101 (quoting Dkt. No. 89-1 ("Boyamian

---

[2] Plaintiff's motion for class certification was originally due July 5, 2024, with the hearing set for October 4, 2024. Dkt. No. 45. On May 3, 2024, after the Court granted plaintiff's motion to dismiss RXO's third-party complaint against ABC Logistics, the Court set a briefing schedule for class certification with the hearing scheduled for April 11, 2025. Dkt. No. 73. The Court set the present briefing schedule on November 21, 2025, after allowing three more extensions (Dkt. Nos. 76, 83, 88).

Decl.") ¶ 9).[3] Plaintiff filed a supplemental brief on June 26, 2026, and defendant filed a supplemental opposition on July 6, 2026. Dkt. Nos. 102 ("Suppl. Br."), 106 ("Suppl. Opp'n").

Plaintiff proposes three subclasses:

> **Contract Carrier Subclass:** All individuals who performed delivery services for Defendant in the State of California and who executed a Delivery Service Agreement with Defendant, from April 29, 2018 through the date of class certification.
>
> **Driver Subclass:** All individuals who performed delivery services for Defendant in the State of California as a non-employee Driver, meaning a person engaged by a Contract Carrier to perform deliveries for Defendant who did not himself or herself execute a Delivery Service Agreement with Defendant, from April 29, 2018 through the date of class certification.
>
> **Helper Subclass:** All individuals who performed delivery services for Defendant in the State of California as a non-employee Helper, from April 29, 2018 through the date of class certification.

Suppl. Br. at 2-3. Plaintiff also proposes a carve-out to exclude from each subclass the claims that were released in the prior settlements of cases against RXO before Judge Orrick. *Id.* at 15-16.

## LEGAL STANDARD

### I. Rule 23

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiff bears the burden of showing it has met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)). "[P]laintiff[] must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23

[3] Plaintiff's counsel previously litigated three related last-mile misclassification cases against RXO's predecessor before Judge Orrick, which each settled or were resolved and released the claims of certain Drivers, Helpers, and/or Contract Carriers for periods ending in 2019. *See Garcia v. Macy's West Stores, Inc*, 16-cv-4440-WHO; *Kramer v. XPO Logistics, Inc.,* 16-cv-07039-WHO, consolidated with *Ibanez v. XPO Logistics, Inc.*, 17-cv-4009-JSC; *Carter v. XPO Logistics, Inc.*, 16-cv-01231-WHO. Defendant generally agrees with plaintiff's summary of these cases. *Compare* Dkt. No.106 ("Suppl. Opp'n") at 14 *with* Dkt. No. 102 ("Suppl. Br.") at 13-16. Plaintiff requests judicial notice of court records from these related cases under Federal Rule of Evidence 201. Dkt. No. 102-2. The Court takes judicial notice of these documents, finding they are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b), (c).

are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc). In carrying its burden at the class certification stage, "plaintiff[] may use any admissible evidence." *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016)).

A court's class certification analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted)). These analytical principles govern Rule 23(a) and (b). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.*

Under Rule 23(a), the class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

More specifically, Rule 23(b)(3) permits a class action to be maintained if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## II. Subclasses

A court may, when appropriate, divide a class into subclasses that are each treated as a class under Rule 23. Fed. R. Civ. P. 23(c)(5). "[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981). Creating subclasses "is particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action." 7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Robert Klonoff, *Federal Practice & Procedure* § 1790 (3d ed. 2005*)*. However, "[t]he district court is not 'to bear the burden of constructing subclasses' or otherwise correcting Rule 23(a) problems; rather, the burden is on Plaintiffs to submit proposals to the court." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 408 (1980)).

## III. California Misclassification Tests

The parties dispute which California law "test" applies during the proposed class period (April 19, 2018 to the date of trial)[4] to determine whether proposed plaintiffs are employees or independent contractors of RXO. Five such "tests" are involved. *See, generally*, Opp'n.

Prior to the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Ct.*, 4 Cal. 5th 903 (2018),[5] California courts applied the common law *Borello* test (first test) which analyzed numerous factors to determine an alleged employer's "right to control the manner and means" of an alleged employee's work. *See S.G. Borello & Sons, Inc. v. Department of Industry*

---

[4] While plaintiff's notice of motion describes the proposed class period as extending until the date of trial, plaintiff's supplemental brief describes the proposed subclass periods as extending only until the date of class certification. *Compare* Mot. at 1 *with* Suppl. Br. at 2.

[5] *Dynamex* was decided on April 30, 2018, the day after the proposed class period begins.



United States District Court
Northern District of California

*Relations,* 48 Cal. 3d 350, 355-58 (1989). While the right to control is "the most important factor," *Borello* also "instructs courts to consider the following secondary indicia to determine the nature of a service relationship:"

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Hill v. Walmart Inc.*, 32 F.4th 811, 818 (9th Cir. 2022) (internal quotation marks and citation omitted).

*Dynamex* replaced the *Borello* test with the "ABC test" (second test) when determining whether a worker is properly classified as an independent contractor under a California Industrial Welfare Commission ("IWC") wage order.[6] *Dynamex*, 4 Cal. 5th at 916-917. The Court held that under the "suffer or permit to work" language used in all California IWC wage orders, any worker is presumed to be an employee unless the alleged employer can establish each of three prongs of the ABC test. *Id.* at 916. The ABC test requires the alleged employer to establish:

> (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

*Id.* at 916-17. This shift was important because under the ABC Test, a worker is presumptively an employee, and the alleged employer bears the burden to show otherwise. In 2021, the California Supreme Court held that the ABC test adopted in *Dynamex* applies retroactively and reiterated that

[6] California's IWC promulgates "constitutionally-authorized, quasi-legislative regulations that have the force of law" and "impose obligations relating to the minimum wages, maximum hours, and a limited number of very basic working conditions (such as minimally required meal and rest breaks) of California employees" in various industries. *Dynamex*, 4 Cal. 5th at 913-14 & n. 3. Primarily at issue here is wage order No. 9, which regulates working conditions for employees in the transportation industry. Cal. Code Regs., tit. 8, § 11090.

it applied only to the wage order context. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 948 (2021); *see also Garcia v. Border Transportation Grp., LLC,* 28 Cal. App. 5th 558*,* 571 (2018), as modified on denial of reh'g (Nov. 13, 2018) ("There is no reason to apply the ABC test categorically to every working relationship . . . we conclude *Borello* furnishes the proper standard as to [plaintiff's] non-wage-order claims."); *Gonzalez v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019) ("the ABC test applies to Labor Code claims which are either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order.").

In 2019, the California legislature codified the ABC test by enacting California Assembly Bill 5 (AB 5), which extended the ABC test to all claims under the California Labor Code, Unemployment Insurance Code, and wage orders (third test). *See* Cal. Lab. Code § 2775. Unlike *Dynamex*, "AB 5 is not retroactive and, therefore, applies only to work performed after January 1, 2020, when the statute went into effect." *Haitayan v. 7-Eleven, Inc.,* No. CV 17-7454 DSF (ASX), 2021 WL 757024, at *5 (C.D. Cal. Feb. 8, 2021).

The fourth and fifth tests RXO invokes are more accurately described as exceptions to when the ABC test applies. A statutory exception (fourth test) exempts "bona fide business-to-business contracting relationships" from the ABC test. *See* Cal. Lab. Code § 2776. Under this exception, "the determination of employee or independent contractor status of the business services provider shall be governed by *Borello*, if the contracting business demonstrates that [each of twelve] criteria [is] satisfied." *Id.* § 2776(a); *see also Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 478-79 & n. 16 (9th Cir. 2023).

Furthermore, the *Dynamex* ABC test "does not apply to joint employment claims." *Bowerman*, 60 F.4th at 472-73. To determine whether a joint employment relationship exists (fifth test), California courts look at whether the alleged joint employer: (1) exercised control over the workers' wages, hours or working conditions; (2) suffered or permitted them to work; or (3) engaged them, thereby creating a common law employment relationship. *Martinez v. Combs,* 49 Cal. 4th 35, 64 (2010).

## DISCUSSION

### I. Admissibility of Evidence

As a threshold matter, the parties disagree on the extent to which the Court may consider evidence that may be inadmissible at trial at the motion for class certification stage. In *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1004 (9th Cir. 2018), the Ninth Circuit concluded that "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." The Ninth Circuit reaffirmed this principle in *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024-25 (9th Cir. 2024), cert. denied, 145 S. Ct. 1308, 221 L. Ed 2d 396 (2025).

#### A. RXO's Evidentiary Objections

RXO lodges 80 evidentiary objections to declarations from putative class members and named plaintiff submitted in support of plaintiff's motion, citing to Federal Rules of Evidence 401, 402, 403, 602, 603, 701, 801, and 901. Dkt. No. 95. Plaintiff responds that RXO's numerous objections are inappropriate at the class certification stage and meritless. Dkt. No. 96-2.

RXO's objections fail to comply with Civil Local Rule 7-3, which requires that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Civ. L. R. 7-3(a). Moreover, "[n]umerous district courts in this Circuit have long concluded that it is appropriate to consider evidence at the class certification stage that may ultimately be inadmissible." *Perez v. It Works Marketing, Inc.*, No. 23-CV-04829-TLT, 2025 WL 3500539, at *2 (N.D. Cal. Sept. 2, 2025) (quoting *Sali*, 909 F.3d at 1004 n.2). "[A]n inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Lytle*, 114 F.4th at 1025 (quoting *Sali*, 909 F.3d at 1004).

As such, the Court overrules RXO's evidentiary objections to plaintiff's declarations.

#### B. Plaintiff's Motion to Exclude Expert Testimony

Plaintiff attaches to its reply brief a motion to strike the expert declaration of Stephen G. Bronars, Ph.D. (Dkt. No. 94-2) filed by RXO in support of its opposition to plaintiff's motion for class certification. Dkt. No. 96-3. Plaintiff argues that Dr. Bronars's declaration fails under Federal

United States District Court
Northern District of California

Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the court's inherent authority to control its record. *Id.* at 1. Defendant responds that the motion should be denied because wholesale exclusion of Dr. Bronars's expert report[7] is inappropriate at the class certification stage, Dr. Bronars's report is relevant and reliable, and plaintiff failed to submit a proposed order under Civil Rule 7-2(c). Dkt. No. 89. Defendant also argues that plaintiff abandoned his motion by failing to file a reply that addressed the arguments defendant raised in opposition. Suppl. Opp'n at n.5.

Plaintiff argues that *Lytle* requires district courts to conduct a separate, full *Daubert* analysis where expert evidence is "central" to a Rule 23 motion. *See* Dkt. No. 96-3 at 4. But *Lytle* held no such thing. In *Lytle*, the Ninth Circuit held that the district court's "limited" *Daubert* analysis, considering "only if expert evidence [was] useful in evaluating whether class certification requirements [had] been met" was "sufficient for the intermediate purposes." 114 F.4th at 1031; *see also Noohi v. Johnson & Johnson Consumer Inc.,* 146 F.4th 854, 863-64 (9th Cir. 2025), cert. denied, 224 L. Ed. 2d 517 (Apr. 20, 2026).

The motion to strike is DENIED, and the Court will instead "consider both parties' arguments as to the reliability of the proffered expert testimony to assist in evaluating the weight of the evidence as it relates to class certification." *See Flodin v. Cent. Garden & Pet Co.*, No. 21-CV-01631-JST, 2024 WL 4565340, at * 3 (N.D. Cal. Oct. 23, 2024).

## II. Ascertainability

RXO argues plaintiff's proposed class definition is not ascertainable because Delivery Drivers worked for other entities in addition to RXO. Opp'n at 43.

While not among the enumerated requirements of Rule 23, "[a]s a threshold matter . . . the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition should be precise,

---

[7] While plaintiff's motion refers to Dr. Bronars's declaration, defendant points out in opposition that it is the expert report attached to the declaration (Ex. A) that plaintiff seeks to exclude.

objective, and presently ascertainable. However, the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). The Ninth Circuit does not "impose a freestanding administrative feasibility prerequisite" to class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Here, the proposed class is ascertainable because plaintiff identifies who the class members are: Delivery Drivers[8] who worked for RXO and were classified as independent contractors during the class period. Indeed, RXO identified 2,485 class members in its discovery responses. Dkt. No. 89-5, Ex. 62 ("Kizirian Decl.") ¶ 8.[9] The Court finds defendant's argument that Delivery Drivers are not sufficiently identifiable because they also worked for other entities in addition to RXO irrelevant to the ascertainability analysis.

Therefore, the Court finds that the proposed class is ascertainable.

## III. Rule 23 (a) & (b)

### A. Numerosity

The class must be so numerous that joinder of all members is "impracticable." *See* Fed. R. Civ. P. 23(a)(1). There is no exact numerical threshold, but generally courts have found the requirement satisfied when the class contains forty or more members. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-04844-BLF, 2022 WL 1459567, at *3 (N.D. Cal. May 9, 2022). The Court finds that the numerosity requirement is met. Plaintiff has identified

---

[8] Plaintiff uses the term "Delivery Drivers" to refer to Contract Carriers, Drivers, *and* Helpers. However, plaintiff also use the shorthand "Drivers" to refer to all three proposed subclasses of workers throughout its pleadings. *See, e.g.,* Mot. at 1 ("[RXO's] Contract Carriers, Drivers, and Helpers (collectively '<u>Drivers</u>')"), 6 ("[RXO] provides training to <u>Drivers</u> on a near-daily basis") (emphases added). Thus, it is at points unclear whether plaintiff is referring to the proposed subclass of "Drivers" or whether plaintiff means to refer to all Drivers, Helpers, and Contractor Carriers.

[9] RXO's Person Most Knowledgeable (PMK) and Vice President of Strategic Accounts, Fernando Rabel, states in his declaration that RXO used two different data management systems (DMS and CLM) to store records of Delivery Drivers during the class period. Dkt. No. 94-3 ("Rabel Decl.") ¶¶ 22-24. DMS apparently captured rosters of Contract Carriers, Drivers, and Helpers, whereas CLM maintained rosters of Contract Carriers and Drivers, but not Helpers. *Id.* Regardless, the accuracy of RXO's recordkeeping goes towards administrative feasibility rather than whether the class is identifiable.

2,485 class members as of November 18, 2025 (including 652 Contract Carriers, 1,251 Drivers, and 582 Helpers) through data produced by RXO. Kizirian Decl. ¶ 8. Each proposed subclass, therefore, also independently satisfies the numerosity requirement. Moreover, RXO does not oppose class certification on numerosity grounds. *See, generally*, Opp'n; Suppl. Opp'n.

**B. Commonality & Predominance**

Plaintiff argues that his class claims meet the commonality and predominance requirements because they all stem from RXO's alleged misclassification of Delivery Drivers as independent contractors and can be adjudicated using common evidence. Mot. at 13. RXO argues that the misclassification analysis will differ among different class members and that individualized questions as to the substantive wage and hour claims outweigh the employment status issue. Opp'n at 20-32. The Court has reviewed the supplemental briefing requested after the hearing on plaintiff's motion and concludes that plaintiff has failed to establish commonality and predominance, at least as to the Driver and Helper proposed subclasses.

There is "substantial overlap" between the requirements of Rule 23(a)(2) and Rule 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas' Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). "A common contention need not be one that will be answered, on the merits, in favor of the class. It only must be of such nature that it is capable of classwide resolution." *Alcantar v. Hobart Servs.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal citations omitted).

The predominance requirement "presupposes satisfaction of the commonality requirement" but "goes further and 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Lytle*, 114

F.4th at 1023 (quoting *Tyson Foods,* 577 U.S. at 453). "With respect to the predominance inquiry specifically, a district court must evaluate 'the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke.'" *Id.* (alteration omitted) (quoting *Olean*, 31 F.4th at 666). "[C]lass certification is inappropriate when 'individualized questions . . . will overwhelm common ones.'" *Bowerman*, 60 F.4th at 469 (quoting *Olean*, 31 F.4th at 669).

**1. Misclassification**

RXO argues that the misclassification analysis in this case involves all five California legal tests described, *supra* Section III, each requiring individualized proof. Opp'n at 21-32. Plaintiff's motion focused almost entirely on the ABC test (second test), which it argues encompasses all claims in the SAC and applies to all three subclasses. *See* Mot. at 16-21; *see also* Reply at 2-4; Suppl. Br. at 10-11. However, in its reply brief and at the hearing, plaintiff acknowledged that it intends to pursue a joint employment theory of liability (fifth test) against RXO, as to the Drivers and Helpers who did not sign a DSA. *See* Reply at 23.

Plaintiff's supplemental brief argued that each proposed subclass turns on the common question of whether its members were improperly classified as independent contractors under RXO's DSA. Suppl. Br. at 5. For the Common Carrier subclass, plaintiff argues the common proof is the DSA each Common Carrier signed and the uniform policies RXO applied to them. *Id.* For the Driver and Helper subclasses, plaintiff argues that the common proof is "RXO's uniform screening, badging, training, routing, monitoring, and discipline of all secondary personnel, together with the DSA terms that governed how those personnel were brought on and controlled." *Id.* Specifically, plaintiff points to Section 5(a) of the DSA, which provides that a Contract Carrier's workers "are screened and qualified in accordance with the same standards as Contract Carrier was screened and qualified." DSA § 5(a).

Defendant responds that the threshold question of Drivers/ Helpers' employment status is not straightforward because not all Drivers or Helpers were classified as independent contractors by the Common Carriers they worked for, and because RXO disclaimed control over Common

Carriers' day-to-day operations and employment decisions through the DSA. Suppl. Opp'n at 10-12.

Plaintiff relies primarily on *Vasquez v. Jan-Pro Franchising, Int'l*, 986 F.3d 1106 (9th Cir. 2021) to advocate for application of the ABC Test to the Driver and Helper subclasses. In *Vasquez*, the Ninth Circuit explained that "[a]s long as a putative employee was providing a service to the hiring entity even *indirectly*, the hiring entity can fail the ABC test and be treated as an employer." 986 F.3d at 1124. Plaintiff also relies on *Moreno v. JCT Logistics*, *Inc.*, No. EDCV172489JGBKKX, 2019 WL 3858999, at *7 & n.11 (C.D. Cal. May 29, 2019), which, relying on *Vasquez*, concluded that "the ABC test is equally applicable to drivers who contracted directly with Defendants and drivers hired by carriers who contracted with Defendants."

Plaintiff does not address the Ninth Circuit's more recent 2023 statement that because the "reasons for selecting the ABC test are uniquely relevant to the issue of allegedly misclassified independent contractors, the ABC test does not extend to the joint employment context, where those concerns are no longer present." *Bowerman*, 60 F.4th at 473 (internal quotation marks and citation omitted). In *Bowerman*, the Ninth Circuit found that the plaintiff's overtime claims were misclassification claims to which the ABC test applied, not joint employment claims, in the context of class members who were sole proprietors and employees of their own self-owned businesses. *Id.* at 473-74. However, the Ninth Circuit explained that defendant's argument that the ABC test did not apply would likely succeed were an actual *employee* of another entity suing the defendant. *Id.* The Ninth Circuit explained that "the policy purpose behind *Dynamex*'s ABC test, i.e., the policy purpose for presuming the worker to be an employee and requiring the secondary employer to disprove the worker's status as an employee is unnecessary in joint employment cases, in that taxes are being paid and the worker has employment protections." *Id.* at 473; *see also Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111, 253 Cal. Rptr. 3d 738 (2019) (holding that the ABC test does not apply to joint employment claims because "parts B and C of the ABC test do not fit analytically with such claims").

The Court is therefore not convinced by plaintiff's arguments that the ABC test necessarily applies to the Drivers/Helpers claims since at least some of the Drivers/Helpers were employees of

the Contract Carriers they worked for, not independent contractors. It is true that through Section 5 of the DSA, RXO classifies any Drivers/Helpers of a Common Carrier as non-employees of RXO. However, Mejia himself testified during his deposition that as a Contract Carrier, he paid taxes on behalf of ABC Logistics, engaged Drivers/Helpers as his "employees," paid them, issued W-2s, paid them overtime, instructed them to take meal breaks, and assigned them routes based on their performance. Dkt. No. 94-1, Ex. 3 ("Pl. Dep.") at 47:19-20; 62:2-7; 67:6-60:20; 82:2-18; 153:19-23. Thus, as described in *Bowerman,* for at least some Drivers and Helpers, "the policy purpose for presuming the worker to be an employee and requiring the secondary employer to disprove the worker's status as an employee" does not apply here, "in that taxes are being paid and the worker has employment protections." *See* 60 F.4th 459 at 473.

Plaintiff's argument that commonality and predominance are also met because RXO is a joint employer of Drivers/ Helpers under *Martinez* (fifth test) is also unavailing. A joint employer must (1) have exercised control over the workers' wages, hours or working conditions; (2) suffered or permitted them to work; or (3) engaged them, thereby creating a common law employment relationship. *Martinez,* 49 Cal. 4th at 64. Plaintiff contends that the first prong is satisfied by common proof because, through the DSA and standardized policies, RXO dictated Drivers/Helpers "routes and delivery windows, required them to use its technology and follow its delivery and customer-service protocols, monitored them in real time, evaluated them through standardized score cards, set the appearance standards they had to meet, and could freeze any of them out of future work." Suppl. Br. at 11-12. Plaintiff also contends that the second prong is satisfied by common proof because RXO knew that Drivers and Helpers performed its deliveries and took the benefit of their labor. *Id.* However, plaintiff fails to explain how the joint employment test would apply and how it would not require an individualized inquiry into the employment practices of each Common Carrier.

**2. Substantive Labor Code Claims**

Defendant argues that plaintiff's opening brief, reply brief, and supplemental brief all fail to adequately explain what common evidence exists to prove plaintiff's substantive claims regarding

California labor code and wage order violations. Supp. Opp'n at 10-11. The Court agrees with defendant. Plaintiff does not explain how it can prove wage and hour violations as to Drivers/Helpers without also examining the employment practices of the individual Common Carriers. In sum, the Court finds that plaintiff failed to establish the Rule 23(a)(2) and Rule 23(b)(3) requirements as to at least the Drivers and Helpers. *See Betts,* 659 F.2d at 1005. ("[E]ach subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.").

**C. Typicality & Adequacy**

Plaintiff argues that the typicality and adequacy requirements are met because Mejia performed the same kind of delivery services under the standardized DSA and was subject to the same RXO policies as other putative class members. Mot. at 15. The Court finds that Mejia fails to meet the typicality and adequacy requirements as to the Drivers and Helper subclasses.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(4) permits the certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Because the considerations underlying the two requirements overlap considerably, the Supreme Court has noted that '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *General Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

Representation is adequate if: (1) the class representatives and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiffs and counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "To find adequacy of representation, the representatives' individual interests must be the same or similar to the interests of other class members rather than antagonistic to the interests of class members." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 119 (C.D. Cal. 2007) (citing *Falcon,* 457 U.S. at 157).

"The test of typicality is whether other members have the same or similar injury, whether

the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin,* 617 F.3d at 1175 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, at 508 (9th Cir. 1992)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S at 338.

The Court concludes that Mejia and other Contract Carriers like him have a conflict of interest with the Driver and Helper subclasses who worked for them, such that plaintiff fails to establish adequacy and typicality. Under the DSA, Mejia agreed to "assume sole responsibility with respect to [his Drivers/Helpers] for compliance with all applicable laws, rules, and regulations, including but not limited to wage and hour laws…" DSA § 5(d). Mejia testified that he treated his Drivers/Helpers as employers, paid them, determined their routes, and instructed them to take breaks. Thus, as defendant points out, in order for Mejia to argue that his Drivers and Helpers were deprived of accurate wage statements, breaks, pay, and other employment protections, he would also have to admit that *he* deprived them of such employee benefits, creating antagonistic interests between Mejia and the subclasses he seeks to represent. *See* Suppl. Opp'n at 4; *see also, In re Live Concert Antitrust Litig.*, 247 F.R.D. at 119. That Mejia asserts that he too was misclassified as an independent contractor by RXO is insufficient to overcome the difference in interests between himself as a Contract Carrier paid directly by RXO and the Drivers/Helpers he employed.

Plaintiff's other arguments do not overcome this problem. Plaintiff highlights that prior to becoming a Contract Carrier, Mejia also worked as a Driver for his brother during the class period, "thus sharing the same experience as those [Drivers and Helpers] who did not enter into a DSA with RXO." *Id; see* Dkt. No. 89-5, Ex. 3 ("Pl. Dep. 21:4-22:8). Notwithstanding his past experiences as a Driver prior to signing a DSA, as a Contract Carrier, Mejia could be individually liable to his Drivers and Helpers for the same practices he challenges on their behalf. While plaintiff relies on this Court's order dismissing defendant RXO's third-party claim against ABC Logistics (Dkt. No. 70) to suggest no adequacy issue exists, that order did not bar ABC Logistics' workers or other Drivers and Helpers from filing suit against a Contract Carrier who misclassified them as

United States District Court
Northern District of California

independent contractors.[10] Accordingly, the Court finds that plaintiff also fails to establish Rule 23(a)(3) and (4).[11]

In sum, the Court DENIES plaintiffs motion for class certification for failure to establish the requirements under Rule 23.

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion for class certification.

**IT IS SO ORDERED**.

Dated: August 18, 2026

SUSAN ILLSTON
United States District Judge

[10] Plaintiff also suggests that, to the extent the Court finds Mejia an inadequate representative, the Court "appoint a representative for each [ ] subclass, drawn from the putative class members who submitted declarations in support of the motion [for class certification.]" Suppl. Br. at 5. The Court declines plaintiff's suggestion. The Court is sympathetic to defendant's concerns that it is too late to assign new class representatives at this stage, since doing so could require an amended complaint, renewed motion practice, and discovery as to Drivers/Helpers who would now be class representatives. Nor is it the Court's role to select representatives for subclasses.

[11] The parties also dispute whether the superiority requirement under Rule 23(b)(3) is met, whether class counsel is adequate, the appropriate date for the class period and subclass periods to begin, and whether the Common Carrier subclass could independently meet the Rule 23 requirements. Having concluded that the motion fails on other grounds, the Court does not address these issues.